IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————

No. 26-1676

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

SHENNA BELLOWS, in her official capacity as Secretary of the
State of Maine; STATE OF MAINE,

Defendants-Appellees

JOHN SCHNECK; MARPHEEN CHANN; LEAGUE OF WOMEN
VOTERS OF MAINE,

Defendants-Intervenors-
Appellees

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

———————

UNITED STATES' OPPOSED MOTION TO EXPEDITE BRIEFING
UNDER INTERNAL OPERATING PROCEDURE VII(B)
EMERGENCY MOTION UNDER LOCAL RULE 27.0(B)
THIS MOTION REQUESTS RELIEF BY JULY 7, 2026

## INTRODUCTION

Pursuant to 28 U.S.C. 1657, First Circuit Local Rule 27.0(b), and First Circuit Internal Operating Procedure VII(B), plaintiff-appellant United States hereby respectfully requests that this Court expedite the briefing and argument date for this appeal because it raises an issue of urgency with regard to the security of elections in the United States.

This appeal is about the United States' ability under the Civil Rights Act of 1960 (CRA) to investigate Maine's compliance with federal law regarding voter registration under the National Voter Registration Act of 1993 (NVRA) and the Help America Vote Act of 2002 (HAVA). In passing the NVRA, Congress recognized the importance of properly maintained voter-registration systems in "increas[ing] the number of eligible citizens who register to vote in [federal] elections" and "protect[ing] the integrity of the electoral process." 52 U.S.C. 20501(b)(1) and (3). HAVA requires States to implement a single centralized computerized statewide voter registration list (SVRL) and mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52

- 2 -

U.S.C. 21083(a)(1)(A) and (a)(2)(A). The district court's Order prohibits the United States from carrying out its investigation.

Maine's next federal election is rapidly approaching, with the general election to take place on November 3, 2026. Weeks before November 3, election officials will be mailing absentee ballots to hundreds of thousands of Maine voters, with many of those ballots potentially going to ineligible voters, fraudulent registrants, or other individuals who should not have been registered. Maine voters need to know that their election is secure and that non-citizens, deceased individuals, former residents, non-residents, and voters with multiple records are not registered to vote in that election.

Given this timeline, there is good cause to expedite the appeal. *See* 28 U.S.C. 1657(a). This case should be expedited, with resolution as soon as practicable, as a matter of fairness to all sides. Maine's voters and elections officials need a quick answer. The Department of Justice regrets asking for such speedy work from this Court, but as this Motion details, this timing is not of the United States' making.

The United States respectfully requests that the Court set a briefing schedule as follows:[1]

- The United States' opening brief would be due on Wednesday, July 8, 2026;

- Response briefs would be due on Wednesday, July 29, 2026; and

- The United States' reply brief would be due on Wednesday, August 5, 2026.

The United States suggests that any *amicus curiae* briefs be due on the same day as the party an *amicus* supports. The United States also is willing to waive oral argument, despite the great importance of the issues here, to allow faster resolution of this case. Of course, the United States will participate in oral argument if the Court believes that the benefit of oral argument would outweigh the time concerns and would request that argument take place during the September 2026 sitting or at an earlier special hearing.

---

[1] The United States plans to move to consolidate this appeal with its appeals from the district courts' dismissals of the United States' Complaints in *United States v. Amore*, No. 1:25-cv-639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) (docketed as No. 26-1665), and *United States v. Galvin*, No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026) (docketed as 26-1657). The United States is filing motions to expedite in all three appeals seeking the same briefing schedule.

Defendants oppose this Motion to Expedite Briefing and would like the opportunity to file a response. Defendants-intervenors likewise oppose this Motion and intend to file responses.

## PROCEDURAL BACKGROUND

This is an appeal from the district court's Order in *United States v. Bellows*, No. 1:25-cv-468, 2026 WL 1430481 (D. Me. May 21, 2026), granting Secretary Bellows's Motion to Dismiss the United States' Complaint based on Title III of the CRA.

Congress passed the CRA to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). The CRA "permitted the joinder of States as parties defendant" in such suits and "authorized courts to register voters in areas of systematic discrimination." *Ibid.* In addition, Title III of the CRA "gave the Attorney General access to local voting records." *Ibid.*; *see* 52 U.S.C. 20701 *et seq.*

Under Title III, "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal] general, special, or primary election . . . all records and papers

which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. In the key provision here, Title III further provides:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. 20703. Under 52 U.S.C. 20705, "[t]he United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper."

