No. 26-1676

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

_____

UNITED STATES,
*Plaintiff-Appellant*,

v.

SHENNA BELLOWS, in her official capacity as Secretary of the State of Maine;
STATE OF MAINE,
*Defendants-Appellees*,

JOHN SCHNECK; MARPHEEN CHANN; LEAGUE OF WOMEN VOTERS OF MAINE,
*Defendants-Intervenors-Appellees*.

_____

On Appeal from the United States District Court for the District of Maine

_____

**<u>LEAGUE OF WOMEN VOTERS OF MAINE'S
RESPONSE TO UNITED STATES OF AMERICA'S OPPOSED MOTION
TO EXPEDITE BRIEFING AND OPPOSED MOTION TO CONSOLIDATE
APPEALS</u>**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Intervenor-Appellee the League of Women Voters of Maine certifies that it is a non-profit corporation with no parent corporation, and that no publicly held company owns any interest in it.

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

    I.     Factual and procedural background ...........................................................3

    II.    *United States v. Amore* and *United States v. Galvin* ...................................5

ARGUMENT ................................................................................................7

    I.     This Court should not expedite this appeal. .................................................7

        A.  Appellant's disagreement with the district court does not warrant expediting the appeal.....................................................................8

        B.  Appellant's unsupported claims about list maintenance do not justify expediting this appeal........................................................................8

        C.  Appellant has caused any delay to date................................................11

        D.  Expediting this appeal will reduce—not promote—judicial efficiency. ....................................................................................................12

    II.    This Court should not consolidate this appeal with *Galvin* or *Amore*. ....13

        A.  Consolidation would not promote efficiency. .....................................14

        B.  There is no good cause to depart from the normal procedures for appeals. ............................................................................................16

        C.  Consolidation is not in the interest of justice as it would prejudice LWVME. .........................................................................................17

CONCLUSION ................................................................................................17

**INTRODUCTION**

As part of an unprecedented effort to amass sensitive voter information across the country, Plaintiff-Appellant the United States of America (Appellant) has sued 30 states and the District of Columbia, seeking to compel production of unredacted voter rolls containing sensitive information about millions of American voters. To date, Appellant has lost all nine of the cases in which a federal district court has issued a ruling, including this case and two others in this Circuit involving Rhode Island's and Massachusetts's voter information. *See United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026), *aff'd*, No. 26-1225, 2026 WL 1815425 (6th Cir. June 24, 2026); *United States v. Galvin*, No. 25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026), *appeal docketed*, No. 26-1657 (1st Cir. June 9, 2026); *United States v. Amore*, No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026), *appeal docketed*, No. 26-1665 (1st Cir. June 9, 2026); *United States v. Fontes*, No. 2:26-cv-66, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026), *appeal docketed*, No. 26-2609 (9th Cir. June 4, 2026); *United States v. Wis. Elections Comm'n*, No. 25-cv-1036, 2026 WL 1430354 (W.D. Wis. May 21, 2026), *appeal docketed*, No. 26-2217 (7th Cir. June 5, 2026); *United States v. DeMarinis*, No. 25-cv-3934, 2026 WL

1780586 (D. Md. June 18, 2026). It has also lost the only case to be decided so far by a federal court of appeals. *United States v. Benson*, No. 26-1225, 2026 WL 1815425, at *2 (6th Cir. June 24, 2026).

Appellant now asks this Court to depart from its normal procedures by (1) expediting this appeal and (2) consolidating it with the appeals involving Rhode Island (*Amore*) and Massachusetts (*Galvin*). The Court should deny both motions. In its Opposed Motion to Expedite, Appellant largely focuses on Maine's upcoming general election. Appellant has known the date of the general election since before it filed this lawsuit and, yet, it has caused delays in this case, including waiting to appeal the district court's decision and requesting a stay in the district court proceedings. Moreover, Appellant will suffer no harm if this appeal proceeds in the normal course. The Seventh Circuit, considering a similar case, recognized that no need existed to expedite the case and declined to grant expedited briefing. Order, *United States v. Wis. Elections Comm'n*, No. 26-2217 (7th Cir. June 23, 2026), Dkt. No. 20. This Court should reach the same conclusion.

