No. 26-1676

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*

v.

SHENNA BELLOWS, in her official capacity as Secretary of the State of Maine,
and the STATE OF MAINE,

*Defendants-Appellees*

JOHN SCHNECK, MARPHEEN CHANN, and LEAGUE OF WOMEN VOTERS
OF MAINE,

*Intervenors-Defendants-Appellees*

On Appeal from the United States District Court for the District of Maine
No. 1:25-cv-00468-LEW
Hon. Lance E. Walker

_____

## INTERVENORS-DEFENDANTS-APPELLEES JOHN SCHNECK AND MARPHEEN CHANN'S OPPOSITION TO UNITED STATES' MOTION TO EXPEDITE APPEAL

_____

David R. Fox (1st Cir. No. 1189538)
Christopher D. Dodge (1st Cir. No. 1185553)
Branden D. Lewiston (1st Cir. No. 1224684)
Tori A. Shaw (1st Cir. No. 1224637)
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Ste. 400
Washington, D.C. 20001
Tel.: (202) 948-1135

*Attorneys for Intervenors-Defendants-Appellees*
*John Schneck and Marpheen Chann*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................ ii

INTRODUCTION & BACKGROUND ...............................................................1

ARGUMENT ......................................................................................................4

I.  DOJ's failure to act expeditiously is reason alone to deny its Motion............4

II.  DOJ's baseless speculation about election security fails to show any serious risk of irreparable harm to any party or the public..........................................9

III.  Even if DOJ prevails, it cannot demand any systematic changes to voter rolls until after the November election, undercutting any need to expedite...........12

CONCLUSION .................................................................................................17

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Am. C.R. Union v. Phila. City Comm'rs*,
  872 F.3d 175 (3d Cir. 2017) .................................................................. 10, 11

*Arcia v. Florida Secretary of State*,
  772 F.3d 1335 (11th Cir. 2024) ............................................................. 14, 15

*Bell v. Marinko*,
  367 F.3d 588 (6th Cir. 2004) ....................................................................... 14

*Bellitto v. Snipes*,
  935 F.3d 1192 (11th Cir. 2019) ....................................................... 10, 11, 12

*Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc.*,
  370 F.3d 151 (1st Cir. 2004) .......................................................................... 9

*In re Walsh*,
  229 F. App'x 58 (3d Cir. 2007) ...................................................................... 5

*Mi Familia Vota v. Fontes*,
  129 F.4th 691 (9th Cir.) ............................................................................... 14

*Nader v. Land*,
  115 F. App'x 804 (6th Cir. 2004) ................................................................... 5

*Pub. Int. Legal Found v. Benson*,
  136 F.4th 613 (6th Cir. 2025) ...................................................................... 10

*United States v. Amore*,
  No. 1:25-CV-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) ..... 6, 8

*United States v. Bellows*,
  No. 1:25-CV-00468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026) .................. 8

*United States v. Benson*,
  No. 1:25-CV-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ......................... 8

*United States v. Benson*,
  No. 26-1225, 2026 WL 1815425 (6th Cir. June 24, 2026) ............................. 1, 3, 7

ii

*United States v. Clarke*,
573 U.S. 248 (2014)............................................................................................16

*United States v. DeMarinis*,
No. 1:25-cv-03934, 2026 WL 1780586 (D. Md. June 18, 2026) ..............................8

*United States v. Fontes*,
No. 2:26-CV-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) ......8

*United States v. Galvin*,
No. 1:25-CV-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026)................. 6, 8

*United States v. Oregon*,
No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ................8, 16

*United States v. Weber*,
816 F. Supp. 3d 1168 (C.D. Cal. 2026)....................................................... 8, 16

*United States v. Wis. Elections Comm'n*,
No. 3:25-CV-1036-JDP, 2026 WL 1430354 (W.D. Wis. May 21, 2026) ................8

*Va. Coal. for Immigrant Rights v. Beals*,
No. 24-2071, 2024 WL 4601052 (4th Cir. Oct. 27, 2024) .........................................15

*Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*,
645 F.3d 26 (1st Cir. 2011)...................................................................................5

## Statutes

52 U.S.C. § 20507...............................................................................................10, 11, 12

52 U.S.C. § 21083..................................................................................................10, 12

## Rules

Fed. R. App. P. 31(a)(1)..............................................................................................6

**Other Authorities**

Jen Fifield & Zach Despart, *A federal tool to check voter citizenship keeps making mistakes. It led to confusion in Texas*, Tex. Trib. (Feb. 13, 2026), https://perma.cc/PCQ4-PG5E ...................................................................................15

Kaylie Martinez-Ochao, Eileen O'Connor & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Ctr. for Just. (June 8, 2026), https://perma.cc/Z3AR-6WA7 ............................................................ 7

Off. of Legal Couns., *Authority to Obtain and Share Statewide Voter Roll Data* at 1, 39 (May 12, 2026), https://perma.cc/HVS6-AU6E .................................14

## INTRODUCTION & BACKGROUND[1]

After waiting 15 days from the district court's entry of judgment to notice this appeal, and yet another 9 days to move to expedite, the U.S. Department of Justice is suddenly in a hurry. Not, mind you, to file its *own* brief—it does not plan to do that until July 8—48 days after the district court's decision, 33 days after the notice of appeal, and 21 days after the motion to expedite. But DOJ wants Defendants and the Court to sprint while it dawdles, shortening Defendants' response brief deadline by nine days and asking the Court to either convene a special argument sitting or forgo argument in this important appeal altogether. The Court should deny the DOJ's motion and hear the appeal in the ordinary course, after holding oral argument as this Court has long done in every counseled, non-immigration civil appeal. Indeed, the Seventh Circuit recently denied DOJ's similar motion to expedite its appeal of a

---

[1] The Department of Justice filed materially identical motions to expedite this appeal and two similar appeals from the U.S. District Courts for the Districts of Massachusetts and Rhode Island. *See United States v. Galvin,* No. 26-1657, and *United States v. Amore*, No. 26-1665. Undersigned counsel also represent intervenors in those appeals, and this Opposition is nearly identical to the opposition filed on June 22, 2026 in *Galvin* and that filed on June 24, 2026 in *Amore*. The only differences of substance are: (1) the different procedural histories, (2) the States' different election schedules, and (3) that this Opposition and the *Amore* opposition notes that the Sixth Circuit recently affirmed the dismissal of DOJ's parallel lawsuit against Michigan, *United States v. Benson*, No. 26-1225, 2026 WL 1815425, at *9 (6th Cir. June 24, 2026), and that the Seventh Circuit recently denied DOJ's nearly identical motion to expedite its similar appeal in its case against Wisconsin, *see* Order, *United States v. Wis. Elections Comm'n*, No. 26-2217 (7th Cir. June 23, 2026), Dkt. No. 20.

Wisconsin court's dismissal order of its virtually identical complaint seeking to obtain the same relief it seeks here from Maine, from Wisconsin. *See* Order, *Wis. Elections Comm'n*, No. 26-2217 (7th Cir. June 23, 2026). This Court should do the same.

The merits are important, if ultimately straightforward, and should not be rushed. This is one of 31 similar lawsuits commenced by DOJ as part of its unprecedented campaign to amass personally identifying information about every registered voter in the country. DOJ began by demanding that every State provide it with unredacted versions of their statewide voter registration lists, which include sensitive personal information that is typically protected from disclosure by state law. Most States refused DOJ's demand, so DOJ resorted to suing 30 States and the District of Columbia, including all four States in this Circuit. The U.S. District Courts for the Districts of Massachusetts, Rhode Island, and Maine each dismissed DOJ's lawsuits—as have all nine district courts to address DOJ's claims to date. (The motion to dismiss DOJ's case against New Hampshire remains pending.)

