UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
_____

No. 26-1676

UNITED STATES,

Plaintiff-Appellant,

v.

SHENNA BELLOWS, in the official capacity as Secretary of the State of Maine;
STATE OF MAINE; JOHN SCHNECK; MARPHEEN CHANN; LEAGUE OF
WOMEN VOTERS OF MAINE,

Defendants-Appellees.

_____

**MAINE'S OPPOSITION TO THE UNITED STATES'S MOTIONS
TO EXPEDITE BRIEFING AND CONSOLIDATE APPEALS**
_____

Defendants-Appellees Secretary of State Shenna Bellows and the State of

Maine (together, "Maine") oppose the United States's ("DOJ's") motion to

expedite its appeal of the decision of the United States District Court for the

District of Maine (*Walker, J.*) dismissing its complaint, as well as its motion to

consolidate this appeal with appeals from Rhode Island and Massachusetts.

**Introduction**

DOJ appeals from the dismissal of its action seeking to force Maine to turn

over to the federal government its entire voter registration database, which contains

confidential and sensitive information on over a million Maine voters.  The district

1

court held, among other things, that DOJ's demand for the data was a misuse of a civil rights era law that would "take a sledgehammer" to the balance struck by Congress in federal election law, which charges "states—not the federal government—with the maintenance of their own voter rolls."  Order (ECF No. 114) ("Order") at 20.

DOJ now seeks to expedite this appeal.  Its stated basis—to ensure that Maine can hold its November 2026 federal election "without the specter of non-citizens and ineligible voters remaining on its voter rolls," DOJ Mot. to Expedite at 15—amounts to an admission that DOJ plans to use Maine's voter data to pressure Maine to deregister voters immediately before the election.  But federal election law, as interpreted by courts and DOJ's own published guidance, prohibits States from deregistering voters in response to such a mass challenge during the so-called "quiet period" 90 days before a federal election.  Because DOJ's motion to expedite is for an improper purpose, the Court should deny the motion no matter what its assessment of the substantive merits of DOJ's appeal.

The Court should similarly deny DOJ's motion to consolidate this appeal with DOJ's appeals of decisions in Rhode Island and Massachusetts dismissing DOJ's actions to obtain those states' voter databases.  While Maine has no objection to those appeals being heard on the same day by the same panel, formal consolidation would be inappropriate given important differences in the facts that

DOJ claims support its demand for each state's data, as well as in the reasoning employed by each district court in dismissing DOJ's claims.

## Background

### *Legal Framework*

Under the National Voter Registration Act of 1993 (NVRA), States are required to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" the registrant's death or change of address. 52 U.S.C.A. § 20507(a)(4). States meet this requirement as long as they make a "serious attempt that is rational and sensible" to maintain their rolls. *Pub. Int. Legal Found., Inc. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025). The Help America Vote Act (HAVA) contains a similar provision requiring states to adopt a system of list maintenance for their centralized voter registration databases. 52 U.S.C.A. § 21083(a)(4)(A). HAVA expressly provides that "the specific choices on the methods of complying with the requirements of this subchapter shall be left to the discretion of the State." 52 U.S.C.A. § 21085.

In deference to States' constitutional role as the primary administrators of federal elections, *see* U.S. Const. art. I, § 4, the NVRA and HAVA nowhere authorize DOJ or any other arm of the federal government to conduct list maintenance on a State's voter rolls. Rather, DOJ's role in list maintenance is

3

limited to bringing an enforcement action if a State's list-maintenance program falls short of the "reasonable effort" requirement. *See* 52 U.S.C.A. § 20510(a); 52 U.S.C.A. § 21111.

The NVRA also imposes a "quiet period" before each federal election during which no systematic list maintenance may take place. Specifically, the NVRA provides that each State "shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C.A. § 20507(c)(2)(A). The NVRA quiet period for the upcoming November 3, 2026 election begins on August 5, 2026—before this appeal would be decided under DOJ's proposed expedited schedule.

### *Factual Background*

On July 24, 2025, DOJ sent a letter to Maine Secretary of State Shenna Bellows purportedly "to request information regarding Maine's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act (NVRA)." Compl. Ex. 1 (ECF No. 1-1) at 1. Among other things, this letter demanded, under section 8(i) of the NVRA, production of Maine's "computerized statewide voter registration list" (SVRL), including "all fields." *Id.*

In response, the Secretary provided DOJ with extensive information about Maine's voter list maintenance program.  Compl. Ex. 2 (ECF No. 1-2).  She described Maine's program of address-confirmation mailings, which led to the cancellation of 180,584 registrations following the 2024 election.  *Id.* at 2.  She described multiple programs to remove deceased voters from the rolls as well as Maine's participation in a multistate program, the Electronic Registration Information Center (ERIC), which allows Maine to cross-check its voter data against those of other participating States.  *Id.* at 2–3.  And she provided detailed answers to each of DOJ's questions concerning Maine's responses to the 2024 Election Administration and Voting Survey.  *Id.* at 3–6.

