IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————————

No. 26-1676

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

SHENNA BELLOWS, in her official capacity as Secretary of the
State of Maine; STATE OF MAINE,

Defendants-Appellees

JOHN SCHNECK; MARPHEEN CHANN; LEAGUE OF WOMEN
VOTERS OF MAINE,

Defendants-Intervenors-
Appellees

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

———————————

UNITED STATES' REPLY TO APPELLEES' RESPONSES IN
OPPOSITION TO UNITED STATES' MOTION TO EXPEDITE AND
CONSOLIDATE

———————————

## INTRODUCTION

The United States has moved to expedite this appeal and consolidate it with *United States v. Galvin*, No. 26-1657, and *United States v. Amore*, No. 26-1665. Appellees Shenna Bellows and Maine (Maine Opp'n); League of Women Voters of Maine (LWV Opp'n); and John Schneck and Marpheen Chann (Schneck Opp'n) oppose these Motions. The Motions should be granted.

## I.    This Court should expedite this appeal

As the United States explained in its Motion, an expedited appeal is necessary to allow the United States to confirm—before the 2026 federal elections—that Maine's voter rolls are composed solely of individuals who are eligible to vote in the 2026 federal elections. Mot. to Expedite 14-15. Absent a prompt resolution of this appeal, there is a significant prospect of harm to individual voter rights due to the risk of non-citizens and ineligible voters remaining on Maine's voter rolls. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021) ("[F]raudulent votes dilute the right of citizens to cast ballots that carry appropriate weight."); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per

curiam) ("Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised.").

Any post-election relief would be of reduced value. The State Voter Registration List (SVRL) is not just any voting-related record; it is the only federally mandated state record that is required to "serve as the official voter registration list for the conduct of *all elections* for Federal office in the State." 52 U.S.C. 21083(a)(1)(A)(viii) (emphasis added). The SVRL is the starting place for federal elections in Maine. To receive the list only after the election would deprive the United States of a vital tool in ensuring that Maine's voter rolls are properly maintained in preparation for the upcoming election.

Appellees' counterarguments are unpersuasive. *First,* appellees argue that pre-election adjudication is unnecessary because any fraudulently or erroneously registered voters will not be removed from the SVRL before the election. Appellees cite the NVRA as a barrier to pre-election removal of ineligible voters from the SVRL. Maine Opp'n 12; LWV Opp'n 10; Schneck Opp'n 12. The NVRA generally prohibits *States* from "systematically remov[ing] the names of ineligible voters from the official lists of eligible voters" less than 90 days before a federal election.

- 3 -

52 U.S.C. 20507(c)(2)(A). But any removal of ineligible voters from the SVRL based on an individualized recommendation or alert from the United States is not a "systematic" removal by the State and thus does not implicate the NVRA's 90-day quiet period. *See Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014) ("[T]he 90 Day Provision permits removals based on individualized information at any time."). And, notwithstanding Maine's assertions (Maine Opp'n 14), the NVRA's plain text does not prohibit the *DOJ* from using a systematic program to evaluate the reasonableness of Maine's list maintenance, regardless of timing.[1] Furthermore, Maine admits that the United States has indicated that its review will include checking for duplicate records, deaths, and other forms of ineligibility. Maine Opp'n 6-7. The 90-day quiet period does not apply to systematic removals based on death, nor to "correction of registration records" under the NVRA. 52 U.S.C.

---

[1] Maine cites (Maine Opp'n 14-15) DOJ guidance stating that the quiet period "applies to list maintenance programs based on third-party challenges derived from any large, computerized data-matching process." But the Attorney General's supervisory role in NVRA compliance situates him (and the United States) differently from a "third party." *See* 52 U.S.C. 20510(a). In any event, the United States would not request Maine to engage in a "program[] based on [a] third-party challenge[]," but rather assess individual removals based on individualized recommendations.

20507(c)(2) and (a)(4)(A). If this Court rules in favor of the United States in August or September, it is possible to legally identify and remove at least some ineligible voters from the SVRL before November 3.[2]

*Second,* Maine speculates that the United States will "far exceed[] the federal government's limited authority under the NVRA and [the Help America Vote Act of 2002 (HAVA)] to evaluate the reasonableness of States' list-maintenance programs." Maine Opp'n 13. But the United States has an important role in ensuring that voter lists are properly kept. The Attorney General has enforcement authority under both the NVRA and HAVA. 52 U.S.C. 20510(a), 21111. Additionally, the United States may prosecute those who "knowingly and willfully deprive[], defraud[], or attempt[] to deprive or defraud the residents of a State of a fair and impartially conducted election process" by "procur[ing] . . . voter registration applications," or "tabulat[ing] . . . ballots," if those applications or ballots "are known by the person to be materially false,