The NVRA, along with HAVA, contains provisions designed to help the federal government ensure that States are overseeing federal elections in a fair and honest manner and "to protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3). Those statutes' requirements include recordkeeping obligations, 52 U.S.C. 20507(i)(1), and the duty to

make reasonable efforts to maintain lists of eligible voters that do not include the names of ineligible voters, 52 U.S.C. 20507(a)(4)(A)-(B), 21083(a)(1)(A). In HAVA, Congress explicitly established standards for States' voting systems and SVRLs. 52 U.S.C. 21081, 21083.

Of highest importance to this litigation, HAVA requires States to implement a single centralized computerized SVRL, and mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. 21083(a)(1)(A) and (a)(2)(A). This process includes removing "individual[s]," "registrant[s]," and "ineligible voters" who should not appear on the lists. 52 U.S.C. 21083(a)(2)(A)(i)-(iii). The Attorney General may also bring a civil action against any state to enforce HAVA's requirements. 52 U.S.C. 21111.

On July 24, 2025, the United States Department of Justice (the DOJ) sent a letter to Secretary of State Bellows, seeking "information about the actions Maine takes to ensure that ineligible voters are being removed [from the SVRL] and Maine's processes for sending out and tracking confirmation notices." *Bellows*, 2026 WL 1430481, at *2. In this letter, the DOJ requested that Secretary Bellows produce "[t]he current

electronic copy of Maine's computerized [SVRL]" as required by HAVA. *Id.* at *1 (alteration in original). On August 18, 2025, the DOJ sent a second letter to Secretary Bellows requesting Maine's SVRL by August 25, 2025, for the purpose of "ascertain[ing] Maine's compliance with the list maintenance requirements of the NVRA and HAVA." Doc. 1-3, at 2-3. The letter further "explained that the request was an exercise of the United States Attorney General's authority under the [NVRA], [HAVA], and Title III of the Civil Rights Act of 1960." *Bellows*, 2026 WL 1430481, at *2. Because Secretary Bellows refused to comply with the DOJ's demand for Maine's SVRL, the DOJ brought suit on September 16, 2025, alleging that this refusal violated Title III of the CRA, 52 U.S.C. 20703. *See* Doc. 1.

On May 21, 2026, the district court entered an Order dismissing the United States' Complaint. *Bellows*, 2026 WL 1430481, at *10. The district court held that the United States could not compel production of Maine's SVRL under Title III because the SVRL "is not a record that comes into the possession of state officials, but is instead the product of the labors of state officials." *Id.* at *7. In the court's view, Title III's commands "pertain to records and papers that election officials receive

from prospective voters . . . not lists or other tools created by election officials." *Id.* at \*6.

The court also held that Title III cannot be used to enforce the NVRA and HAVA. *Bellows*, 2026 WL 1430481, at \*8. The court first acknowledged that "the text of Title III does not expressly limit the acceptable purposes for which the Attorney General can request documents." *Id.* at \*7. But in determining the sufficiency of the Attorney General's stated purpose for demanding the SVRL, the court "start[ed] not with Title III, but with the text and structure of HAVA and the NVRA." *Ibid.* The court held that "each individual state, and not the U.S. Department of Justice, is the master of its voter list, entrusted with its administration and maintenance." *Ibid.* And the court concluded that to "enforce HAVA and the NVRA," the DOJ "must use the pre-suit investigation and enforcement mechanisms" in those statutes, rather than the records-demand provision of Title III. *Id.* at \*8.

The United States appeals from the Order of Dismissal. The district court's rulings are contrary to the law as written. An expedited appeal is necessary to secure the elections in Maine and permit Maine the time to clean its voter rolls prior to the election this fall.

## ARGUMENT

The United States recognizes that it seeks a tight window for briefing and decision but urges this Court to expedite the appeal because time is short and Maine voters deserve an answer from this Court on such a major issue. In the absence of a prompt resolution of the issue this appeal presents, irreparable harm will occur to Maine voters and to the United States in enforcing laws designed to protect the integrity of elections. Indeed, other federal courts of appeals have expedited appeals in parallel cases brought by the United States demanding SVRLs under the CRA and raising similar issues. *See United States v. Benson*, No. 26-1225 (6th Cir. argued May 13, 2026); *United States v. Oregon*, No. 26-1231 (9th Cir. argued May 19, 2026); *United States v. Weber*, No. 26-1232 (9th Cir. argued May 19, 2026). Moreover, this Court routinely expedites appeals in election cases, given their time-sensitive nature. *See, e.g.*, *Bonas v. Town of N. Smithfield*, 265 F.3d 69, 71 (1st Cir. 2001) (expediting appeal in case seeking to compel the holding of an election); *Uno v. City of Holyoke*, 72 F.3d 973, 978 (1st Cir. 1995) (expediting appeal in a Voting Rights Act case).