Similarly, consolidating appeals is the exception, not the rule. The need to analyze key factual and legal differences across the three cases, as well as different parties, outweighs the issues the three matters share. Consolidation would also prejudice Defendant-Intervenor-Appellee the League of Women Voters of Maine (LWVME or the League). As such, each case should be handled separately. If the

2

Court deems it appropriate, the League does not oppose this appeal being related to *Amore* and *Galvin*, and thereby heard by the same panel, consistent with how the Ninth Circuit has addressed the appeals of similar cases in Oregon and California. *See* Order, *United States v. Weber*, No. 26-1232 (9th Cir. Mar. 17, 2026), Dkt. No. 37-1.[1]

## BACKGROUND

### I.      Factual and procedural background

In the summer of 2025, the United States Department of Justice (DOJ) began demanding computerized, unredacted voter rolls from almost all states, including Maine. In a July 24 letter to Secretary of State Shenna Bellows, DOJ cited Section 20507(i) of the National Voter Registration Act (NVRA) to request "[t]he current electronic copy of Maine's computerized statewide voter registration list," including "all fields contained within the list." ECF No. 1-1 at 1. Secretary Bellows declined, stating in part that "data contained within [Maine's central voter registration system] is confidential and may not be disclosed except as specified by statute." ECF No. 1-2 at 3. Secretary Bellows also provided information regarding Maine's list maintenance procedures. *Id.* at 1-3. After additional correspondence in

---

[1] In its Opposed Motion to Consolidate, Appellant claims that the Ninth Circuit "appeared prepared during oral argument to revisit that procedural decision." Mot. to Consolidate at 4 n.1. The only source Appellant cites for that contention is a single question asked by Judge Koh. The Ninth Circuit has not consolidated those appeals.

which it continued to demand the complete, unredacted voter registration list, Appellant sued Secretary Bellows and the State of Maine on September 16, 2025, alleging violations of the NVRA, the Help America Vote Act (HAVA), and the Civil Rights Act of 1960 (CRA). ECF No. 1. This was the first of what is now 30 such lawsuits against states seeking unredacted voter rolls. Along with the Complaint, Appellant filed a Motion for an Order to Show Cause. ECF No. 5.

Two voters, John Schneck and Marpheen Chann, moved to intervene as defendants on September 23, 2025. ECF No. 10. On September 29, LWVME moved to intervene as a defendant. ECF No. 18. The district court granted both motions to intervene on December 12, 2025. ECF Nos. 49 and 51.

On October 1, 2025, Appellant moved to stay the case in the district court due to a lapse in appropriations. ECF No. 29. The district court stayed the case until November 21, when the United States sought to lift the stay, though funding had resumed over a week earlier on November 12. ECF Nos. 34-35. The case proceeded to briefing on Intervenors' and Defendants' motions to dismiss and Appellant's Motion for an Order to Show Cause. ECF Nos. 52-55, 61-62, 75, 78-83. The parties agreed to a schedule for briefing of those motions. ECF No. 35. The district court held a hearing on March 26, 2026, at which all parties and an *amicus* presented argument. ECF No. 102.

4

On May 21, 2026, the district court issued its order, granting the motions to dismiss and denying Appellant's Motion for an Order to Show Cause. ECF No. 114. As to Appellant's CRA claim, the district court held that (1) Maine's voter roll "is not a record that comes into the possession of state officials, but is instead the product of the labors of state officials," and is therefore not subject to disclosure under the CRA and (2) "the United States' stated purpose for its request is insufficient." *Id.* at 14. The court also concluded that Appellant's HAVA and NVRA claims failed. *Id.* at 20-22. The court entered judgment on May 21, 2026, ECF No. 115, and this appeal followed on June 5, 2026. ECF No. 116.

## II.   *United States v. Amore* and *United States v. Galvin*

Several months after beginning its suit against Maine, and as part of its expanding effort to compel the production of unredacted voter rolls, Appellant sued the Secretaries of State of Rhode Island and Massachusetts. *See* Compl., *United States v. Amore*, No. 25-cv-00639 (D.R.I. Dec. 2, 2025), Dkt. No. 1; Compl., *United States v. Galvin*, No. 25-cv-13816 (D. Mass. Dec. 11, 2025), Dkt. No. 1.[2] *Amore* and *Galvin* differ from this case, and from each other, in key ways. In those cases, Appellant filed a single-claim complaint, alleging a violation of only the CRA

---

[2] For clarity, LWVME refers to docket entries (other than the courts' opinions dismissing the cases) in these district court cases as "*Amore*, Dkt. No. ___" or "*Amore*, Minute Entry ([DATE])" and "*Galvin*, Dkt. No. ___" or "*Galvin*, Minute Entry ([DATE])."

against only the respective Secretaries of State. *Amore*, Dkt. No. 1; *Galvin*, Dkt. No. 1. Appellant also filed a Motion to Compel rather than a Motion for an Order to Show Cause. *Amore*, Dkt. No. 2; *Galvin*, Dkt. No. 6. Separate groups and individuals intervened. *See Amore*, Minute Order (Jan. 6, 2026); *Galvin*, Minute Order (Jan. 6, 2026).