DOJ's claimed source of authority for these lawsuits has shifted over time, but it eventually landed on the Civil Rights Act of 1960 ("CRA"), a voting rights statute from the Civil Rights Era. DOJ contends that the rarely litigated records preservation and disclosure provision in the CRA gives DOJ authority to demand records to assess States' compliance with two other more recently enacted voter registration laws, the

2

National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"), even though both of those laws contain their own enforcement provisions and neither authorizes the DOJ's unprecedented dragnet of document demands. Eight of the nine district court orders dismissing DOJ's claims have been appealed. Recently, the Sixth Circuit affirmed the dismissal of DOJ's suit for Michigan's voter list. *See Benson*, 2026 WL 1815425, at \*9 (6th Cir. June 24, 2026). DOJ's appeals in the Ninth Circuit have been argued and await decision.

The Court should reject DOJ's motion to expedite, first, because DOJ has not itself acted with any of the urgency it now seeks to impose on Defendants and the Court. Far from taking any concrete steps to expedite the case in the district court, DOJ proposed an unhurried briefing schedule under which motions to dismiss would not become ripe until four months after DOJ sued, and DOJ failed to promptly appeal when those motions to dismiss were granted. And DOJ provides no adequate explanation for why expedition is needed. The most it  can muster are baseless insinuations that upcoming elections will not be "secure" if it does not get unprecedented access to personal voter information. Mot. 3, 9. That unsubstantiated allegation is absurd. The CRA has existed for over six decades, yet never before has it been misused as part of a nationwide dragnet to collect the private information of millions of voters. The nation has enjoyed "secure" elections during that time, DOJ's scaremongering notwithstanding. And it is, in any event, already too late for any

3

systematic program to remove voters from the Maine voter rolls that could conceivably result from this appeal. The NVRA prohibits the systematic cancellation of voter registrations in the 90 days ahead of an election, a prohibition that will begin in Maine in early August. No matter the outcome of this appeal, DOJ cannot as a practical matter compel the voter list purges it seems to desire until *after* the November election, further undercutting any need to resolve this appeal—and the important issues it raises—on an artificially rushed timeline. Perhaps for these reasons, the Seventh Circuit recently denied DOJ's similar motion to expedite its appeal of a Wisconsin district court's dismissal order. [2]

## ARGUMENT

### I.    DOJ's failure to act expeditiously is reason alone to deny its Motion.

DOJ's lackadaisical pace in this litigation belies any need to expedite. DOJ took no steps to expedite the district court proceedings. Rather, DOJ agreed to a briefing schedule in which motions to dismiss would not become ripe until January 16, 2026, four months after DOJ first sued. *See* Status Report, *United States v. Bellows*, No. 1:25-cv-00468-LEW (D. Me. Nov. 21, 2025), ECF No. 35. When the district court set a late March hearing on the motions to dismiss, DOJ did not urge

---

[2] DOJ also moves to consolidate this appeal with that in *United States v. Galvin*, No. 26-1657 and *United States v. Amore*, No. 26-1665. Intervenor-Appellees John Schneck and Marpheen Chann oppose consolidating but are not opposed to treating the cases as related. If the Court grants the motion to consolidate, Intervenors request the same briefing and argument rights that they would enjoy absent consolidation.

the court to forego argument and rule quickly on the papers, as it asks this Court to do on appeal. And when the court dismissed the case on May 21, 2026, DOJ sat on its hands, waiting 15 days before even filing its notice of appeal. *See* Notice of Appeal, *Bellows*, No. 1:25-cv-00468-LEW (D. Me. June 5, 2026), ECF No. 116. DOJ's insistence that "this timing is not of United States' making," Mot. 3, is irreconcilable with that procedural history. DOJ's delay alone is sufficient reason to deny the motion to expedite. *E.g.*, *Nader v. Land*, 115 F. App'x 804, 806 (6th Cir. 2004) ("[The Court] den[ies] the motion to expedite this appeal, principally because the plaintiffs have not proceeded expeditiously."); *In re Walsh*, 229 F. App'x 58, 61 (3d Cir. 2007) (per curiam) (denying motion to expedite appeal when it was not "made promptly"); *cf. Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 35 (1st Cir. 2011) (explaining the "failure to act sooner undercuts the sense of urgency that ordinarily accompanies" a motion for extraordinary relief (quotation omitted)).