However, the Secretary declined to produce Maine's SVRL, citing state confidentiality laws and this Court's interpretation of the NVRA's disclosure provision as excluding highly sensitive personal information. *Id.* at 3 (citing *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024)).  The Secretary expressed puzzlement as to what sort of investigation would necessitate production of a state's entire voter registration database, including highly sensitive fields, and asked DOJ several questions about its demand, including whether DOJ's demand was compliant with the federal Privacy Act of 1974 and the E-Government Act of 2002.  *Id.* at 4.

In its August 18, 2025 response, DOJ again demanded a copy of Maine's unredacted SVRL, this time invoking Title III of the Civil Rights Act of 1960 (CRA), 52 U.S.C.A. § 20701.  Compl. Ex. 3 (ECF No. 1-3).  DOJ's response ignored or gave cursory answers to the Secretary's questions, though it stated that the purpose of its demand for the SVRL was "to assist in our determination of whether Maine's list maintenance program complies with the NVRA."  *Id.* at 2. After the Secretary again declined to produce the SVRL, pointing out among other things that the stated purpose for the request was beyond the scope of the CRA, *see* Decl. of Katherine McBrien, Ex. 3 (ECF No. 55-3), DOJ filed this action.

Like DOJ's letters, DOJ's pleadings in the district court did not accuse Maine of noncompliance with the NVRA's list-maintenance requirements.  *See* Order at 21 n.15 ("If the United States' pleadings contain any allegation that Maine has not engaged in reasonable list maintenance efforts, in violation of the NVRA, it was not made apparent to me.").  Rather, DOJ continued to assert that "the purpose [of the request] was to evaluate the state's compliance with its list-maintenance requirements under federal law."  DOJ Opp'n to Mot. to Dismiss (ECF No. 75) at 10.  DOJ indicated in its pleadings that its review would include determining whether records had the identifying numbers required by HAVA and "identify[ing] duplicate registration records, registrants who have moved, ineligible registrants,

6

and registrants who have died or otherwise are no longer eligible to vote in federal elections." *Id.* at 12–13.

At oral argument on the motions to dismiss, DOJ again claimed that it was requesting the list to assess Maine's compliance with NVRA list-maintenance requirements. DOJ represented that it was seeking a "means to determine whether or not [Maine is] in compliance, and if they're not, . . . bring an enforcement action." Oral Arg. Tr. (ECF No. 104) at 47. DOJ's counsel conceded that the SVRL may be "run against other databases," *id.* at 51, but asserted that such data analysis is "not for the purpose of the United States engaging in list maintenance itself." *Id.* at 53–54. Rather, DOJ counsel agreed it is "properly the role of the states and localities that administer elections" to conduct list maintenance. *Id.* at 54.

Although DOJ did not admit it in this proceeding, it seems clear that DOJ intends to run all the SVRLs it obtains from States through the Department of Homeland Security's (DHS's) Systematic Alien Verification for Entitlements (SAVE) system in an attempt to identify noncitizen registrants.[1] A DOJ attorney

---

[1] States including Maine have raised substantial concerns about the accuracy and reliability of SAVE data. *See* McBrien Decl., Ex. C (ECF No. 55-5) at 20–26. An expanded version of the system was recently enjoined by a federal court for violations of the Social Security Act, Privacy Act, and the Administrative Procedure Act. See *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. CV 25-3501 (SLS), 2026 WL 1784297, at *1 (D.D.C. June 22, 2026).

arguing against a motion to dismiss DOJ's attempt to obtain Rhode Island's SVRL admitted that DOJ intends to "run [the SVRL] against DHS's SAVE database." RI Hr'g Tr. (ECF No. 105-1) at 50:17–23. That statement is consistent with public reporting. *See* Jonathan Shorman, *DOJ is sharing state voter roll lists with Homeland Security*, Stateline (Sept. 12, 2025), at https://tinyurl.com/3cha9r4z.