---

[2] As Maine notes (Maine Opp'n 7 n.1), DHS's use of the "modified SAVE system" is limited by a recently issued order. *See League of Women Voters v. United States Dep't of Homeland Sec.,* No. 25-3501, 2026 WL 1784297, at *9-10 (D.D.C. June 22, 2026). DHS, and hence the DOJ as a licensee, can still use the SAVE system as it existed prior to the 2025 changes to that system. *See id.* at *35 ("re-establishing the status quo" (brackets and citation omitted)).

fictitious, or fraudulent under the laws of the State in which the election is held." 52 U.S.C. 20511(2). True, Maine has the ultimate responsibility under the NVRA, 52 U.S.C. 20507(a)(4), and HAVA, 52 U.S.C. 21083(a)(2)(A), to conduct list maintenance. But even assuming that there is not a single case of fraudulent or erroneous voter registration, Maine residents need to know—before the election—that the SVRL is accurate.

*Third,* intervenors contend that the United States will not suffer any irreparable harm because it lacks factual evidence of illegal voting (Schneck Opp'n 9-12; *see* LWV Opp'n 9)—while simultaneously suggesting that the State has no duty under the NVRA and HAVA to remove noncitizens from its voter rolls (Schneck Opp'n 11-12 & n.6). That is incorrect; HAVA requires that "[t]he State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly." 52 U.S.C. 21083(a)(4). SVRLs that include noncitizens are per se inaccurate. And the United States *did* provide Maine with factual support for its concerns in the form of EAVS data. In any case, intervenors essentially argue that this appeal should not be expedited because they will win the appeal. Title III provides that

- 6 -

specified voting records "shall . . . be made available" to the Attorney General as long as he provides "a statement of the basis and the purpose therefor." 52 U.S.C. 20703. Intervenors appear to confuse a merits question—what the CRA requires in a demand under Title III—with the potential harms that warrant expediting this appeal.

*Fourth,* intervenors argue that expedited treatment is improper because these "important questions . . . call[] for careful briefing, oral argument, and considered judgment." Schneck Opp'n 8-9. This Court is capable of deciding this pure question of law on an expedited basis. *See, e.g., TikTok Inc. v. Garland,* 604 U.S. 56, 62 n.1 (2025) (per curiam) (indicating that roughly one month passed between applications for an injunction pending review and the Supreme Court's decision in a complex case regarding national security and the First Amendment). Relatedly, the League of Women Voters of Maine suggests (LWV Opp'n 13) that this Court would benefit from delaying its decision until the Ninth Circuit decides *United States v. Oregon,* No. 26-1231 (9th Cir. argued May 19, 2026), and *United States v. Weber,* No. 26-1232 (9th Cir. argued May 19, 2026). There is no reason to await decisions in those cases, which would not control the outcome here. *Cf. United States v. Fontes,* No. 26-3609

(9th Cir.) (a Ninth Circuit appeal being held in abeyance because it likely would be controlled by those decisions).

*Fifth,* intervenors argue that "practical obstacles . . . foreclose DOJ's desire to force voter purges before the November election." Schneck Opp'n 15. Intervenors presumably are referring to ineligible voters, and its supposed practical obstacles are surmountable. There is no need for a remand to resolve "underlying factual disputes" because there are no disputed material facts (Schneck Opp'n 15-16): the United States demanded Maine's SVRL, and Maine refused to provide it. This Court can—and should—order the district court to immediately require Maine to produce the SVRL pursuant to Title III. Further, Maine and intervenors wrongly assert that the United States must bring a second lawsuit against Maine to obtain meaningful relief. Maine Opp'n 17; Schneck Opp'n 16. Although such suits are one means of ensuring proper list maintenance, the United States trusts that States will not ignore out-of-hand alerts from the federal government that their SVRLs are out of compliance or that individual voters are ineligible and should be removed as a matter of federal law.

## II.    The United States has not delayed this case

Intervenors insist that the United States' "lackadaisical" approach to this litigation necessitates denying its motion to expedite. Schneck Opp'n 4; *see* LWV Opp'n 11. The League of Women Voters of Maine faults the United States for seeking "an almost six-week stay" during a federal government shutdown. LWV Opp'n 11. But the federal government was shut down between October 1 and November 12, 2025, Cong. Res. Serv., R48832, *The 2025 (FY2026) Government Shutdown: Economic Effects* 1 (Jan. 29, 2026), and federal law generally does not permit federal employees to work during federal shutdowns, 31 U.S.C. 1342.[3]

Appellees further take issue with the United States' proposed briefing schedule in the district court. Schneck Opp'n 3; LWV Opp'n 11. But the United States sought access to Maine's SVRL under Title III of the Civil Rights Act, which—as the United States has argued all along—provides an inherently expedited process. Title III affords "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's exercise of his investigative powers.

---

[3] The League of Women Voters' focus (LWV Opp'n 11-12) on the United States' timing in *other* cases not before this Court is entirely irrelevant to whether appeals in *this* Court should be expedited.

*Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962). The Attorney General may come to court and seek an order to produce the requested records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Ibid.* This special proceeding is "summary" in "nature" and neither "plenary [n]or adversary." *In re Gordon*, 218 F. Supp. 826, 826-827 (S.D. Miss. 1963). Once the Attorney General provides a "simple statement" that his demand has been made and refused, "[t]he Court, *with expedition*, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down *without delay* for suitable hearing on the matters open for determination." *Lynd*, 306 F.2d at 226 (emphases added). The United States sought this summary relief by moving for an order to show cause why the documents should not be produced. Doc. 5-1, at 8-9, *United States v. Bellows*, 1:25cv468 (D. Me. Sept. 18, 2025). If the district court had held the requisite "summary" proceedings, the United States would have had access to Maine's SVRL—or an adverse decision to take to this Court—months ago. Even in the absence of these "summary" proceedings, the district court dismissed the complaint on May 21, 2026. *See* Doc. 114, *Bellows*, *supra*. Had the United States prevailed, it would

have had ample time before the November 3, 2026, general election to confirm the integrity of Maine's SVRL.

Intervenors also suggest that the United States has unnecessarily delayed on appeal, citing the 15 days between the district court's order and the United States' notice of appeal. Schneck Opp'n 5; LWV Opp'n 11. The United States had 60 days to file a notice of appeal, Fed. R. App. P. 4(a)(1)(B)(i), and took just 15 days—a quarter of the permissible time— to do so. This shows speed, not delay. As for waiting "over a week" to file its Motion to Expedite (LWV Opp'n 11), the United States had to wait until the appeal was docketed before it could file its Motion—which it did within two days.

The Schneck intervenors add that the United States' proposed briefing schedule creates a "lopsided allotment." Schneck Opp'n 6. The United States disagrees. Its proposed schedule gives appellees 21 days to file their briefs—only nine days less than the 30-day default schedule under Federal Rule of Appellate Procedure 31(a)(1). Intervenors complain that the United States has "48 days after the [dismissal] order" to file its brief. Schneck Opp'n 5. But the Schneck intervenors use the wrong baseline—namely, the date the district court issued its decision.

Deadlines to file briefs are not measured by the date the district court order was issued; they are, by default, measured by the date the record is filed in the Court of Appeals. Fed. R. App. P. 31(a). In any event, if this Court disagrees with the proposed briefing schedule, it can expedite this appeal and enter a different scheduling order. *See, e.g.*, Order, *United States v. Benson*, No. 26-1225 (6th Cir. Mar. 11, 2026) (granting in part and denying in part a motion to expedite and setting alternative deadlines). Intervenors suggest that the United States "could file its merits brief now, thereby speeding up the schedule by operation of the ordinary rules." Schneck Opp'n 6. Although that is an option, it would not aid the United States absent an early decision from this Court.

### III.   This Court should grant the United States' Motion to Consolidate

This case should be consolidated with the appeals in *Galvin* and *Amore*. As appellees do not dispute, all three appeals address whether the United States may obtain SVRLs pursuant to Title III. Consolidation therefore will promote judicial economy and facilitate an expeditious resolution of these appeals. Further, consolidation is not, as Maine suggests, merely "an alternative to parties filing a joint notice of appeal."

Maine Opp'n 18. In fact, in a recent case, this Court granted the plaintiffs' motion to consolidate appeals when the plaintiffs had brought "materially identical" complaints against three different sets of defendants. *Bourgeois v. TJX Cos.*, 129 F.4th 28, 31 (1st Cir. 2025).

Maine states that the letters to Maine, Massachusetts, and Rhode Island "highlighted DOJ's alleged concerns with the list maintenance procedures employed by that particular state." Maine Opp'n 14; *see* LWV Opp'n 16. But as intervenors observe, these demands have led to "substantially identical suits" (Schneck Opp'n 7). Further, that the district courts differed in their resolutions of these cases (*see* Maine Opp'n 19; LWV Opp'n 15-16) does not counsel against consolidation because the underlying issue—whether Title III authorizes the Attorney General to obtain SVRLs—is the same in each case, and the briefing in each raised overlapping arguments. Although the United States initially brought NVRA and HAVA claims in this case, it does not intend to pursue those claims on appeal. And the existence of "different state laws and regulations" (LWV Opp'n 16) does not weigh against consolidation because any differences have no effect on the common question whether *any* state law can justify noncompliance with a demand under Title III.

## CONCLUSION

For the foregoing reasons, this Court should grant the United States' Motions to Expedite and Consolidate.

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
MEREDITH L. BAKER
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3803

Date: June 30, 2026

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2548 words, excluding the parts exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f). This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
 Attorney

Date: June 30, 2026

## CERTIFICATE OF SERVICE

I certify that on June 30, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
 Attorney

Date: June 30, 2026