**First**, this appeal presents the important purely legal question of whether the United States may demand federal election records, including SVRLs, under the CRA to enforce HAVA and the NVRA.

Section 301 of Title III of the CRA imposes a "sweeping" obligation on election officials. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). It provides that "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701 (formerly 42 U.S.C. 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying . . . by the Attorney General or his representative." 52 U.S.C. 20703. The written demand need only "contain

a statement of the basis and the purpose therefor." *Ibid.*; *see Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

The district court erred in limiting the Attorney General's authority to demand records under Section 303. The phrase "come into his possession" does not exclude from the scope of Section 301 all government-generated records. 52 U.S.C. 20701. If it did, then the most damning of internal memoranda would be beyond the Attorney General's reach and, armed with only voter registration applications, the Attorney General would have no documentary means of determining which applications had been accepted and which rejected. And the Supreme Court has itself used the phrase "come into . . . possession" to refer to materials that an agency "*either create[d] or obtain[ed]*." *United States Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144-145 (1989) (emphasis added) (quoting *Forsham v. Harris*, 445 U.S. 169, 182 (1980)). The phrase "come into his possession" conveys that an election official's responsibility arises at the moment he obtains possession of a covered document; it does not otherwise limit the broad swath of documents covered by the language "relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. 20701.

Furthermore, the district court erred by looking outside Title III of the CRA to find limitations on the purpose of a records demand under Section 303. Neither the NVRA nor HAVA purport to abridge the Attorney General's sweeping authority under Section 303. The district court based its decision not on the text of Title III, nor even on what the NVRA and HAVA say about record demands, but, at least in part, on what the NVRA and HAVA do *not* say about such demands—namely, on the absence of provisions in the NVRA and HAVA giving the Attorney General the authority to demand the SVRL. But there was no need for Congress to restate the Attorney General's preexisting authority to demand records "relating to any . . . registration." 52 U.S.C. 20701. And as for the district court's concern that list maintenance is the State's responsibility, *Bellows*, 2026 WL 1430481, at \*7, as the court acknowledged, *id.* at \*8, both the NVRA and HAVA explicitly give the Attorney General enforcement authority—authority that is properly supported by the records-demand provision of Title III, *see* 52 U.S.C. 20510(a), 21111.

- 13 -

**Second**, an expedited appeal will allow the United States to confirm that Maine's voter rolls are composed solely of individuals who are eligible to vote in the 2026 federal elections.

Maine's next federal election will be held November 3, 2026, and thus is rapidly approaching. Although the NVRA limits "systematic[] remov[als]" within 90 days of "the date of a primary or general election for Federal office," *see* 52 U.S.C. 20507(c)(2)(A), States retain authority to engage in plenty of list-maintenance activities after that date. *See Bell v. Marinko*, 367 F.3d 588, 591-592 (6th Cir. 2004); *cf. Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1344-1346, 1348 (11th Cir. 2014); *Virginia Coal. for Immigrant Rts. v. Beals*, No. 24-2071, 2024 WL 4601052, at *1 (4th Cir. Oct. 27, 2024). Among other things, all States, including Rhode Island, are required by the NVRA to conduct "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant; or . . . change in the residence of the registrant . . . ." 52 U.S.C. 20507(a)(4). Similarly, HAVA mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. 21083(a)(2)(A).

- 14 -

Maine would not be prejudiced by expediting the appeal. If anything, a rapid resolution of this matter will permit Maine to properly conduct an election this fall without the specter of non-citizens and ineligible voters remaining on its voter rolls.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to expedite this case. The United States urges the adoption of the schedule listed above, or any alternative schedule that would allow a decision in time.

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General

s/ James T. Tucker
JAMES T. TUCKER
  Attorney

ANDREW G. BRANIFF
MEREDITH L. BAKER
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3803

Date: June 17, 2026

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2689 words, excluding the parts exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f). This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

This emergency motion also complies with First Circuit Internal Operating Procedure VII(B). The United States filed this motion shortly after the appeal was docketed in the First Circuit on June 15, 2026.

s/ James T. Tucker
JAMES T. TUCKER
 Attorney

Date: June 17, 2026

## CERTIFICATE OF SERVICE

I certify that on June 17, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ James T. Tucker
JAMES T. TUCKER
 Attorney

Date: June 17, 2026