Following briefing and argument, both district courts dismissed, although on different grounds. In *Amore*, the district court held that the Federal Rules of Civil Procedure apply, then proceeded to analyze the complaint under Rule 12(b)(6); *Amore*, 2026 WL 1040637, at *4. The *Amore* court found that the requirement under the CRA that the DOJ provide "a statement of the basis and the purpose therefore" requires the statement of a "factual, not legal basis," and that DOJ had provided no such basis. *Id.* at *5. The court also found that, even if Appellant could provide a basis, it "lacks a legally sufficient purpose." *Id.* at *6. Relying on the decision of the district court in Oregon, *Amore* held that "the 'purpose' required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights." *Id.* (quoting *Oregon*, 2026 WL 318402, at *10). As such, Appellant's purported purpose—assessing compliance with HAVA and the NVRA—was not sufficient. *Id.* Appellant waited about six weeks to appeal the *Amore* order, finally doing so on June 3, 2026. Notice of Appeal, *Amore*, Dkt. No. 53.

6

*Galvin*, on the other hand, held that DOJ failed to provide any basis for its demand, and dismissed for that reason alone. 2026 WL 972129, at *3 ("Because the Court concludes that the Attorney General's letter failed to 'contain a statement of the basis' for the demand as required by law, the Court need not reach the parties' other arguments."). Specifically, *Galvin* determined that the requirement that DOJ state a "basis" was (1) mandatory, (2) must be made expressly in writing, and (3) must be conceptually distinct from the "purpose." *Id.* at *3-4. Finding that the "the Attorney General offered no basis—none—and the demand was therefore facially inadequate," the district court dismissed the matter without addressing the purported purpose, nor the standard of review. *Id.* at *4. Appellant waited almost two months to notice its appeal of the April 9, 2026 order on June 1, 2026. *Galvin*, Dkt. No. 95.

## ARGUMENT

### I.      This Court should not expedite this appeal.

"[E]ach court of the United States shall determine the order in which civil actions are heard and determined," absent certain exceptions not applicable here, or a showing of "good cause." 28 U.S.C. § 1657(a); *see also* L.R. 27(b). Appellant has not identified any harm that it would suffer if this Court allows this appeal to proceed in the normal course, nor has it otherwise established good cause for expediting. The Opposed Motion to Expedite should therefore be denied.

7

**A. Appellant's disagreement with the district court does not warrant expediting the appeal.**

Appellant's first argument for expediting simply summarizes its disagreement with the district court's decision. Mot. to Expedite at 11-13. Appellant claims that this appeal raises an "important purely legal question," but that is true of many appeals that this Court hears in the normal course. *See, e.g.*, *In re Cont'l Inv. Corp.*, 637 F.2d 1, 5 (1st Cir. 1980) ("[E]ven were a particular disqualification motion to raise important questions of law, no interlocutory appeal would lie."). Appellant provides an extended preview of its merits arguments but makes no apparent effort to explain why its legal arguments establish good cause to depart from this Court's normal procedures. The Federal Rules of Appellate Procedure and this Court's local rules provide for the orderly processing of appeals and, in each one, a litigant disagrees with a decision below—Appellant's dispute with the district court's well-reasoned opinion does not establish "good cause."

**B. Appellant's unsupported claims about list maintenance do not justify expediting this appeal.**

Appellant's second argument is based purely on the fact that it would like the unredacted State Voter Registration List (SVRL) to conduct investigations it deems necessary. Mot. to Expedite at 14-15. Appellant cites nothing to establish that simply because there is an upcoming election in November, Maine voters will somehow be unsure of its results without the United States' investigation of Maine's SVRL. Mot.

to Expedite at 3, 10. Such arguments are based on pure conjecture—the proximity to an election does not justify an expedited schedule, and Maine has successfully run a federal election as recently as a few weeks ago.[3]

Nor does Appellant's purported purpose for obtaining this information (examining NVRA and HAVA compliance) justify expedited proceedings, as it has provided no reason to believe that Maine is currently failing to comply with those statutes. Secretary Bellows provided detailed information explaining Maine's list maintenance procedures in response to DOJ's initial demand. ECF No. 1-2. Appellant has not identified any part of those procedures that it believes fails to satisfy the NVRA or HAVA. If Appellant nonetheless wanted more information—despite the NVRA and HAVA not entitling the federal government to participate in the specifics of a state's voter list maintenance program—it could, for example, request a copy of Maine's SVRL under the NVRA's public disclosure provision, 52 U.S.C. § 20507(i)(1), which allows for appropriate redaction of voters' private information. *Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36, 55-56 (1st Cir. 2024). And if Appellant has evidence of non-compliance, it could file a lawsuit to enforce the NVRA or HAVA.