It gets worse, however, because DOJ delays even now as it seeks expedition. DOJ requests that its opening brief be due on July 8—48 days after the order dismissing DOJ's suit in Maine and 33 days after its notice of appeal. Yet, despite helping itself to such a leisurely briefing schedule, DOJ asks this Court to give Defendants just 21 days to respond—substantially less than the 30 days that the rules provide. *See* Fed. R. App. P. 31(a)(1). DOJ makes no effort to explain how this

lopsided allotment comports with its supposed need for expedition. If this appeal were truly so exigent, DOJ could file its merits brief now, thereby speeding up the schedule by operation of the ordinary rules.

DOJ also procrastinated in the appeals it seeks to consolidate with this one. When the district court in Massachusetts dismissed DOJ's substantially identical suit, DOJ waited *53 days* to notice the appeal. *See United States v. Galvin*, No. 1:25-CV-13816-LTS, 2026 WL 972129, at *6 (D. Mass. Apr. 9, 2026); Notice of Appeal, *Galvin*, No. 1:25-CV-13816-LTS (D. Mass. June 1, 2026), ECF No. 95. And when the district court in Rhode Island dismissed DOJ's claim for that State's unredacted voter list, DOJ waited *47* days to notice the appeal. *United States v. Amore*, No. 1:25-CV-00639-MSM-PAS, 2026 WL 1040637, at *6 (D.R.I. Apr. 17, 2026); Notice of Appeal, *Amore*, No. 1:25-CV-00639-MSM-PAS (D.R.I. June 3, 2026), Dkt. No. 53. Yet DOJ filed cookie-cutter motions to expedite in both of those appeals, notwithstanding its delay. Appellant's Mot. Expedite, *Galvin*, No. 26-1657 (1st Cir. June 12, 2026); Appellant's Mot. Expedite, *Amore*, No. 26-1665 (1st Cir. June 17, 2026). These are not the actions of a litigant that truly believes its claims require expedited proceedings.[3]

---

[3] DOJ has plodded along at the same leisurely pace in district courts across the country. For example, after DOJ failed to timely serve its complaint demanding Washington's unredacted voter list, the district court issued an order to show cause why the case should not be dismissed for lack of prosecution—which eventually prompted DOJ to serve the complaint more than 100 days after it filed suit. Order,

DOJ's rushed schedule would also give short shrift to the important issues in this case, which implicate the privacy and voting rights of millions of citizens, as well as the balance of authority between the States and the federal government when it comes to voter registration. These important issues are not cabined to Maine—DOJ has filed 31 substantially identical suits across the nation, including in 11 of the 13 circuits.[4] Recently, the Sixth Circuit affirmed the district court's dismissal of DOJ's suit for Michigan's unredacted voter list, reasoning that a statewide voter registration does not come into the possession of state officials and therefore falls outside the scope of the CRA. *See Benson*, No. 26-1225, 2026 WL 1815425, at *9 (6th Cir. June 24, 2026). The Sixth Circuit also concluded that DOJ failed to state both a basis and purpose for its demand in a single letter, as Title III requires. *Id.* at *13. DOJ's appeals in the Ninth Circuit have been argued and await decision. And, as noted, the Seventh Circuit recently denied DOJ's request to expedite. *See* Order, *Wis. Elections Comm'n*, No. 26-2217 (7th Cir. June 23, 2026).

---

*United States v. Hobbs*, 3:25-CV-06078-SKV (W.D. Wash. Mar. 26, 2026), ECF No. 22. Even where DOJ *has* managed timely service, it has often waited months. *See United States v. Koski*, 3:26-CV-00042-RCY (E.D. Va. Apr. 14, 2026), ECF No. 33 (serving complaint 77 days after filing); *United States v. Evans*, 1:25-CV-4403-RDM (D.D.C. Feb. 3, 2026), ECF No. 31 (serving complaint 46 days after filing). DOJ's conduct in these cases reveals that it sees no need to move quickly when it comes to obtaining unredacted statewide voter registration lists.