DOJ's intent to feed the SVRLs it obtains into SAVE is also corroborated by other administration actions seeking to apply SAVE to SVRLs. A March 2025 executive order directs DHS to review each State's publicly available voter registration list "alongside Federal immigration databases." *See* Exec. Order 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025). And a recent alteration of FEMA's Homeland Security Grant Program penalizes States that refuse to "process the full state voter list through the SAVE system to identify deceased and non-citizen voters." *See* Fed. Emergency Mgmt. Agency, Grant Programs Directorate Information Bulletin No. 569 (June 8, 2026), at https://tinyurl.com/5t4a6dct.

It further appears, despite DOJ's denials below, that DOJ is seeking to create a national database of eligible U.S. voters. DOJ is seeking the SVRLs of every State in the nation. McBrien Decl. ¶ 9 (ECF No. 55-2). A recent Executive Order, "Ensuring Citizenship Verification and Integrity in Federal Elections," *see* Exec. Order 14,399, 91 Fed. Reg. 17125 (May 31, 2026), directs DHS to compile a "State Citizenship List" for each state to "assist in verifying identity and Federal

8

election voter eligibility."  *See also* Order at 7 n.6 (pointing to this EO as a reason for skepticism of DOJ's representations that it was not seeking SVLRs to compile national voter database).  News reporting has corroborated the federal government's intent.  *See* Devlin Barrett and Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, New York Times (Sept. 9, 2025), https://tinyurl.com/25taum8y.

### The Decision Below

The district court dismissed DOJ's complaint, finding no authority under the NVRA, HAVA, or the CRA for DOJ to demand production of unredacted SVRLs.  Given DOJ's "half-hearted" arguments concerning its authority under the NVRA and HAVA, Order at 20, the district court focused primarily on DOJ's claim that the CRA provided the necessary authority to demand the SVRL.  The CRA authorizes the Attorney General to demand from any state or local election official "all records and papers which come into his possession" that relate to "any application, registration, payment of poll tax, or other act requisite to voting in such election."  52 U.S.C.A. §§ 20701; 20703.  The CRA requires the Attorney General's demand to "contain a statement of the basis and the purpose therefor."  *Id.* § 20703.

The district court concluded that DOJ's demand was invalid as a matter of law for two reasons.  First, the court concluded that Maine's SVRL is not a record

that "comes into [the] possession" of state election officials.  Order at 12 (quoting 52 U.S.C.A. § 20701).  The court interpreted "come into possession" as referring "to a process by which someone *acquires* an item from an external source."  *Id.* at 13 (quoting *United States v. Benson*, 819 F. Supp. 3d 753, 768 (W.D. Mich. 2026)).  It therefore concluded that the CRA "pertain[s] to records and papers that election officials receive from prospective voters to support the exercise of the suffrage by the prospective voters, not lists or other tools created by election officials for the purpose of preserving the information provided by voters and ensuring that persons appearing to vote are registered."  *Id.* at 13.

Second, the court determined that DOJ's stated purpose—reviewing Maine's compliance with list-maintenance requirements—is not an authorized purpose under the CRA.  The court observed that the NVRA and HAVA "create a comprehensive scheme for the creation and upkeep of states' computerized SVRLs" which gives DOJ the ability to bring enforcement actions against states but "does not contemplate the line-by-line audit of each state's computerized SVRL by the federal government to assess compliance with those provisions."  *Id.* at 17.  In concluding that the CRA does not override this carefully constructed framework, the Court applied the principle that "[w]hen 'a general authorization and a more limited, specific authorization exist side-by-side,' the specific provision

10

controls." *Id.* at 18 (quoting *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012)).

Given these conclusions, the Court did not reach Maine's other arguments, including that DOJ had failed to state a "basis" for its demand as required under the CRA and that the demand violated the Privacy Act and the E-Government Act.

### Argument

To expedite this appeal, DOJ must demonstrate good cause as to why the standard briefing schedule should be suspended. *See* Fed. R. App. P. 2(a) (allowing a court of appeals to suspend the rules "to expedite its decision or for other good cause"). As this Court has explained, "'[g]ood cause' is a mutable standard, varying from situation to situation." *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989). While it may be a "liberal" standard, it is "not so elastic as to be devoid of substance." *Id.*

## I.  DOJ seeks to expedite this case for an improper purpose.

DOJ seeks expedited treatment of this appeal because "Maine's next federal election will be held November 3, 2026, and thus is rapidly approaching." Mot. to Expedite at 14. DOJ claims that a rapid resolution of this appeal will "permit Maine to properly conduct an election this fall without the specter of non-citizens and ineligible voters remaining on its voter rolls." *Id.* at 15.