---

[3] *See Maine Results*, NPR (last updated June 19, 2026), https://apps.npr.org/primary-election-results-2026/states/ME.html (reporting results from June 9, 2026 primary for, *inter alia*, U.S. Senate and U.S. House races).

The snapshot of Maine's unredacted voter roll that Appellant seeks, however, is not useful in analyzing list maintenance procedures. And even if it were to prevail in this appeal, Appellant would only be entitled to reinstate its lawsuit against Maine. It cannot abrogate the list maintenance authority that Congress has given to the states, especially when its grounds for doing so is pure conjecture. *See* 52 U.S.C. § 20507(a)(4); *Bellitto v. Snipes*, 935 F.3d 1192, 1203 (11th Cir. 2019); *see also* 52 U.S.C. § 21083(a)(2)(A)(ii).[4] Indeed, under the NVRA, Maine would be *prohibited* from conducting systematic list maintenance as soon as Appellant's preferred briefing concluded. *See* 52 U.S.C. § 20507(c)(2)(A) (requiring states to complete "any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" "not later than 90 days prior to the date of a[n] . . . election for Federal office"). Given Appellant's delays and obfuscations as to what it wants to do with this data, consolidating and rushing this appeal is more likely to cause confusion than resolve it. *Cf. Daggett v. Comm'n on*

---

[4] As LWVME argued below, it appears that Appellant's true purpose is to run unredacted state voter rolls through the Department of Homeland Security's SAVE database, a fact to which Appellant admitted during the hearing in *Amore*. *See* ECF No. 105. On June 22, 2026, however, a district court in the District of Columbia found that the expansion of SAVE, particularly its inclusion of information from the Social Security Administration, was unlawful. *See League of Women Voters v. Dep't of Homeland Sec.*, No. 25-cv-03501, 2026 WL 1784297 (D.D.C. June 22, 2026).

*Governmental Ethics & Election Pracs.*, 205 F.3d 445, 450 (1st Cir. 2000) (consolidation appropriate to *clarify* law prior to an election).

### C. Appellant has caused any delay to date.

Appellant has not acted with haste in this case, which weighs in favor of denying its motion. "Any party intending to seek expedited briefing of the merits of the appeal should file an appropriate motion as soon as practicable." *Libby v. Fecteau*, No. 25-1385, 2025 WL 1210679, at *1 (1st Cir. Apr. 25, 2025). Appellant, however, waited two weeks after the district court's decision to notice its appeal, *see* ECF Nos. 115 and 116, and then waited over a week to file its Opposed Motion for Expedited Briefing. *See* Mot. to Expedite. In the district court, despite knowing the date of the election prior to filing its lawsuit, Appellant sought an almost six-week stay and then agreed to a consolidated briefing schedule.

Appellant also moved slowly in *Galvin* and *Amore*. In *Galvin*, Appellant waited 53 days to file a Notice of Appeal—almost the full period allowed under Rule 4(a)(1)(B). *Galvin*, Dkt. No. 95. Likewise, in *Amore*, Appellant waited 42 days to file its Notice of Appeal. *Amore*, Dkt. No. 53.

Appellant has similarly delayed in several of the other 31 cases it filed seeking similar records, further demonstrating a lack of urgency here. In Washington, Appellant failed to serve the summons and complaint within the 90-day period specified under Federal Rule of Civil Procedure 4(m), prompting the district court

11

to issue an Order to Show Cause. *United States v. Hobbs*, No. 25-cv-6078 (W.D. Wash. Mar. 10, 2026), Dkt. No. 8. And in Georgia, Appellant moved to disqualify the judge and to continue a hearing on motions to dismiss and its own motion to compel only three business days before the scheduled date. Mot. to Continue, *United States v. Raffensperger*, No. 26-cv-00485 (N.D. Ga. May 29, 2026), Dkt. No. 113.