[4] Kaylie Martinez-Ochao, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (June 8, 2026), https://perma.cc/Z3AR-6WA7.

While courts have uniformly rejected DOJ's lawsuits, the grounds for dismissal have varied—reflecting both the novelty of DOJ's claim and its many defects. *See, e.g.*, *United States v. Bellows*, No. 1:25-CV-00468-LEW, 2026 WL 1430481, at *6–9 (D. Me. May 21, 2026) (dismissing because voter lists are outside the scope of the CRA because they do not "come into" the possession of election officials and because investigating list maintenance is not a valid purpose for a CRA demand); *Galvin*, No. 1:25-CV-13816-LTS, 2026 WL 972129, at *3–6  (dismissing because DOJ failed to state a factual basis for its CRA demand, as the statute requires); *United States v. Amore*, No. 1:25-CV-00639-MSM-PAS, 2026 WL 1040637, at *4–6 (D.R.I. Apr. 17, 2026) (dismissing because DOJ failed to state a factual basis for its CRA demand and because its stated purpose did not plausibly relate to investigating violations of voting rights).[5] This appeal therefore involves important questions that implicate millions of voters, reflects diverse and varied reasoning among the lower courts, and is likely to be resolved while multiple other

---

[5] *See also United States v. Oregon*, No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026), *argued*, No. 26-1231 (9th Cir. May 19, 2026); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *argued*, No. 26-1232 (9th Cir. May 19, 2026); *United States v. Benson*, No. 1:25-CV-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *argued*, No. 26-1225 (6th Cir. May 13, 2026); *United States v. Fontes*, No. 2:26-CV-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026), *appeal docketed*, No. 26-3609 (9th Cir. June 4, 2026); *United States v. Wis. Elections Comm'n*, No. 3:25-CV-1036-JDP, 2026 WL 1430354 (W.D. Wis. May 21, 2026), *appeal docketed*, No. 26-2217 (7th Cir. June 5, 2026); *United States v. DeMarinis*, No. 1:25-cv-03934, 2026 WL 1780586 (D. Md. June 18, 2026).

courts of appeals weigh the same questions. This Court should not rush pell-mell into an appeal that so clearly calls for careful briefing, oral argument, and considered judgment.

## II. DOJ's baseless speculation about election security fails to show any serious risk of irreparable harm to any party or the public.

DOJ claims that "prompt resolution" of this appeal is necessary because otherwise "irreparable harm *will* occur to Maine voters" and other States. Mot. 10 (emphasis added). But that assertion is entirely unsupported; indeed, DOJ does not even explain *what* harm might befall States or voters absent expedited resolution of this appeal, which will only resolve the threshold question of whether DOJ has stated a claim to obtain certain private voter data. DOJ's theory of irreparable harm, though largely unexplained, appears to be that voter rolls in Maine could "*potentially*" include ineligible voters. Mot. 3 (emphasis added). But such speculation does not come close to demonstrating irreparable harm. Rather, "[a] finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004).

DOJ's theory of irreparable harm also suffers from at least two fundamental legal misconceptions concerning *who* is responsible for conducting voter list maintenance and *what* federal law requires with respect to voter roll hygiene. Voter list maintenance is a responsibility of the *States*, not the federal government. *See* 52