11

DOJ's stated basis for seeking expedited treatment is tantamount to an admission that, if it obtains Maine's SVRL before the November election and decides that voters need to be removed from the rolls, it intends to pressure Maine to violate federal election law. DOJ's proposed briefing schedule—indeed, any plausible briefing schedule—would result in resolution of this appeal after the NVRA's August 5th deadline for States to cease "any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C.A. § 20507(c)(2)(A). Congress imposed this "quiet period" in recognition that "[e]ligible voters removed days or weeks before Election Day will likely not be able to correct the State's errors in time to vote." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014). Once the quiet period starts, only removals based on "rigorous individualized inquir[ies]" are permitted. *Mi Familia Vota v. Fontes*, 129 F.4th 691, 717 (9th Cir. 2025) (quoting *Arcia*, 772 F.3d at 1346), *cert. granted*, No. 25-1017 (June 29, 2026).

Should DOJ obtain Maine's SVRL during the quiet period, the record plus DOJ's own arguments make clear the likely result: DOJ will process Maine's SVRL through the unreliable SAVE database and perhaps other unknown databases, and return to Maine with a demand that it deregister, before the 2026 election, a list of voters generated by those computerized reviews, perhaps on pain of loss of federal funding. *See, e.g.*, *Maine v. U.S. Dep't of Agric.*, 778 F. Supp. 3d

12

200, 210 (D. Me. 2025) (preliminarily enjoining freeze of federal education funding to Maine for alleged noncompliance with an Executive Order).  Such a demand far exceeds the federal government's limited authority under the NVRA and HAVA to evaluate the reasonableness of States' list-maintenance programs. *See* Order at 17–18 (holding that Attorney General may not "loom over the shoulder of the state election official to point out and demand the correction of inaccuracies" on the SVRL).  More importantly for purposes of the motion to expedite, Maine's acquiescence to such a demand after August 5th would violate the NVRA's 90-day quiet period.

DOJ counters that Maine can engage in "plenty of list-maintenance activities" within the NVRA's 90-day quiet period before the November election, apparently including, "among other things," conducting full-blown list-maintenance activities under the NVRA and HAVA.  DOJ Mot. at 14.  This is plainly wrong.  The NVRA's quiet-period provision requires stopping "any program" to "systematically" remove ineligible voters.  52 U.S.C.A. § 20507(c)(A).  "Any" has an expansive meaning—equivalent to "all" or "every." *Arcia*, 772 F.3d at 1344.  And courts have held that programs involving a "mass computerized data-matching process" to select voters for removal are "systematic" in nature.  *Id.* at 1344; *accord Mi Familia Vota*, 129 F.4th at 717 (holding that

"systematic comparison of registered voters to various databases" falls within the NVRA's quiet-period restriction).

What is more, courts have confirmed that it does not matter whether the State itself or some third party—like DOJ—performs the "systematic[]" review of voters' eligibility.  For example, in *North Carolina State Conference of the NAACP v. North Carolina State Board of Elections*, No. 1:16-CV-1274, 2016 WL 6581284, at *6 (M.D.N.C. Nov. 4, 2016), the district court considered whether state election officials properly cancelled registrations in response to challenges by third parties to thousands of voters based on whether a mass-mailing the third parties sent was returned as undeliverable.  *Id.* at *1–2.  The Court concluded that this use of the challenge process was "systematic[]," despite evidence that "some of the County Boards engaged in efforts to verify the address of challenged voters."  *Id.* at *6.  The Court found it dispositive that the "challenges in this case were triggered by a mass mailing returned as undeliverable."  *Id.*; *see also Forward v. Ben Hill Cnty. Bd. of Elections*, 509 F. Supp. 3d 1348, 1355 (M.D. Ga. 2020) (finding that removal of voters based on a third party's challenge to thousands of voters based on National Change of Address data was likely "systematic[]").