None of this comports with Appellant's new-found arguments that everyone else, including this Court, must now meet its desired timeline and procedure, nor can it constitute good cause. *See Nat'l Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 114 (2d Cir. 2018) ("Good cause cannot arise as a result of the [party's] own delay."). The fact that Appellant has acted without expediency in related cases undercuts any argument it now makes about urgency.

### D. Expediting this appeal will reduce—not promote—judicial efficiency.

Permitting this appeal to proceed in the normal course is likely to be more efficient for all parties and the Court. Since the Appellant noticed this appeal and filed its Opposed Motion to Expedite, the U.S. Court of Appeals for the Sixth Circuit issued its decision in *United States v. Benson*, affirming the district court's decision to dismiss Appellant's complaint demanding Michigan's unredacted voter information. 2026 WL 1815425. Appeals of the district court cases in which Appellant sought information from California and Oregon have been fully briefed and argued before the Ninth Circuit. *United States v. Weber*, No. 26-1232 (9th Cir.

argued May 19, 2026); *United States v. Oregon*, No. 26-1231 (9th Cir. argued May 19, 2026). And although other circuit's decisions are not binding on this Court, the parties and this Court may benefit from the reasoning in those decisions, even if each appeal involves separate issues. Appellant seems to recognize this and has moved to stay the appeal in the case regarding Arizona's voter rolls, pending decisions in *Weber* and *Oregon*. Mot. to Hold the Briefing Schedule in Abeyance at 4, *United States v. Fontes*, No. 26-3609 (9th Cir. June 12, 2026) ("Holding the briefing schedule in this appeal in abeyance pending *Oregon* and *Weber* thus remains the most efficient means for this Court to resolve this case."). The Ninth Circuit granted that motion on June 22, 2026. Order, *United States v. Fontes*, No. 26-3809 (9th Cir. June 22, 2026). Rushing this appeal unnecessarily, however, reduces the likelihood that any additional Court of Appeals will have the opportunity to issue a decision in sufficient time to be considered here.

## II.   This Court should not consolidate this appeal with *Galvin* or *Amore*.

The Federal Rules of Appellate Procedure provide for consolidation only when two or more parties file separate timely notices of appeal from an order or judgment of "a district-court." Fed. R. App. P. 3(b)(1). In considering whether to consolidate appeals, "a court 'should consider both equity and judicial economy.'" *Chem One, Ltd. v. M/V RICKMERS GENOA*, 660 F.3d 626, 642 (2d Cir. 2011) (quoting *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir.

13

1999)). Consolidation may be appropriate, for example, where appeals "share a common record." *Bansal v. Consulate Gen. of India Houston*, 99 F. App'x 535, 537 (5th Cir. 2004). Efficiency, however, is not paramount, and "cannot be permitted to prevail at the expense of justice." *Chem One*, 660 F.3d at 642 (citation omitted). Here, consolidation would not further the Court's or the parties' interest in efficiency, nor is there any good reason to depart from the rules. And consolidation would not be in the interest of justice, as LWVME would suffer prejudice if these matters were consolidated. The Court should therefore deny Appellant's Opposed Motion to Consolidate.

### A. Consolidation would not promote efficiency.

Consolidating this appeal with *Galvin* and *Amore* would hinder, rather than promote, judicial efficiency. Each case involves different parties and has different factual backgrounds, and each motion to dismiss hinged on different legal findings, even if they share certain issues. *See Gantt v. Messitte*, 59 F.3d 166 (4th Cir. 1995) ("We deny Appellant's motion to consolidate this appeal with Appeal Nos. 94-7303 and 94-7384 because these appeals arose from separate district court cases and involve different facts and issues."). And there is no need to expedite these cases, making consolidation less appropriate.

*First*, this case, unlike *Galvin* and *Amore*, involves all three of Appellant's claims—not only its claim under Title III of the CRA but also those under the NVRA

14

and HAVA, all of which the district court addressed in its decision below. ECF No. 114 at 20-22. While the district court concluded that Appellant's pursuit of those claims was "half-hearted"—and "for good reason," because neither had merit, *id.* at 20, Appellant did not withdraw either claim. Both remained part of the case below through judgment, a fact which Appellant now elides. Mot. to Consolidate at 3-4. Appellant has not indicated any intention to forfeit those claims on appeal. *Galvin* and *Amore*, by contrast, involved only a single count under the CRA. *See Galvin*, Dkt. No. 1; *Amore*, Dkt. No. 1.