9

U.S.C. § 20507(a)(4); *id.* § 21083(a)(1). And the NVRA does not require States—and certainly not DOJ—to ensure that their "voter rolls are composed solely of individuals who are eligible to vote in the 2026 federal elections," as DOJ claims. Mot. 14. To the contrary, in order to *protect* voters against the irreparable harm that occurs when they are removed in error when list maintenance is conducted in a rushed or haphazard manner, the NVRA *forbids* States from removing certain ineligible voters—namely those who have moved away—absent express voter consent or the passage of several election cycles. *See* 52 U.S.C. § 20507(d)(1). The NVRA therefore expressly contemplates that at least *some* residually ineligible voters will remain on the rolls for some period of time. Further, the statute only requires that the States make "*reasonable* effort[s]" to remove certain categories of ineligible voters from their rolls. *Id.* § 20507(a)(4) (emphasis added). Those efforts "need not be perfect, or even optimal," just "within the bounds of rationality." *Pub. Int. Legal Found v. Benson* , 136 F.4th 613, 625 (6th Cir. 2025); *see also Bellitto v. Snipes*, 935 F.3d 1192, 1207 (11th Cir. 2019) ("[T]he NVRA only requires . . . a reasonable effort, not an exhaustive one . . . ."); *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 178–79 (3d Cir. 2017) (explaining the NVRA "places limited requirements on states to remove ineligible voters from the rolls"). DOJ cannot even muster enough to allege that Maine is falling short of this modest list

10

maintenance standard, never mind that it is doing so in a manner that constitutes *irreparable harm* to any party or the public.

Finally, in a last gambit, DOJ raises the "specter of non-citizens . . . remaining on [the] voter rolls" in elections this fall. Mot. 15. But it bears emphasis that DOJ *never* raised the issue of noncitizens appearing on state voter rolls in *any* of its pre-suit correspondence with Maine, and likewise failed to make—never mind plausibly allege or substantiate—such an allegation in its pleadings. This scaremongering about noncitizen voters is not only baseless, but also untethered to the NVRA itself, which imposes affirmative list maintenance obligations on States only as to specific categories of ineligible voters—namely those who move or die—but notably not noncitizens. *See* 52 U.S.C. 20507(a)(4); *see also Bellitto*, 935 F.3d at 1195 (explaining the NVRA "requires a reasonable effort to remove *only* those voters who become ineligible because of death or change of address" (emphasis added)); *Am. C.R. Union*, 872 F.3d at 182 ("By its terms, the mandatory language in Section 8(a)(4) *only* applies to registrants who have died or moved away." (emphasis added)).[6] In short, DOJ's newly raised and unsubstantiated concern about

---

[6] While the NVRA only places *affirmative* list removal obligations on States as to specific categories of ineligible voters, other provisions of the NVRA meant to avoid improper removals sweep more broadly. *Compare* 52 U.S.C. § 20507(a)(4) (affirmatively requiring States to make "reasonable effort" to remove specific categories of ineligible voters), *with id.* § 20507(c)(2)(A) (requiring States to

noncitizens possibly being registered to vote provides no basis to expedite this appeal.[7]

**III.    Even if DOJ prevails, it cannot demand any systematic changes to voter rolls until after the November election, undercutting any need to expedite.**

Finally, DOJ claims that voters and election officials alike require a "quick answer" here, Mot. 3, apparently so that drastic but unspecified actions can be taken before the midterm elections. But regardless of how this appeal is decided, DOJ's belated attempt to expedite these proceedings comes too late. The NVRA bars "*any* program . . . to systematically remove*" voters from a State's rolls within 90 days of a primary or general election. 52 U.S.C. § 20507(c)(2)(A) (emphasis added). Maine's primary election already occurred on June 9, leaving the November 3 general election as the next federal election this cycle. Accordingly, August 5 is the deadline to complete systematic removals before the NVRA's "quiet period" begins for the November general election. After then, Maine cannot be made to systematically remove voters from its rolls. Accordingly, the ship has sailed on DOJ's aim of forcing voter purges before the 2026 elections, as the Seventh Circuit

---

complete "*any* program" for systematic removal of ineligible voters "not later than 90 days prior" to a primary or general election (emphasis added)).