Indeed, DOJ itself appears to agree.  In its "NVRA List Maintenance Guidance" published on its website, it instructs (in bold print, no less) that the 90-

14

day prohibition on systematic list maintenance "applies to list maintenance programs based on third-party challenges derived from any large, computerized data-matching process." *See* Dep't of Justice, *NVRA List Maintenance Guidance* (last visited June 26, 2026), https://www.justice.gov/crt/nvra-list-maintenance-guidance ["DOJ Guidance"].  Since DOJ has no legal authority to conduct list-maintenance itself, any demand that Maine purge a list of voters generated by SAVE or some other unknown database shortly before the election would be indistinguishable from the sort of "third-party challenge[]" that DOJ instructs is illegal.  *Id.*

DOJ's reliance on *Bell v. Marinko*, 367 F.3d 588 (6th Cir. 2004) is unavailing.  *See* DOJ Mot. at 14.  As a later Sixth Circuit decision clarified, *Bell* involved the removal of voters as ineligible due to residency only after a "particularized challenge hearing for each specific voter."  *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 386 (6th Cir. 2008).  *Bell* therefore involved the sort of "rigorous individualized inquir[ies]," *Mi Familia Vota*, 129 F.4th at 717, that remain permissible after the start of quiet period.

In short, DOJ appears to be seeking to expedite this appeal so, if it prevails, it can do what multiple federal courts and its own public guidance says that it cannot: contest the eligibility of Maine voters *en mass* just before an election based a "large, computerized data-matching process."  DOJ Guidance.  That process

15

would apparently include running the SVRL through the SAVE database, which the Eleventh Circuit has specifically held to be "systematic" list maintenance. *Arcia*, 772 F.3d at 1344 ("it is telling that the database that Secretary Detzner used before the general election—SAVE—stands for *Systematic* Alien Verification for Entitlements"). Even if Maine wished to comply with DOJ demands to deregister voters immediately before the November election—and it does not—it could not legally do so under the NVRA.

Because the only conceivable reason DOJ would want this appeal decided before the November election is to enable a pressure campaign against Maine to violate federal law, it lacks good cause for its motion to expedite.

## II.    DOJ's arguments on the merits are weak and are in any event irrelevant to whether the appeal should be expedited.

DOJ's motion to expedite also attacks the reasoning of the district court's order. Mot. to Expedite at 11–13. Maine will address the merits of the district court's well-reasoned decision in its merits brief. Here, it is enough to point out that, despite filing suits against 30 states seeking their SVRLs, DOJ has yet to find purchase for its arguments in any federal court. Most recently, the Court of Appeals for the Sixth Circuit issued a decision affirming the dismissal of DOJ's lawsuit against Michigan on much the same legal grounds as the district court here. *See United States v. Benson*, No. 26-1225, 2026 WL 1815425, *5 (6th Cir. June 24, 2026) ("An ordinary English speaker would not say that she has come into

16

possession of something that she created, established, and maintained"). The Sixth Circuit joins a growing list of district courts that have rejected DOJ's efforts to invoke the CRA to seize states' SVRLs.[2] DOJ has yet to survive a motion to dismiss in any State in which it has filed suit.

Ultimately, however, the strength of DOJ's merits arguments is irrelevant. Even assuming DOJ is entitled to the SVRL and assuming further that the SVRL can actually shed any light on the reasonableness of Maine's list-maintenance program (a dubious assumption), DOJ's only remedy if it is dissatisfied with the results of its review is to bring an enforcement action seeking changes to the processes by which Maine conducts list maintenance. *See* 52 U.S.C.A. § 20510(a); 52 U.S.C.A. § 21111. That legal process itself would surely extend beyond the November election. And even if not, Maine could not legally implement any DOJ-demanded changes to its list-maintenance program until the quiet period ends.

---

[2] *See United States v. Scanlan*, Case No. 25-cv-371-JL, ECF No. 86 (D.N.H. June 29, 2026); *United States v. DeMarinis*, No. CV SAG-25-3934, 2026 WL 1780586 (D. Md. June 18, 2026); *United States v. Wis. Elections Comm'n*, Docket No. 25-cv-1036, 2026 WL 1430354 (W.D. Wis. May 21, 2026); *United States v. Fontes*, Docket No. CV-26-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026); *United States v. Amore*, Docket No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Galvin*, Docket No. 25-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Oregon*, 6:25-cv-016666, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026).

### III.    The Court should deny the motion to consolidate

Consistent with its push to expedite, DOJ also seeks to consolidate this appeal with those from two of its other failed attempts to compel states to release their unredacted voter files.  *See United States v. Galvin,* No. 25-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026), *appeal docketed*, No. 26-1657 (1st Cir. June 9, 2026) ("*Galvin*"); *United States v. Amore*, No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026), *appeal docketed*, No. 26-1665 (1st Cir. June 9, 2026) ("*Amore*").  This Court should deny that motion, as well.