*Second*, and relatedly, the court below decided the case on different grounds than the district courts in *Amore* and *Galvin*. Because Appellant brought different claims in this case, the district court was required to address all of them. ECF No. 114 at 20-22. And while all three cases involve a CRA claim, each district court analyzed it differently. The district court in this case addressed the scope of records covered by the CRA and concluded that Maine's voter roll is not among them. *Id.* at 14 ("[T]he United States cannot utilize Title III to compel production of Maine's SVRL because it is not a record that comes into the possession of state officials, but is instead the product of the labors of state officials."). Neither *Amore* nor *Galvin* addressed this issue. *Amore* focused on whether Appellant had provided a legally sufficient statement of "the basis and the purpose" of its request to meet the requirements of the CRA, while *Galvin* held that Appellant failed to provide any basis

15

as required by the CRA. In other words, each court reached its conclusion in different ways, warranting separate analysis on appeal.

*Third*, each case involves different parties and a different record. Indeed, other than Appellant, there are no common parties across all three appeals. *Cf.* Fed. R. App. P. 3(b). The appellee in each is a separate secretary of state and, in this case, the State of Maine. While each appellee has appropriately resisted Appellant's unlawful demands for state voter records, each also operates under different state laws and regulations which may be implicated in their separate appeals. *Compare* ECF No. 114 at 3-4 (describing Maine law establishing and protecting the computerized state over file) *with Amore*, 2026 WL 1040637, at *2 (addressing Rhode Island law). The record in each case is different, reflecting the specific demands Appellant made to each state, each state's response, and the unique arguments in each matter. And each case involves separate defendant-intervenor-appellees, totaling eight individual voters and seven organizations. Consolidation would therefore not streamline the matter, but risk fractured briefing and argument.

### B. There is no good cause to depart from the normal procedures for appeals.

Appellant's request to consolidate these appeals also lacks merit because there is no urgent or pressing need to depart from this Court's normal procedures. *Cf.* Mot. to Consolidate at 4-5. As described more fully above, any existing delay is due to

how Appellant handled these cases below, and the relief sought has no bearing on the upcoming 2026 federal elections. *See supra* Argument I.C.

**C. Consolidation is not in the interest of justice as it would prejudice LWVME.**

Should this case be consolidated, particularly in the absence of good cause, it would prejudice LWVME. As described in Argument section II.A, *supra*, this appeal raises distinct claims and issues from *Amore* and *Galvin*. The League, along with the other parties, sought to fully address those issues below, not only by intervening but by moving to dismiss and resisting Appellant's Motion for an Order to Show Cause. ECF Nos. 18, 52-53. This included participation in oral argument. If the Court consolidated these three cases, LWVME would become one of nine sets of appellees, and may not be able to fully present its arguments. This appeal involves an unprecedented effort by the federal government to gather sensitive information about nearly a million voters in Maine, including League members, and LWVME should have the normal opportunity to address the Court. Given the lack of good cause to consolidate, this weighs heavily against Appellant's motion.

### CONCLUSION

For the reasons stated herein, this Court should deny the United States's Opposed Motion to Expedite Briefing and the Opposed Motion to Consolidate and hear this appeal in due course.

June 26, 2026

Maura Eileen O'Connor
Brennan Center for Justice
at NYU School of Law
777 6th St., NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew B. Garber
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
Tel: (646) 292-8310
Fax: (212) 463-7308
garbera@brennan.law.nyu.edu

Respectfully submitted,

<u>/s/ *Sejal Jhaveri*</u>
Brent Ferguson
Sejal Jhaveri
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
bferguson@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org

Allan K. Townsend, Esq. (he/him)
Johnson, Webbert & Beard, LLP
1 Bowdoin Mill Island, Suite 300
Topsham, ME 04086
Tel: (207) 623-5110
Fax: (207) 622-4160
allan@work.law

*Counsel for Defendant-Intervenor-Appellee League of Women Voters of Maine*

18

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I hereby certify that the foregoing Response to Motion to Expedite and Motion to Consolidate contains 4,201 words, consistent with the length limitation in Fed. R. App. P. 27(d)(2). This response has been prepared using a proportionally spaced typeface using Microsoft Word in 14-point Time New Roman, consistent with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type styles requirements of Fed. R. App. P. 32(a)(6).

Dated:  June 26, 2026                                    Signature:  /s/ *Sejal Jhaveri*

## <u>CERTIFICATE OF SERVICE</u>

I, Sejal Jhaveri, do hereby certify that on this 26th day of June, 2026, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities.


Dated: June 26, 2026                     Signature:   /s/ *Sejal Jhaveri*