[7] Since "[n]othing in HAVA broadens the scope of the NVRA's list-maintenance obligations," *Bellitto*, 935 F.3d at 1202, a State's list-maintenance obligations under HAVA are the same as under the NVRA. *See* 52 U.S.C. § 21083(a)(2)(A)(i) (stating list maintenance obligations under HAVA are "in accordance with" the NVRA).

may have recognized in recently denying a similar motion to expedite from a dismissal order in Wisconsin. *See* Order, *Wis. Elections Comm'n*, No. 26-2217 (7th Cir. June 23, 2026). Notably, the timing of this appeal and the Wisconsin appeal are identical: the district courts in both granted motions to dismiss on May 21, and DOJ noticed appeals in both on June 5. *Compare* Notice of Appeal, *Wis. Elections Comm'n*, No. 26-2217 (7th Cir. June 5, 2026), *with* Notice of Appeal, *Bellows*, No. 1:25-cv-00468-LEW (D. Me. June 5, 2026), ECF No. 116.

DOJ notes that two other circuits previously expedited appeals in these cases, but the Seventh Circuit's recent denial of a similar motion to expedite is far more instructive here than the earlier orders on motions to expedite from the Sixth and Ninth Circuits. The appeals in the Sixth and Ninth Circuit were filed more than three months ago, and DOJ sought to expedite them—specifically *because* it desired decisions *before* August and the start of the NVRA's quiet period. *See* Appellants' Mot. Expedite at 15, *Benson*, No. 26-1225 (6th Cir. Feb. 27, 2026), ECF No. 6-1 ("Michigan's next federal election is rapidly approaching on November 3, 2026, and *Michigan must finish* removing nonvoters from its rolls in systemic processes *by* August 4, 2026" (first emphasis added)); Appellant's Mot. Expedite at 3, *Weber*, No. 26-1232 (9th Cir. Mar. 3, 2026), ECF No. 12 (similar); Appellant's Mot. Expedite at 3, *Oregon*, No. 26-1231 (9th Cir. Mar. 3, 2026), ECF No. 12 (similar). But under DOJ's proposed schedule here, as in the Seventh Circuit, DOJ's own reply brief

13

would be due on August 5—the day *after* the drop-dead deadline it argued for in its previous motions to expedite.

DOJ now attempts to backtrack, vaguely suggesting—contrary to what it argued in the prior appeals—that the mass cancellation of voter registrations that it apparently desires could be accomplished in some unspecified way while still complying with the NVRA. *See* Mot. 14 (claiming there are "plenty" of list maintenance activities that States may do during the 90-day period). This newfound and unsubstantiated position also runs headlong into DOJ's own announced plan to compare any unredacted voter lists that it receives against databases maintained by the Department of Homeland Security,[8] which would undoubtedly constitute a "systematic" program under the NVRA. *Mi Familia Vota v. Fontes*, 129 F.4th 691, 716 (9th Cir.) (explaining that removals based on mass "comparisons to databases" constitute systematic removals), *reh'g en banc denied*, 152 F.4th 1153 (9th Cir. 2025), *pets. for cert. filed*, Nos. 25-1017, 25-1019, & 25-1022 (U.S. Feb. 24 & 25, 2026).[9] Indeed, DOJ does not dispute that the chief reason it wants *unredacted* voter

---

[8] *See* Off. of Legal Couns., *Authority to Obtain and Share Statewide Voter Roll Data* at 1, 39 (May 12, 2026), https://perma.cc/HVS6-AU6E.

[9] The cases DOJ cites on this only go to show why the NVRA would bar the removals DOJ contemplates. *Bell v. Marinko*, 367 F.3d 588 (6th Cir. 2004), for instance, involved *individualized*, voter-by-voter determinations of residency and removals based on eligibility findings by a local election board—the precise opposite of the database comparisons DOJ contemplates here. In *Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2024), the court found that a program to remove noncitizens

lists—rather than public voter lists that are readily accessible to it—is to obtain personal identifiers that would facilitate such database matching. Pls.' Mem. Opp'n Mot. Dismiss 13, *Bellows*, No. 1:25-CV-00468-LEW (D. Me. Jan. 2, 2026), ECF No. 75. DOJ's recent efforts at such database matching—using statewide voter lists from the minority of States that acquiesced to its demands—have resulted in the precise sort of inaccuracies and widespread false positives that the NVRA's quiet period is meant to protect against on the eve of an election, "when the risk of disfranchising eligible voters is the greatest." *Arcia*, 772 F.3d at 1346.[10]