Initially, Federal Rule of Appellate Procedure 3(b)(2) permits consolidation only "[w]hen the parties have filed separate timely notice of appeals."  Parties, in this instance, refers to "parties . . . entitled to appeal from a district court judgment or order," Fed. R. App. P. 3(b)(1), such that consolidation exists as an alternative to parties filing a joint notice of appeal.  Self-evidently, Maine is not a party in *Galvin* or *Amore*, nor are Massachusetts and Rhode Island parties to this appeal.  Collectively, therefore, Maine, Massachusetts, and Rhode Island are not "parties" covered by Rule 3(b)(2).  *Cf. Chem One, Ltd. v. M/V Rickmers Genoa*, 660 F.3d 626, 642 (2d Cir. 2011) (granting motion to consolidate in part because "the appeals arise from the same conjoined multiparty litigation in the District Court").

That said, even if the application of Rule 3(b)(2) were appropriate here upon an adequate showing, consolidation is inappropriate.  It neither promotes

efficiency, nor is fair to appellees, because the district court decisions are legally and factually dissimilar. *See id.* at 642 (noting that appropriateness of consolidation turns on equity and judicial economy).

*First*, each district court decision rests on distinct legal reasoning. In this case, the district court granted Maine and Intervenors' motions to dismiss because (1) Maine's SVLR was created by the Secretary of State's office and her staff, such that it did not "come into possession" of election officials under the CRA, and (2) assessing compliance with federal list maintenance statutes is not a valid purpose for requesting records under the CRA. The district courts in *Galvin* and *Amore*, by contrast, did not address the first issue at all. Further, *Galvin* turned on whether DOJ had stated an adequate basis, 2026 WL 972129—an issue the district court here did not reach, *see* ECF No. 114 n.11—and *Amore* turned on the fact that DOJ in that case had failed to state both an adequate basis and a legally sufficient purpose, *see* 2026 WL 1040637, at *5–*6.

*Second*, each district court decision rests on an important, and unique, factual premise. The demands that DOJ sent to each of Maine, Massachusetts, and Rhode Island began with a letter, directed to the Secretary of State, that highlighted DOJ's alleged concerns with the list maintenance procedures employed by that particular state. Maine received two such letters. And while Maine's position is that the concerns identified in the letters are pretextual at best, they are central to

19

determining whether DOJ complied with the CRA's requirement that the Attorney General state a basis and purpose for his demand. 52 U.S.C. § 20703. In fact, DOJ has consistently claimed in this case that the factual basis for its demand consists of the Maine-specific concerns it identified in its letter. *See, e.g.,* ECF No. 76 at 11-12.

The important legal and factual differences between these decisions underscore how unnatural—and inefficient—it would be to consider this appeal together with *Galvin* and *Amore*. In a case as important as this is, while it is no doubt *possible* to write a decision affirming all three decisions on a single unified basis, the State should be permitted to press any and all arguments in favor of affirmance specific to the legal and factual circumstances of this particular case, unhindered by the procedural and logistical impediments—limited argument time, tension between arguments advanced by the numerous parties, and the like— inherent to consolidating three distinct appeals.

The wisdom of this approach is reflected in the single example that DOJ cites, wherein the Ninth Circuit *denied* DOJ's motion to consolidate. To be clear, the State of Maine does not object to this Court, like the Ninth Circuit, scheduling argument in this appeal on the same day as DOJ's appeals in the Massachusetts and Rhode Island cases. Nor does Maine object to assigning each appeal to the same panel. Maine objects, however, to formal consolidation, which makes little

20

sense in light of the differences between each case. Forcing Maine to nonetheless proceed in a single, unified appeal would hinder Maine's ability to forcefully defend the privacy rights of its citizens and comprehensively seek affirmance of the district court's decision.

### Conclusion

For the reasons set forth above, the Court should deny the motion to expedite and the motion to consolidate.

DATED: June 29, 2026

AARON M. FREY
Attorney General

/s/ Jonathan R. Bolton
JONATHAN R. BOLTON
Assistant Attorney General
6 State House Station
Augusta, Maine 04333-0006
Tel. (207) 626-8800
Fax (207) 626-8518
jonathan.bolton@maine.gov

Attorney for Defendants-Appellees
Shenna Bellows and the State of
Maine

21

CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will distribute a copy of the document to all counsel of record.

DATED:  June 29, 2026

AARON M. FREY
Attorney General

/s/ Jonathan R. Bolton
JONATHAN R. BOLTON
Assistant Attorneys General
6 State House Station
Augusta, Maine 04333-0006
Tel.  (207) 626-8800
Fax (207) 626-8518
jonathan.bolton@maine.gov

Attorney for Defendants-Appellees

22