Other, practical obstacles also foreclose DOJ's desire to force voter purges before the November election. *First*, even if this Court concludes that DOJ has adequately stated a CRA claim—and thus passed the initial pleading threshold imposed by the Federal Rules—that would not automatically result in judgment for DOJ. Any remand would require further proceedings to resolve underlying factual

---

from the rolls based on compiling a "list" of potential noncitizens based on comparison to the same Department of Homeland Security database DOJ intends to use here was a "systematic" program within the meaning of the law and thus could not be executed within 90 days of an election. And the court in *Va. Coal. for Immigrant Rights v. Beals*, No. 24-2071, 2024 WL 4601052, at *1 (4th Cir. Oct. 27, 2024), *stay granted*, No. 24A407, 2024 WL 4608863 (U.S. Oct. 30, 2024), found a removal program violated the 90-day bar when it targeted registrants based on their name appearing on "a list electronically compared to other agency databases"—just as DOJ envisions here.

[10] *See* Jen Fifield & Zach Despart, *A federal tool to check voter citizenship keeps making mistakes. It led to confusion in Texas*, Tex. Trib. (Feb. 13, 2026), https://perma.cc/PCQ4-PG5E.

disputes, including as to DOJ's intended uses for the unredacted voter lists. *See United States v. Clarke*, 573 U.S. 248, 254 (2014) (recognizing that recipients of government document demands are entitled to discovery into the government's motive when they can "make a showing of facts that give rise to a plausible inference of improper motive"). There is serious reason to doubt DOJ's stated motive for demanding States' unredacted voter lists, as several courts have already noted and as further evinced by its belated arguments concerning noncitizen voters. *See Oregon*, 2026 WL 318402, at *11 (after dismissing DOJ's claims, noting the court's "serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what it intends to do with that data"); *Weber*, 816 F. Supp. 3d at 1184 (finding DOJ's stated purpose in seeking California's unredacted voter list was "contrived" and "pretextual").

*Second*, even if DOJ prevailed on remand and through any further appeals after summary judgment or trial, its only relief would be to obtain and inspect Maine's unredacted voter lists. Even assuming that DOJ then concluded, after reviewing that list, that it has a *further* claim against Maine for not complying with the NVRA or HAVA, DOJ would then need to bring a *new* lawsuit alleging a violation of those statutes, and then prevail through any appeals, before Maine could be ordered to undertake additional, unspecified list-maintenance efforts. And then Maine would need time to actually implement any such removal program, subject

16

the constraints on voter removals in the NVRA, including the 90-day quiet period. Given these contingencies, it is not feasible under any set of circumstances for DOJ to compel mass voter purges before the November election and, accordingly, there is no basis to rush to resolve this appeal before that election.

## CONCLUSION

DOJ's motion to expedite should be denied. At minimum, the Court should afford Appellees a full 30-day period to respond to DOJ's opening brief and should hold oral argument in this matter.

June 26, 2026

Respectfully submitted,

*/s/ David R. Fox*
David R. Fox (1st Cir. No. 1189538)
Christopher D. Dodge (1st Cir. No. 1185553)
Branden D. Lewiston (1st Cir. No. 1224684)
Tori A. Shaw (1st Cir. No. 1224637)
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Ste. 400
Washington, DC 20001
Tel.: (202) 948-1135
dfox@elias.law
cdodge@elias.law
blewiston@elias.law
tshaw@elias.law

*Attorneys for Intervenors-Defendants-Appellees John Schneck and Marpheen Chann*

17

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,482 words, excluding parts of the brief exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ David R. Fox*
David R. Fox

Dated: June 26, 2026

**CERTIFICATE OF SERVICE**

I certify that on June 26, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ David R. Fox*
David R. Fox

Dated: June 26, 2026