No. 26-1676

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

---

UNITED STATES,

Plaintiff-Appellant,

v.

SHENNA BELLOWS, in the official capacity as Secretary of the State of Maine; STATE OF MAINE; JOHN SCHNECK; MARPHEEN CHANN; LEAGUE OF WOMEN VOTERS OF MAINE,

Defendants-Appellees.

---

On Appeal from the United States District Court for the District of Maine

---

# DEFENDANT-APPELLEE LEAGUE OF WOMEN VOTERS OF MAINE'S BRIEF

Maura Eileen O'Connor
Brennan Center for Justice
at NYU School of Law
777 6th St., NW, Suite 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew B. Garber
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
Tel: (646) 292-8310
garbera@brennan.law.nyu.edu

Brent Ferguson
Sejal Jhaveri
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
bferguson@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org

Allan K. Townsend, Esq.
Johnson, Webbert & Beard, LLP
1 Bowdoin Mill Island, Suite 300
Topsham, ME 04086
Tel: (207) 623-5110
allan@work.law

*Counsel for Defendant-Appellee League of Women Voters of Maine*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Intervenor-Appellee the League of Women Voters of Maine certifies that it is a non-profit corporation with no parent corporation, and that no publicly held company owns any interest in it.

# TABLE OF CONTENTS


CORPORATE DISCLOSURE STATEMENT .......................................................i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES.....................................................................iv

INTRODUCTION ...................................................................................1

STATEMENT OF THE ISSUES ..............................................................1

STATEMENT OF THE CASE..................................................................2

SUMMARY OF THE ARGUMENT ........................................................5

STANDARD OF REVIEW .....................................................................6

ARGUMENT ......................................................................................7

I. Appellant is not entitled to a curtailed, "special statutory proceeding" on any of its claims, and application of Rule 12 standards was appropriate ..7

A. The Federal Rules of Civil Procedure apply here, as courts have repeatedly found in identical cases. ..............................................8

B. Appellant's arguments concerning the administrative subpoena standard are misguided...........................................................9

II. Appellant failed to assert a sufficient purpose or basis for its demand under the CRA ......................................................................12

A. The district court correctly found that review of a state's list maintenance procedures is not a valid purpose under the CRA ....12

B. Appellant's stated purpose for its demand of Maine's SVRL does not satisfy the requirements for a Title III demand because it does not relate to the investigation of violations of individuals' voting rights...........................................................................16

C. Receiving Maine's unredacted SVRL would not serve Appellant's claimed purpose of enforcing the NVRA and HAVA. ..................18

D. Appellant's statement of purpose is pretextual .............................20

E. Appellant has failed to establish a basis for its demand ................25

i. Basis and purpose are distinct requirements under the CRA ...25

ii. "Basis" means a factual basis ..................................................26

iii. Appellant's demand for Maine's unredacted SVRL contained an insufficient statement of basis..................................................27

iv. Appellant failed to comply with CRA's requirement that it state its purported basis and purpose for its Title III demand in the same writing ..........................................................................29

III. The CRA does not authorize DOJ to demand Maine's SVRL .................30

A. The plain language of the CRA supports the district court's holding.............................................................................................31

B. The legislative history and purpose of the CRA also support a holding that the SVRL cannot be the subject of a Title III demand..........................................................................36

CONCLUSION ...............................................................................................38

CERTIFICATE OF COMPLIANCE .............................................................40

CERTIFICATE OF SERVICE .......................................................................41

## TABLE OF AUTHORITIES

**Cases** **Pages**


*Allen v. Milligan*, 599 U.S. 1 (2023) ........................................................36

*Azar v. Allina Health Services*, 587 U.S. 566 (2019)........................................8

*Becker v. United States*, 451 U.S. 1306 (1981)................................................9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................6

*Bufkin v. Collins*, 604 U.S. 369 (2025) ..........................................................34

*California v. United States Department of Health & Human Services*,
No. 25-cv-05536-VC, 2025 WL 3751931 (N.D. Cal. Dec. 29, 2025) ...............25

*Center for Taxpayer Rights v. Internal Revenue Service*,
815 F. Supp. 3d 1 (D.D.C. 2025) .......................................................................24

*Center for Taxpayer Rights v. Internal Revenue Service*, No. 25-0457 (CKK),
2026 WL 551105 (D.D.C. Feb. 26, 2026) .........................................................24

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)...........................................................................................19

*Community Economic Development Center of Southeastern Massachusetts v. Bessent*, 818 F. Supp. 3d 228 (D. Mass. 2026)..................................................24

*Department of Agriculture Rural Development Rural Housing Service v. Kirtz*,
601 U.S. 42 (2024)..............................................................................................15

*Department of Commerce v. New York*, 588 U.S. 752 (2019) ...........................20, 21

*Epic Systems Corporation v. Lewis*, 584 U.S. 497 (2018)......................................35

*Fischer v. United States*, 603 U.S. 480 (2024).......................................................15

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962)....................................................29

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) .................................................29, 33

*League of Women Voters v. U.S. Department of Homeland Security*, No. CV 25-3501 (SLS), 2026 WL 1784297 (D.D.C. June 22, 2026) ................22

*McLane Co. v. E.E.O.C.*, 581 U.S. 72 (2017) ........................................................11

*Pennsylvania State Conference of NAACP Branches v. Secretary Commonwealth of Pennsylvania*, 97 F.4th 120 (3d Cir. 2024) ........................................................37

*Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ........................................................14, 35

*Public Interest Legal Foundation, Inc. v. Nago*, 174 F.4th 664 (9th Cir. 2026)......35

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012)...........14

*Schatz v. Republican State Leadership Committee*, 669 F.3d 50 (1st Cir. 2012).......7

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966).............................................37

*S.E.C. v. Tambone*, 597 F.3d 436 (1st Cir. 2010) ......................................................2

*Stamp v. Metropolitan Life Insurance Co.*, 531 F.3d 84 (1st Cir. 2008)....................3

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405 (2017) ........................19

*United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988)...........................................................................18

*United States v. Amore*, 831 F. Supp. 3d 149 (D.R.I. 2026) ............. 9, 16, 19-21, 26

*United States v. Benson*, 179 F.4th 470 (6th Cir. 2026)......... 9, 26, 29, 30, 32-34, 36

*United States v. Benson*, No. 26-1225, 2026 WL 2364306 (6th Cir. Aug. 14, 2026) ........................................................22, 32, 34

*United States v. Board of Elections of New York*, No. 1:25-cv-1338 (MAD/PJE), 2026 WL 1999921 (N.D.N.Y. July 10, 2026).....................................................17

*United States v. Evans*, No. 25-cv-4403 (RDM), slip op. (D.D.C. Aug. 6, 2026)...........................................................................36, 37

*United States v. Fontes*, No. CV-26-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) ....................................................................36

*United States v. Galvin*, 830 F. Supp. 3d 122 (D. Mass. 2026) ...............................26

*United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877 (C.D. Ill. July 31, 2026) .............................................. 14, 15, 17, 19, 20, 26, 27

*United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Or. 2025)......... 16, 19-21, 26, 29

*United States v. Powell*, 379 U.S. 48 (1964)...........................................................8

*United States v. Scanlan*, No. 25-cv-371-JL, 2026 WL 1864054 (D.N.H. June 29, 2026)..................................................................................26

*United States v. Schmidt*, No. 2:25-cv-01481-CB, 2026 WL 1850016 (W.D. Pa. June 27, 2026) ....................................................17, 21, 26

*United States v. Sturm, Ruger & Co.*, 84 F.3d 1 (1st Cir. 1996) ....................... 10-12

*United States v. Toulouse Oliver*, No. 1:25-cv-01193-JCH-JFR, 2026 WL 2031479 (D.N.M. July 14, 2026)..............................................26, 29

*United States v. Warner*, No. 2:26-cv-00156, 2026 WL 2018877 (S.D. W. Va. July 13, 2026) ...........................................................16, 20

*United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026)........9, 19, 21, 26, 29

*United States Department of Justice v. Ricco Jonas*, 24 F.4th 718 (1st Cir. 2022) ............................................................11, 12

*United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989)......32, 33

*United States, ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419 (2023)............................................................................8

*U.S. Coachways, Inc. v. Vaccarello*, No. 17 CV 5983SJ (SJ) (SMG), 2018 WL 3716888 (E.D.N.Y. Aug. 3, 2018) ...............................................32

*Utility Air Regulatory Group v. E.P.A.*, 573 U.S. 302 (2014).................................17

**Statutes and Rules**

Fed. R. Civ. P. 1 .......... 7, 8

21-A M.R.S. § 161(2-A) .......... 35

28 U.S.C. § 2072(b) .......... 8

29 U.S.C. § 657 .......... 10

52 U.S.C. § 20507(a)(4) .......... 13, 34

52 U.S.C. § 20507(c)-(d) .......... 13

52 U.S.C. § 20507(i)(1) .......... 13, 36

52 U.S.C. § 20509 .......... 13

52 U.S.C. § 20510 .......... 13

52 U.S.C. § 20701 .......... 30, 32, 34

52 U.S.C. § 20702 .......... 34

52 U.S.C. § 20703 .......... 12, 25, 29, 30

52 U.S.C. § 20705 .......... 8

52 U.S.C. § 21083(a)(1)(A) .......... 13

52 U.S.C. § 21083(a)(2) .......... 13

52 U.S.C. § 21083(a)(2)(A)(ii) .......... 35

52 U.S.C. § 21085 .......... 13

52 U.S.C. § 21111 .......... 13

**Other Authorities**

Appendix, *United States v. Amore*, No. 26-1665 (1st Cir. July 17, 2026) .......... 22

Camilo Montoya-Galvez, *Reports of airport immigration arrests come amid increased TSA-ICE collaboration, sources say*, CBS News (July 29, 2026), https://perma.cc/36MT-N7AM. ....................25

Daniel M. Berman, *A Bill Becomes a Law: Congress Enacts Civil Rights Legislation* (2d ed. 1966) ....................37

Department of the Secretary of State, *Latest Enrolled and Registered Data Files posted online* (Jan. 22, 2024), https://perma.cc/WPE7-EHWY....................28

Executive Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025)....................23

Executive Order No. 14,243, 90 Fed. Reg. 13681 (Mar. 20, 2025) ....................24

Executive Order No. 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025) ....................24

Executive Order No. 14,399, 91 Fed. Reg. 17125 (Mar. 31, 2026) ....................23

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Perry, *Tracker of Justice Department Requests for Voter Information*, Brennan Center for Justice (updated Aug. 6, 2026), https://perma.cc/GVC7-BVYP ....................21

Nicholas Kerr & Elise Spenner, *System that DHS is urging states to use to assess voter rolls known to return faulty results: reports*, ABC News (July 19, 2026), https://perma.cc/5YBE-LRW6....................23

Peter Elkind et al., *Inside Trump's Failed Hunt for Noncitizen Voters*, ProPublica (Aug. 14, 2026), https://perma.cc/A5KS-M5C7. ....................23

*Purpose*, Dictionary.com, https://perma.cc/R2TW-GEBS (last visited Aug. 6, 2026)....................20

United States Commission on Civil Rights, *1963 Report of the United States Commission on Civil Rights* (1963) ....................37

## INTRODUCTION

Just like 22 other district courts and one court of appeals, the district court correctly held in this case that the United States Department of Justice (DOJ) is not entitled to the sensitive voter information contained in Maine's statewide voter registration list (SVRL). Every court that has decided the issue has ruled against DOJ. That is unsurprising. DOJ's unprecedented request for sensitive voter data is beyond its statutory authority and represents an incursion into States' roles in administering elections—an overreach that upsets our constitutional structure surrounding elections. Appellee the League of Women Voters of Maine (LWVME), which represents hundreds of registered voters in Maine, asks this Court to affirm the district court's dismissal of Appellant's complaint and denial of the motion for an order to show cause.

## STATEMENT OF THE ISSUES

1. Whether meaningful judicial review including application of the standards of the Federal Rules of Civil Procedure apply to DOJ's demand for records under Title III of the Civil Rights Act of 1960 (CRA).
2. Whether DOJ satisfied the statutory prerequisite of stating a sufficient "purpose" in its demand under the CRA for Maine's SVRL.
3. Whether DOJ stated a sufficient factual "basis" for its demand as required under the CRA.

4. Whether the "records and papers which come into [the Secretary of State's] possession" include Maine's SVRL such that the SVRL is a proper subject of a DOJ demand under the CRA.

## STATEMENT OF THE CASE

The district court dismissed Appellant's complaint and denied its motion for an order to show cause because the court found that Maine's SVRL "is not a record that comes into the possession of state officials," and state officials therefore cannot be compelled to provide an unredacted SVRL under the CRA. Add. 14.[1] As a "separate and independent reason" for dismissal, the district found the CRA cannot be used to obtain records for the purpose of reviewing or conducting voter list maintenance. *Id.* The district court also found that neither the National Voter Registration Act (NVRA) nor the Help America Vote Act (HAVA) gives the United States the authority to demand the unredacted SVRL. Add. 20-21. Appellant has not appealed the district court's findings under the NVRA and HAVA.[2]

---

[1] For ease of the Court, LWVME Appellee has adopted the convention of Appellant and uses "Add." to refer to pages in the Addendum of Appellant's brief and "App." to refer to pages in the Appendix.

[2] While Appellant raised claims under the NVRA and HAVA below, it has abandoned those claims on appeal. *See, e.g.*, *S.E.C. v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010) ("In accordance with our usual praxis, we deem abandoned all arguments that have not been briefed and developed on appeal."). Appellant mentions those two statutes in its brief, but only to support its argument that Title III of the CRA may be used to aid in their enforcement. *See* App. Br. at 32-39. That is unsurprising—as the district court noted, Appellant expressed only "half-hearted" support for its NVRA and HAVA claims because it is clear that "neither statute gives the United States the

On July 24, 2025, DOJ wrote to the State of Maine, asking various questions and demanding a copy of its SVRL. *See* App. 32. In that letter, DOJ cited Section 20507(i) of the NVRA to request "[t]he current electronic copy of Maine's computerized statewide voter registration list," including "all fields contained within the list." *Id.* These fields include certain confidential voter information such as driver's license numbers and the last four digits of social security numbers. The letter also referenced Maine's responses to the Election Assistance Commission's (EAC) Election Administration and Voting Survey (EAVS) and requested that the State explain certain EAVS data and provide information about its voter registration, removal, and list-maintenance processes. App. 33-34.

On August 8, 2025, Appellee Maine Secretary of State Shenna Bellows responded. Secretary Bellows addressed each of the DOJ's questions concerning the EAVS data but explained that, under Maine law, certain "data contained within CVR [Maine's central voter registration system] is confidential and may not be disclosed except as specified by statute." App. 37. Secretary Bellows also expressed "grave concerns about the seemingly overbroad scope" of DOJ's requests, which did not "appear to be correlated with legitimate investigatory needs," and asked how the data would be used. App. 35.

---

power to compel Maine to produce" its unredacted SVRL. Add. 20. Because Appellant has abandoned those claims, this Court should not address them here. *See, e.g.*, *Stamp v. Metro. Life Ins. Co.*, 531 F.3d 84, 88 (1st Cir. 2008).

On August 18, 2025, DOJ wrote once more, again demanding access to Maine's unredacted voter registration list. *See* App. 41. In addition to the NVRA and HAVA, DOJ's August 18 letter cited—for the first time—the CRA, claiming that "as required by Section 303 of the CRA, [DOJ's] letter dated July 24, 2025, provided you with 'a statement of the basis and the purpose,'" for the requests. App. 42. The July 24 letter, however, did not reference the CRA, nor did it otherwise state that it was providing "the basis" or "the purpose" of the demand. *See* App. 32-24. Secretary Bellows responded on September 8. She continued to decline to provide the SVRL, including sensitive voter data, citing concerns about DOJ's lack of authority to make the request as well as the privacy issues it raised. App. 70. Secretary Bellows explained that if DOJ were "willing to provide additional information" addressing Maine's concerns about the purpose and legality of the requests for sensitive information, then Maine would consider disclosure. App. 72. DOJ did not respond in writing, but instead filed suit on September 16, 2025, alleging violations of the NVRA, HAVA, and the CRA. App. 1, 13-31. Appellant filed a motion for an order to show cause shortly thereafter. App. 1.

After briefing and oral argument, the district court dismissed Appellant's complaint and denied its motion. The district court found that the SVRL does not "come into possession" of Secretary Bellows and thus was not subject to the disclosure requirement under the CRA. Add. 13. ("Title III's commands therefore

pertain to records and papers that election officials receive from prospective voters to support the exercise of the suffrage by the prospective voters, not lists or other tools created by election officials for the purpose of preserving the information provided by voters and ensuring that persons appearing to vote are registered."). The district court also found that the United States had failed to state a sufficient purpose under the CRA because "the NVRA and HAVA create a comprehensive scheme for the creation and upkeep of states' computerized SVRLs, and for the enforcement of the list maintenance requirements imposed by those statutes." Add. 17. Thus, enforcement of those provisions in the NVRA and HAVA cannot be an appropriate "purpose" under the CRA. *See id.* at 20. ("Furthermore, the NVRA and HAVA are more recent, more precise statutes with their own objectives and mechanisms for enforcement. If they do not authorize the disclosure that the United States here seeks to compel, Title III does not serve to make those statutes any more demanding.") The United States appealed the district court's decision on June 5, 2026.

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's decision dismissing Appellant's complaint and denying the motion for an order to show cause. The district court engaged in appropriate judicial review and properly applied the Federal Rules of Civil Procedure, and the United States is not entitled to a minimal "statutory proceeding" lacking such safeguards. And just as 22 other district courts—every

district court to decide the issue—have found in similar cases across the country, the United States has failed to state a claim upon which relief may be granted. The Sixth Circuit, the only court of appeals to have considered the issue, held the same. The United States' complaint suffers from three major flaws, each of which require dismissal: (1) the United States has not identified a legitimate purpose for its demand, as required under the CRA; (2) the United States failed to state a sufficient basis for its demand, a statutory prerequisite; and (3) the United States cannot demand the SVRL under the CRA because the SVRL is not a record or paper that "comes into possession" of Maine election officials. This Court should affirm the district court.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007). Thus, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court," on a motion to dismiss. *Id.* at 558 (internal quotation and citation omitted).

This Court has set out a two-step approach to reviewing motions to dismiss: "[s]tep one: isolate and ignore statements in the complaint that simply offer legal

labels and conclusions or merely rehash cause-of-action elements." "Step two: take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted).

## ARGUMENT

### I. Appellant is not entitled to a curtailed, "special statutory proceeding" on any of its claims, and application of Rule 12 standards was appropriate.

The district court correctly applied the Federal Rules of Civil Procedure when it dismissed Appellant's complaint. Although the Federal Rules generally apply in "all civil actions," Fed. R. Civ. P. 1, Appellant asserts that the court should have declined to apply them and simply required Maine to release its sensitive voter data without meaningful review of DOJ's demands or the relevant statutes. App. Br. at 15. However, Appellant's argument runs headlong into Supreme Court precedent confirming the applicability, and need for, judicial review in such circumstances. Appellant ignores the 19 recent district court and one appellate decision rejecting its theory, relying instead on out-of-circuit cases that are more than sixty years old, and the product of a very different era. This Court should, likewise, reject Appellant's attempts to avoid such analysis. *See* App. Br. at 14-15.

### A. The Federal Rules of Civil Procedure apply here, as courts have repeatedly found in identical cases.

The Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts," with limited exceptions. Fed. R. Civ. P. 1; *see also* 28 U.S.C. § 2072(b) (providing that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect"). And while Congress may create such exceptions by statute, courts "do not lightly infer that Congress has done so." *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 436 (2023).

Congress created no such exception here. The CRA provides that district courts "shall have jurisdiction *by appropriate process* to compel the production of" a document that DOJ demands. 52 U.S.C. § 20705 (emphasis added). Just a few years after the CRA was enacted, the Supreme Court held that a statute using the same phrase—"appropriate process"—to compel production of documents required application of the Federal Rules. *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964) ("Because § 7604(a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply."). Because the CRA's text is identical to the text at issue in *Powell*, the two statutes should be interpreted in the same way. *See Azar v. Allina Health Servs.*, 587 U.S.

566, 574 (2019) (courts do not readily "assume that Congress silently attaches different meanings to the same term in the same or related statutes").[3]

For these reasons, courts across the country, including three district courts in this Circuit, have rightly rejected Appellant's argument that the Federal Rules are inapplicable here and that courts must simply rubber stamp DOJ's demands for records under Title III of the CRA. *See, e.g.*, *United States v. Benson*, 179 F.4th 470, 478, 483 n.2 (6th Cir. 2026) (applying typical standard of review and citing *Powell* to reject argument that DOJ's demand was "virtually unreviewable"); *United States v. Weber*, 816 F. Supp. 3d 1168, 1182 (C.D. Cal. 2026) (same); *United States v. Amore*, 831 F. Supp. 3d 149, 155 (D.R.I. 2026) (same).

### B. Appellant's arguments concerning the administrative subpoena standard are misguided.

Rather than confront the overwhelming weight of case law, Appellant seeks to take this Court far afield, principally arguing that its demand should not have been assessed under the standard applied to administrative subpoenas or, alternatively, that it has met that standard. *See* App. Br. at 15-29. But the district court did not hold that DOJ had to meet the requirements for an administrative subpoena. Rather, it applied the Federal Rules while noting the similarity to the subpoena context,

[3] While *Powell* is dispositive, the Supreme Court has also repeatedly held that the Federal Rules apply to proceedings that seek documents pursuant to a subpoena unless a statute provides otherwise. *See, e.g.*, *Becker v. United States*, 451 U.S. 1306, 1308 (1981).

focusing on whether DOJ's demand properly stated its purpose and sought information relevant to that purpose. *See* Add. 11 (concluding that "this case presents something other than a perfunctory matter of compelling compliance" and noting *Powell*'s holding that the Federal Rules applied to a statute with "identical language"); *see also id.* at 6-7 (discussing Rule 12(b)(6) standard).

The district court was correct to interpret CRA's "appropriate process" language to require the application of the Rule 12(b)(6) standard, rather than an administrative subpoena test. Appellant relies on cases in which the agencies at issue have explicit subpoena power, and thus application of the subpoena enforcement standard makes sense. *See, e.g.*, 29 U.S.C. § 657 (authorizing the use of administrative subpoenas for the Department of Labor, the agency at issue in *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 3 (1st Cir. 1996)). The CRA does not authorize a subpoena procedure, and neither Congress nor the Federal Rules provide for any special procedure.

Appellant's arguments concerning the administrative subpoena analysis boil down to a simple but startling assertion: because CRA's text does not explicitly require that DOJ's demands for documents be "relevant" to a CRA investigation, or to any other claim of vote denial or the abridgement of constitutional rights, the law "places no limits on [its] purpose . . . and requires no showing of relevance to any unenumerated purpose." App. Br. at 10; *see also id.* at 16-17. That argument lacks

any limiting principle and accepting it would allow DOJ to seek a wide range of private data for *any purpose*, including one contrary to the CRA. By Appellant's reasoning, DOJ could demand data for an explicitly discriminatory or otherwise unlawful purpose, and a court would be obliged to compel its production. The law does not provide the executive branch such power.

Appellant's assertion that it is entitled to the SVRL under the administrative subpoena standard, *see* App. Br. at 23-29, fares no better. Administrative subpoenas are "subject to judicial review and enforcement," and the issuing "agency must prove that (1) the subpoena is issued for a congressionally authorized purpose, the information sought is (2) relevant to the authorized purpose and (3) adequately described, and (4) proper procedures have been employed in issuing the subpoena." *Sturm, Ruger & Co.*, 84 F.3d at 3-4. A district court's decision on whether to enforce a subpoena "should be reviewed for abuse of discretion." *McLane Co. v. E.E.O.C.*, 581 U.S. 72, 75 (2017). And while Appellant argues that courts enforcing subpoenas should perform no meaningful review, *see* App. Br. at 24, it ignores case law demonstrating that this Court seriously considers statutory construction questions when determining whether to enforce a subpoena. *See U.S. Dep't of Just. v. Ricco Jonas*, 24 F.4th 718, 728 (1st Cir. 2022).

Applying those standards, the district court did not abuse its discretion. As explained in detail below, the court correctly concluded that DOJ's demands were

not relevant to a congressionally authorized purpose. *See infra* Section II.A-D. In part, that is because Maine's SVRL is not a document covered by Title III of the CRA. *See infra* Section III.A; *see also Ricco Jonas*, 24 F.4th at 728 (assessing whether statute authorized administrative subpoenas to states). Further, DOJ failed to follow the "proper procedures" when it sought the documents, *Sturm*, 84 F.3d at 4, because it did not meet the CRA's requirements of stating the basis and the purpose of its demand. *See infra* Section II.A-E.

## II. Appellant failed to assert a sufficient purpose or basis for its demand under the CRA.

Appellant did not comply with the CRA's requirement that it submit a "demand in writing" that includes a valid "statement of the basis and the purpose" for its demand, and dismissal of its CRA claim was therefore appropriate. 52 U.S.C. § 20703.

### A. The district court correctly found that review of a state's list maintenance procedures is not a valid purpose under the CRA.

Title III of the CRA requires DOJ to provide "the purpose" for any request for applicable records. *Id.* Appellant's effort to use HAVA and the NVRA's list maintenance requirements as the requisite purpose fails because those statutes create comprehensive schemes that entrust list maintenance responsibilities to the states and provide for enforcement in instances of noncompliance. The NVRA requires each state to "conduct a general program that makes a reasonable effort to remove

the names of ineligible voters from the official lists" for deaths and changes in residence; specifies when and how states may and may not remove voters from the rolls; and compels states to designate a chief election official responsible for these tasks. 52 U.S.C. §§ 20507(a)(4), 20507(c)-(d), 20509. HAVA, among other things, obliges chief election officials to "implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list;" calls for that list to be "defined, maintained, and administered at the State level;" tells "appropriate State or local election official [to] perform list maintenance;" and directs that "the specific choices on the methods of complying . . . shall be left to the discretion of the State[s]." 52 U.S.C. §§ 21083(a)(1)(A), 21083(a)(2), 21085.

These schemes include a limited role for DOJ: to bring civil enforcement actions for instances of noncompliance. 52 U.S.C. § 20510 (Attorney General may bring a lawsuit to "carry out this chapter" [the NVRA]); 52 U.S.C. § 21111 (Attorney General may sue to enforce four specific provisions of HAVA). The NVRA also allows DOJ (and others) access to "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). As this Court has held, the NVRA's disclosure provision extends to SVRLs, subject to redaction of "uniquely or highly sensitive personal information" about voters—the precise

sensitive information Appellant seeks here. *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024). The statutes do not, however, give DOJ limitless authority to conduct audits, question removal rates, or access confidential information. "Congress did not confer a general auditing power to the DOJ over state election officials" in the NVRA or HAVA. *United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877, at *5 (C.D. Ill. July 31, 2026) (citing *West Virginia v. EPA*, 597 U.S. 697, 721-23 (2022)).

"It is a commonplace of statutory construction that the specific governs the general. That is particularly true where . . . Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citations omitted). Where "a general authorization and a more limited, specific authorization exist side-by-side . . . [t]he terms of the specific authorization must be complied with." *Id.*

The NVRA and HAVA create specific, carefully crafted, nationwide rules for list maintenance. States alone are responsible for doing such line-by-line maintenance, and the federal government's role is limited to reviewing the general programs of list maintenance through the enforcement mechanisms those statutes create. To allow a more general grant of authority in the CRA to supersede the structure created by the NVRA and HAVA would destroy that structure entirely. *See*

Add. 17-18. The government cannot establish a legally sufficient purpose under the CRA by reference to enforcing statutes that do not provide the government with the authority it claims. "If the Attorney General could simply justify his demand with a statement of any purpose whatsoever, the requirement that he specify his purpose . . . would be pointless and it would provide him with unfettered authority to demand voting records." *Matthews*, 2026 WL 2212877, at *5. That would make the CRA's "purpose" requirement superfluous and contradict the foundational canon that a court must "give effect, if possible, to every clause and word of [the] statute." *Fischer v. United States*, 603 U.S. 480, 486 (2024).

Thus, Appellant's reliance on the NVRA and HAVA undermines its case, because those statutes limit DOJ's investigatory authority to the oversight responsibilities Congress delegated within them. The NVRA and HAVA do not grant the federal government unfettered power to obtain confidential voter information. *Cf.* App. Br. at 32. Notably, the portions of those statutes Appellant quotes describe only the rules placed on states, and do not provide DOJ with authority to do anything. Neither the Constitution nor Congress has delegated this power to the executive branch—DOJ gets to choose which purpose to pursue in a Title III demand, but that does not mean that the CRA expands DOJ's authority in ways not otherwise envisioned by federal law. *See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,

601 U.S. 42, 63 (2024) ("Where two laws are merely complementary . . . our duty lies not in preferring one over another but in giving effect to both.").

The NVRA and HAVA also postdate the CRA, meaning that Congress knew the limits of DOJ's authority under the CRA and chose to leave them in place. If Congress wanted to reference the CRA in those statutes, or otherwise grant DOJ supervisory authority over list maintenance (or any free-ranging authority to gather unredacted SVRLs), it would have. But when Congress specified election administration rules for states to follow in the NVRA and HAVA, its silence about the CRA—and its inclusion of other disclosure mechanisms in the NVRA—undermines the notion that the CRA overrides those newer, more specific statutory schemes.

### B. Appellant's stated purpose for its demand of Maine's SVRL does not satisfy the requirements for a Title III demand because it does not relate to the investigation of violations of individuals' voting rights.

Appellant's purported desire to investigate Maine's NVRA and HAVA compliance is legally insufficient, because the CRA can only be used to investigate violations of individuals' voting rights. *United States v. Oregon*, 828 F. Supp. 3d 1092, 1105 (D. Or. 2025) ("[T]he 'purpose' required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights); *Amore*, 831 F. Supp. 3d at 157 (same) (quoting *Oregon*); *United States v. Warner*, No. 2:26-cv-00156, 2026 WL 2018877, at *7 (S.D. W. Va. July 13, 2026)

(same) (quoting *Oregon*); *United States v. Bd. of Elections of New York*, No. 1:25-cv-1338 (MAD/PJE), 2026 WL 1999921, at *8 (N.D.N.Y. July 10, 2026); *United States v. Schmidt*, No. 2:25-cv-01481-CB, 2026 WL 1850016, at *1-2 (W.D. Pa. June 27, 2026). Assessing state compliance with routine election administration in the absence of potential voting rights violations is not a legally valid purpose for a Title III demand.[4] *Matthews*, 2026 WL 2212877, at *5.

Appellant asserts that limiting demands to the protection of voting rights is to "superimpose an extratextual limit on Title III," App. Br. at 32, but this gets the analysis backwards.[5] A "fundamental canon of statutory construction [is] that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Util. Air Regul. Group v. E.P.A.*, 573 U.S. 302, 320 (2014). "Statutory construction . . . is a holistic endeavor" and a "provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that

---

[4] Appellant's assertion that the United States has previously used demands under the CRA to investigate "issues of list maintenance," App. Br. at 38-39, is unpersuasive because the cases it cites resulted in settlements. That prior parties chose to settle does not create binding law.

[5] Appellant also suggests NVRA and HAVA compliance protect voting rights by preventing the dilution of votes cast by lawfully registered voters. App. Br. at 33. But it never explains how acquiring Maine's SVRL will lead to all votes being given "appropriate weight." *Id.* at 33. An unsupported claim that this Title III demand will prevent vote dilution does not meet the purpose requirement. This argument also fails on the basis prong because Appellant has not put forward an iota of evidence that noncitizen voting is warping federal elections in Maine.

is compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). It would turn the CRA on its head to divorce the purpose requirement from the rest of the statute—which Appellant concedes exists to promote voting rights, not list maintenance, App. Br. at 32—and allow for purposes that have no relation to, and perhaps even undermine, the statutory scheme. Thus, because Appellant's purpose for its CRA demand of Maine's unredacted SVRL was to assess Maine's list maintenance—and not to investigate violations of individuals' voting rights—Appellant cannot use the CRA to obtain Maine's SVRL.

### C. Receiving Maine's unredacted SVRL would not serve Appellant's claimed purpose of enforcing the NVRA and HAVA.

Even if the CRA could be used to demand records for NVRA and HAVA oversight, Appellant's asserted purpose for its CRA request of Maine's unredacted SVRL fails for another reason: the unredacted SVRL would not enable Appellant to achieve its stated goal of "ascertain[ing] Maine's compliance with the list maintenance requirements of the NVRA and HAVA." App. Br. at 28. Secretary Bellows's responses to DOJ's letters in 2025 provide the information needed to ascertain Maine's compliance with its list maintenance requirements, by explaining how Maine conducts list maintenance as required by federal law. The SVRL, on the other hand, provides only a snapshot of current registrations, and provides no additional information about how Maine operates either its initial registration

process or its list-maintenance systems. Partially redacted versions of the voter rolls are publicly available, and Appellant has not said why confidential information is needed. *See Weber*, 816 F. Supp. 3d at 1184 ("And there was no explanation for why unredacted voter files for millions of Californians, an unprecedented request, was necessary for the DOJ's investigation.").

* * *

While it is true that the "basis and purpose" requirements in the CRA do not contain a list of categories of documents DOJ may demand, App. Br. at 30-31, they do require Appellant to explain why it needs the information sought. DOJ must give a legally valid reason of need that connects to a legally valid result. *Amore*, 831 F. Supp. 3d at 157; *Oregon*, 828 F. Supp. 3d at 1105; *Matthews*, 2026 WL 2212877, at *5. Exceeding the agency's authority under the NVRA and HAVA to get data that does not address Maine's compliance with those laws does not suffice.

Appellant also argues that "purpose" merely means notice of any purpose. App. Br. at 30-31. But if Congress meant to say notice, it would have. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) ("If . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text."). "We thus begin and end our inquiry with the text, giving each word its ordinary, contemporary, common meaning." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017)

(citation modified). 'Purpose' means "the reason for which something exists or is done; an intended or desired result." *Purpose*, Dictionary.com, https://perma.cc/R2TW-GEBS (last visited Aug. 6, 2026). The plain meaning of "purpose"—the term Congress chose to use in the CRA—is clearly something more than just "notice" of any purpose. *See, e.g.*, *Warner*, 2026 WL 2018877, at *6 ("[T]he 'purpose' requirement cannot be satisfied by a blanket statement to a potential violation of any federal law . . . ."); *Amore*, 831 F. Supp. 3d at 157 ("Congress cannot have intended Title III as permitting such a demand based on a statement of *any* purpose."); *Oregon*, 828 F. Supp. 3d at 1104 ("If *any* purpose—regardless of its relationship to the purposes of the statute itself—would suffice, then the requirement of stating the demand's purpose would serve no function."); *Matthews*, 2026 WL 2212877, at *5 ("The Attorney General must state a *legitimate* purpose for any Title III demand . . . ."). Redefining "purpose" as "any purpose" would effectively read that requirement out of the statute.

**D. Appellant's statement of purpose is pretextual.**

Appellant also cannot establish a legally sufficient purpose for its request for Maine's unredacted SVRL because Appellant's purported purpose is obviously pretextual. This Court should not accept Appellant's vague assertions of assessing compliance with federal law as the true purpose for its demand. "Accepting contrived reasons would defeat" the purpose of judicial review. *Dep't of Com. v. New*

*York*, 588 U.S. 752, 785 (2019). When agency action is "incongruent with what the record reveals about the agency's priorities . . . [a court] cannot ignore the disconnect between the decision made and the explanation given." *Id.* Courts "are not required to exhibit a naiveté from which ordinary citizens are free." *Id.* (citation omitted).

Public actions and statements from federal officials reveal that DOJ is on a "nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database." *Weber*, 816 F. Supp. 3d at 1184; *see also Oregon*, 828 F. Supp. 3d at 1106 (same); *Schmidt*, 2026 WL 1850016, at *2 ("Public statements from government officials reveal its intentions: to create a nationwide voter-database, for potential weaponization in future elections; as a 'fishing expedition,' hoped to advance unsubstantiated claims of non-citizen voting; and as a tool for immigration enforcement."); *Amore*, 831 F. Supp. 3d at 158 (rejecting the United States' effort to "conduct the kind of fishing expedition" it seeks with its demands).

DOJ demanded unredacted voter rolls from nearly every state in the country and filed lawsuits against 30 states and Washington, D.C., showing that it is engaged in a sweeping effort to amass data, rather than targeted assessments of list maintenance practices.[6] Appellant's descriptions of its plans for this data have

---

[6] Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Perry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Aug. 6, 2026), https://perma.cc/GVC7-BVYP.

changed over time, further revealing their pretextual nature. Government lawyers admitted at multiple hearings that the United States plans to run voter data through the Systematic Alien Verification for Entitlements (SAVE) program.[7] App. 165:17-23, *United States v. Amore*, No. 26-1665 (1st Cir. July 17, 2026) ("[O]ur intention is to run this against DHS's SAVE database."); App. 123:21-23 ("To the extent that that data may be run against other databases, again, that's something that's been routine . . . ."); *see also United States v. Benson*, No. 26-1225, 2026 WL 2364306, at *12 (6th Cir. Aug. 14, 2026) (Thapar, J., dissenting from denial of reh'g en banc) ("The Attorney General then planned to compare the voter file to federal databases . . . ."). Before even receiving any of the information it seeks, Appellant has admitted it will use the data for purposes far afield from assessing compliance with the NVRA and HAVA. *Cf.* App. Br. at 26-27. As recently as July 17, the Secretary of the Department Homeland Security (DHS) threatened state officials with withholding funds and possible criminal penalties unless they "scrub" their voter rolls in line with

[7] On June 22, 2026, however, a district court in the District of Columbia found that the expansion of SAVE, particularly its inclusion of information from the Social Security Administration, was unlawful. *See League of Women Voters v. U.S. Dep't of Homeland Sec*., No. CV 25-3501 (SLS), 2026 WL 1784297, at *1 (D.D.C. June 22, 2026) (finding the SAVE program expansion had "haphazardly combined and repurposed the private information of millions of Americans, including citizenship data that they knew to be unreliable"). The court also found the federal government had trampled on the privacy rights of American citizens in a manner that threatens the sacred right to vote. *Id*. Thus, at this time DOJ may not run Maine's SVRL through SAVE.

DHS's demands, after apparently running several states' voter rolls through the SAVE program.[8] Reports detail how the government has prioritized the collection of individual-level voter data and prosecution of election crimes at the expense of law enforcement agency's core missions, including by reassigning DHS's investigatory arm to tracking down "leads" of noncitizens voting.[9]

Further, multiple Executive Orders call for the creation of federal voter lists and attempt to establish federal oversight over state registration and voting procedures. The President's March 31, 2026, Executive Order, "Ensuring Citizenship Verification and Integrity in Federal Elections" (the Mail Voting EO), directed DHS to create lists of citizens eligible to vote using information from U.S. Citizenship and Immigration Services, the Social Security Administration, and "other relevant Federal databases." Exec. Order No. 14,399, 91 Fed. Reg. 17125, § 2(a) (Mar. 31, 2026).

The Mail Voting EO follows other Executive Orders issued last year that established centralized data keeping systems and ordered agencies to give "full and prompt access to all unclassified agency records, software systems, and IT systems," Exec. Order No. 14,158, 90 Fed. Reg. 8441, 8442, §§ 1, 4(b) (Jan. 20, 2025);

[8] Nicholas Kerr & Elise Spenner, *System that DHS is urging states to use to assess voter rolls known to return faulty results: reports*, ABC News (July 19, 2026), https://perma.cc/5YBE-LRW6.
[9] Peter Elkind et al., *Inside Trump's Failed Hunt for Noncitizen Voters*, ProPublica (Aug. 14, 2026), https://perma.cc/A5KS-M5C7.

required federal agencies to "ensure the Federal Government has unfettered access to comprehensive data from all State programs that receive Federal funding, including, as appropriate, data generated by those programs but maintained in third-party databases," Exec. Order No. 14,243, 90 Fed. Reg. 13681, § 3(b), (c) (Mar. 20, 2025); and directed DHS to provide state and local officials access to government systems to verify citizenship and coordinate with the "DOGE Administrator" to "identify unqualified voters registered in the States," Exec. Order No. 14,248, 90 Fed. Reg. 14005, 14006-07, § 2(b), 2(b)(iii) (Mar. 25, 2025). Taken together, these Orders lay clear the government's plan to amass and centralize as much information as possible about ordinary Americans.

The current data aggregation mission is part of the Administration's wider effort to centralize Americans' data. The Administration directed the Internal Revenue Service to provide confidential tax information to Immigration and Customs Enforcement (ICE) until courts found it unlawful. *Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, 815 F. Supp. 3d 1, 18-20 (D.D.C. 2025); *Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, No. 25-0457 (CKK), 2026 WL 551105, at *3 (D.D.C. Feb. 26, 2026); *Cmty. Econ. Dev. Ctr. of Se. Mass. v. Bessent*, 818 F. Supp. 3d 228, 234-35 (D. Mass. 2026). The Centers for Medicare & Medicaid Services agreed to provide ICE extraordinary levels of detail about Medicaid recipients, including social security numbers, birthdays, sex, phone numbers, localities, ethnicities, and

race, although a court order narrowed the available information. *California v. U.S. Dep't of Health & Hum. Servs.*, No. 25-cv-05536-VC, 2025 WL 3751931, at *3 (N.D. Cal. Dec. 29, 2025). The Transportation Security Administration reportedly signed an agreement with ICE and has been providing ICE with travelers' information for use in immigration enforcement.[10]

Against this backdrop, Appellant's claim that it is seeking voters' confidential data solely to pursue high-level checks for compliance with federal voter registration law is implausible. DOJ's efforts to acquire unredacted state voter rolls are part of the executive branch's larger data consolidation project.

**E. Appellant has failed to establish a basis for its demand.**

Appellant also failed to state a sufficient basis for its Title III demand and this Court should affirm for that reason as well.

**i. Basis and purpose are distinct requirements under the CRA.**

The CRA requires that the Attorney General's "demand shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The inclusion of the article "the" before each of the words "basis" and "purpose," as well as the use of the conjunctive "and" between them—the basis and the purpose—show that the statute requires the statement to contain a specific basis and, separately, a specific

[10] Camilo Montoya-Galvez, *Reports of airport immigration arrests come amid increased TSA-ICE collaboration, sources say*, CBS News (July 29, 2026), https://perma.cc/36MT-N7AM.

purpose. *See, e.g.*, *United States v. Benson*, 179 F.4th at 483 ("The government cannot pinpoint a Title III demand with a statement of the basis *and* purpose. . . . [A]ny demand must contain both."); *United States v. Toulouse Oliver*, No. 1:25-cv-01193-JCH-JFR, 2026 WL 2031479, at *9 (D.N.M. July 14, 2026) ("Section 202703 requires the Attorney General outline both the discrete factual and the legal motivations underlying the request."). To require only a generalized statement would collapse those two requirements into one, a reading that cannot be reconciled with the statutory text.

**ii. "Basis" means a factual basis.**

Title III requires the Attorney General to establish a factual basis for his demand. *Cf.* App. Br. at 26-28. Every court to consider the issue has required the demand to include a factual basis. *See Weber*, 816 F. Supp. 3d at 1182-84 ("The basis is the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law"); *Toulouse Oliver*, 2026 WL 2031479, at *9; *Amore*, 831 F. Supp. 3d at 156-57; *United States v. Galvin*, 830 F. Supp. 3d 122, 129-30 (D. Mass. 2026); *Oregon*, 828 F. Supp. 3d at 1104; *United States v. Scanlan*, No. 25-cv-371-JL, 2026 WL 1864054, at *8 (D.N.H. June 29, 2026); *Schmidt*, 2026 WL 1850016, at *1; *Matthews*, 2026 WL 2212877, at *4.

**iii. Appellant's demand for Maine's unredacted SVRL contained an insufficient statement of basis.**

DOJ provided no sufficient factual basis here. Appellant's claimed basis is that "Maine's list maintenance program *may* violate the NVRA and HAVA." App. Br. at 27 (emphasis added). Such a standard would lower the statutory threshold to one of conjecture. If the Attorney General could compel election records from states anytime he thought they "may" be doing something wrong, with no legitimate factual support, then the CRA's reach would be limitless. That would eviscerate the limited oversight scheme Congress created. *See Matthews*, 2026 WL 2212877, at *5 ("Title III requires a factual basis for the demand which could include the evidence behind the Attorney General's investigation into the state's suspected noncompliance with federal law.").

The EAVS data to which Appellant points in its brief does not establish any likelihood that Maine is failing to implement the procedures required by the NVRA and HAVA. App. Br. at 26; App. 22-25, ¶¶ 33-46. Those statutes impose only process obligations on states; they do not mandate the removal of certain percentages of voters. In neither its initial letters to Secretary Bellows, nor in its arguments, does Appellant connect the EAVS result with any alleged deficiency in Maine's list maintenance procedures, despite Secretary Bellows's thorough explanation of the same.

Instead, Appellant implies that Maine's active voter registration rate is too high, that the State has not identified enough duplicate registrations, and that too many people have moved. Secretary Bellows' August 8, 2025, response upends these assumptions. For example, it says Maine's 92.4% registration rate is "consistent with Maine's longstanding high rates of civic engagement and voter participation" and that the State cancelled more than 180,000 registrations in the first half of 2025 alone.[11] App. 38-39.

These responses provided DOJ with sufficient information to determine whether Secretary Bellows was complying with her obligations under the NVRA and HAVA. Instead of attempting to explain why they were insufficient, DOJ's response demanded the full SVRL, again without explanation as to how that will assist in any subsequent analysis. App. 41-43. Appellant defends this tactic by asserting, without authority, that DOJ was not required to believe Secretary Bellows's answers or ask follow-up questions before getting the SVRL. App. Br. at 27. But such a theory would allow Appellant to get any election record without having shown any likelihood of a legal deficiency in a state's processes. That would take all meaning out of the CRA's basis requirement.

---

[11] In June 2024, the Secretary of State reported 948,734 active registered voters in the state. Dep't of the Sec'y of State, *Latest Enrolled and Registered Data Files posted online*, (Jan. 22, 2024), https://perma.cc/WPE7-EHWY.

Appellant's conclusory statements of basis contrast with the lawful demands for election records by the Attorney General in the 1960s. In *Kennedy v. Lynd*, the demand referenced information "tending to show that distinctions on the basis of race or color have been made with respect to registration and voting." 306 F.2d 222, 229 n.6 (5th Cir. 1962); *see also Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (same). "These cases also show that the DOJ wrote statutorily compliant demand letters sixty years ago." *Toulouse Oliver*, 2026 WL 2031479, at *8; *see also Weber*, 816 F. Supp. 3d at 1182-83 ("In the past, the DOJ has routinely stated. . . [a] basis related to alleged civil rights violations . . . ."). The Attorney General sixty years ago had to have evidence of racial discrimination to acquire election records, and Appellant must present a similarly sufficient factual basis here.[12] It cannot.

**iv. Appellant failed to comply with CRA's requirement that it state its purported basis and purpose for its Title III demand in the same writing.**

As several courts have recognized, DOJ's various communications to the states failed to provide a proper basis and purpose within a single written demand. *See, e.g.*, *Benson*, 179 F.4th at 483; *Toulouse Oliver*, 2026 WL 2031479, at *9; *Galvin*, 830 F. Supp. 3d at 127-28; *Oregon*, 828 F. Supp. 3d at 1104. DOJ is entitled to documents only after making a "demand in writing" and "[t]his demand shall

[12] Even if Appellant provided such data to establish a basis, that would not mean that assessing compliance with the NVRA and HAVA would constitute a proper purpose. *See infra* Section II.B.-D.

contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The statute refers to *only one* demand and directs that the basis and purpose must be written within it. It does not contemplate DOJ piecing together the requirements across multiple correspondences.

The Attorney General's first letter to Secretary Bellows, dated July 24, 2025, contained several observations and questions about Maine's election system but no reference to the CRA. The second letter, dated August 18, 2025, invoked the CRA for the first time and is asserted as the first letter to establish the basis and purpose, but that letter itself provided no factual basis for the demand. Appellant nearly concedes this point by pointing only to *Benson*'s dissent for suggestion it met the statutory requirements with no explanation of why the several courts to rule otherwise, including the *Benson* majority, got it wrong. App. Br. at 28.

**III. The CRA does not authorize DOJ to demand Maine's SVRL.**

The district court also correctly held that Appellant would not be entitled to Maine's unredacted SVRL even if its demand sufficiently stated a basis and purpose. The CRA provides that election officers must retain "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," 52 U.S.C. § 20701, and the district court properly concluded that Maine's SVRL did not "come into [the]

possession" of state election officials because they did not obtain it from a third party.

### A. The plain language of the CRA supports the district court's holding.

Seventeen courts, including the district court here, have held that Appellant cannot use the CRA to obtain States' SVRLs because they are not records that "come into possession" of state election officials, but rather records the state election officials create and maintain. *See, e.g.*, Add. 13. As the Sixth Circuit explained, "come into possession" is a synonym for "obtain," "acquire," or "receive." *Benson*, 179 F.4th at 478. And Bellows did "not acquire, obtain, or receive the qualified voter file from a third party," but instead created the SVRL, meaning it does not fall within the CRA's bounds. *Id.* at 478-79. As the district court explained:

> Title III's commands therefore pertain to records and papers that election officials receive from prospective voters to support the exercise of the suffrage by the prospective voters, not lists or other tools created by election officials for the purpose of preserving the information provided by voters and ensuring that persons appearing to vote are registered.

Add. 13. This Court should reject Appellant's contentions to the contrary for the following reasons.

First, Appellant generally agrees on the definition of "comes into possession" but argues that the language serves simply as a *temporal* limitation, rather than limiting the records based on whether election officials receive them. App. Br. at 41-

46. That interpretation contradicts normal English usage. The phrase does not encompass records that state election officials create, because an "ordinary English speaker would not say that she has come into possession of something that she created, established, and maintained." *Benson*, 179 F.4th at 479. Appellant muses that Congress likely used the term "because it is broad enough to include both voter-generated and state-generated documents," but relies primarily on its own Office of Legal Counsel opinion for support.[13] App. Br. at 42. Indeed, even the dissent in *Benson* did not dispute that "'the aggregate' list does not qualify as a record" under 52 U.S.C. § 20701. *Benson*, No. 26-1225, 2026 WL 2364306, at *3 (describing the arguments of the dissent) (Murphy, J., concurring in denial of reh'g en banc).

Appellant's reliance on *United States Department of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989), to support its argument that records created by election

[13] Appellant's additional citation to an unreported out-of-circuit contract case for this argument is also misplaced. App. Br. at 42 (citing *U.S. Coachways, Inc. v. Vaccarello*, No. 17 CV 5983SJ (SJ) (SMG), 2018 WL 3716888, at *2 (E.D.N.Y. Aug. 3, 2018)). The confidentiality agreement at issue in *Vaccarello* stated that "all memoranda, disks, files, notes, records or other documents . . . and whether created by Vaccarello or others, which come into his possession, shall be and remain the exclusive property of the Company." 2018 WL 3716888, at *2 (citation modified). This differs materially from the language in the CRA, and that difference undermines Appellant's argument. The contract's coverage of documents that "come into his possession" would not have covered items Vaccarello created, and that is why the contract also had to expressly state that it covered documents "created by [Vaccarello]." *Id.* Thus, *Vaccarello* provides no help to Appellant because, unlike the contract in that case, the CRA does not include a phrase which says documents "created by" election officials must be produced.

officials come into their possession is similarly unavailing. App. Br. at 42-43. In that case, concerning the Freedom of Information Act, the Court analyzed the term "agency records" in a statutory provision that does not include the "comes into possession" language at issue here. The case thus provides no guidance on how to analyze the operative phrase here. *Benson*, 179 F.4th at 481. Further, *Tax Analysts*'s definition of agency records relies on the purposes of the Freedom of Information Act, and found that "[t]o restrict the term 'agency records' to materials generated internally would frustrate Congress' desire to put within public reach the information available to an agency in its decision-making processes." *Tax Analysts*, 492 at 144. The language cited by Appellant is not a textual reading of the statute, but reflects a judicial definition of agency records to fulfill Congress's intent of promoting transparency by enacting FOIA, while also protecting sensitive information like employment records. *Id.* at 145. That is not the case here—Appellant is relying on a provision that only authorizes the Attorney General to obtain records in a field in which the executive's authority is limited, and circumscribes the types of records available by requiring that they come "into the possession" of the election official.[14]

[14] While the CRA encompasses a much smaller universe of potential records it also accommodates concerns about the release of private information. Even in *Lynd*, the Fifth Circuit recognized, "we are not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection and which by nature relate directly to the most vital of all public functions— the franchise of the citizen." 306 F.2d at 231.

*See United States v. Benson*, 2026 WL 2364306, at *4 (Murphy, J., concurring in denial of reh'g en banc) (Attorney General not entitled to request "all voting records").

Second, Appellant's argument that "come into his possession" is a temporal limitation would make those very words superfluous. *Benson*, 179 F.4th at 480. Courts should generally give effect to each word in a statute where possible. *Bufkin v. Collins*, 604 U.S. 369, 387 (2025) ("The canon against surplusage can be meaningful when a competing interpretation would avoid superfluity."). But if "comes into possession" does not mean a record must actually pass into the custody of the election official, it adds nothing to the CRA; the words could be excised without changing the meaning of the statute.[15]

Third, the parts of the CRA mandating that Secretary Bellows "preserve[]" and refrain from "alter[ing]" the defined records, *see* 52 U.S.C. § 20702, conflict with Maine's responsibilities under the NVRA and HAVA that require almost constant alteration of the SVRL. HAVA and the NVRA require that States have general programs for list maintenance—in other words, systems to make sure the lists are accurate, by developing dynamic processes to add newly registered and eligible voters and remove those who become ineligible. *See* 52 U.S.C.

[15] Without the words "come into his possession," section 20701 would require retention of "all records and papers . . . relating to any . . . act requisite to voting" for 22 months after each election. 52 U.S.C. § 20701.

§ 20507(a)(4) (NVRA); 52 U.S.C. § 21083(a)(2)(A)(ii) (HAVA). Appellant relies on some of these provisions. *See* App. Br. at 49. Maine's SVRL is something created and consistently maintained by the State of Maine. *See* 21-A M.R.S. § 161(2-A); *see also* App. 36-37 (Secretary Bellows explaining list maintenance procedures). If Maine's SVRL qualified as a record covered by the CRA, election officials would face opposing and mutually exclusive requirements under the NVRA and HAVA, which require that states keep their SVRLs updated, and the CRA, which forbids that same record's alteration. Principles of statutory interpretation counsel courts not to interpret statutes in a manner that leads to conflicts between them. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 511 (2018).

Affirming the district court's holding on this point would not conflict with existing First Circuit law that the NVRA's separate disclosure provision can require disclosure of the *redacted* SVRL because the statutes differ in several ways. *Compare Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 47 (1st Cir. 2024) *with Pub. Int. Legal Found., Inc. v. Nago*, 174 F.4th 664, 679 (9th Cir. 2026).[16] Most importantly, the NVRA does not include the "comes into possession" language that Congress chose to include in the CRA. A record for purposes of this provision of the

---

[16] This Court's decision in *Public Interest Legal Foundation, Inc. v. Bellows* remains good law and provides the better textual analysis. 92 F.4th 36, 47 (1st Cir. 2024) ("In this way, the Voter File plainly relates to the carrying out of Maine's voter list registration and maintenance activities and is thereby subject to disclosure under Section 8(i)(1).").

NVRA is instead defined by the phrase "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1); *see also Benson*, 179 F.4th at 480 ("Accordingly, that statewide voter registration lists may qualify as records under the NVRA tells us nothing about whether such lists are records that come into the possession of election officers under Title III."); *United States v. Fontes*, No. CV-26-00066-PHX-SMB, 2026 WL 1177244, at *6 (D. Ariz. Apr. 28, 2026) ("[T]he NVRA's statutory language is too dissimilar to be of any real value in interpreting the text of § 20701.").

**B. The legislative history and purpose of the CRA also support a holding that the SVRL cannot be the subject of a Title III demand.**

The legislative history and purpose of the CRA also counsel against requiring disclosure of the unredacted SVRL to Appellant. Congress passed the CRA to ensure retention of certain records and to allow DOJ to seek injunctive relief against recalcitrant elections officials who denied individuals the right to vote. At the time of the CRA's passage, elections officials in parts of the country often denied Black Americans the right to vote. *United States v. Evans*, No. 25-cv-4403 (RDM), slip op. at 17-18 (D.D.C. Aug. 6, 2026). The statute's purpose is to protect individual voting rights; it was "designed to protect access to the ballot in jurisdictions with patterns or practices of denying [voting] access based on race." *Allen v. Milligan*, 599 U.S. 1, 47 (2023) (Thomas, J., dissenting). Prior to the CRA, some states and localities

engaged in a variety of techniques to prevent eligible Black voters from voting. "One of the many techniques used to keep Black voters from the polls was to reject would-be registrants for insignificant, hyper-technical errors in filling out application forms." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 126 (3d Cir. 2024). During this time, "some southern officials, in order to hamper investigations by the Department of Justice and the Civil Rights Commission, had been destroying or impounding voting and registration records." Daniel M. Berman, *A Bill Becomes a Law: Congress Enacts Civil Rights Legislation* 9 (2d ed. 1966); *see also* U.S. Comm'n on C.R., *1963 Report of the United States Commission on Civil Rights*, at 16 (1963). Congress passed the CRA to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the *right to vote on racial grounds*." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966) (emphasis added); *see generally Evans*, No. 25-cv-4403 (RDM), slip op. at 17-18 (discussing history of CRA in the context of dismissing Appellant's complaint seeking Washington D.C.'s SVRL).

Congress, therefore, passed the CRA with a singular, critical purpose—guaranteeing the right to vote and ensuring effective mechanisms toward that end. By contrast, allowing DOJ unfettered access to *any* voting-related documents, with little-to-no judicial review, exceeds the statutory purpose of the CRA—which is an

important, but limited federal statute intended to address a specific issue—to remedy unlawful vote denial. Appellant says that it has demanded the unredacted SVRL for the purpose of compliance with the list maintenance provisions of NVRA and HAVA, yet has not indicated in any way that it has concerns that Maine is denying the right to vote to eligible Maine voters. Thus, the legislative purpose of passing the CRA is not implicated by the Appellant's request, which supports the district court's holding.

Further, as the district court properly identified, Appellant's position would create federalism concerns by transferring decision-making over aspects of election administration from states to the federal government. *See* Add. 18-19 ("Finally, giving Title III the construction that the United States requests would also require me to turn a blind eye to traditional principles of federalism and how those principles have found expression in American elections—the backdrop against which Congress enacted the NVRA and HAVA.").

## CONCLUSION

The district court correctly dismissed Appellant's complaint and denied its motion for an order to show cause, because Appellant is not legally entitled to Maine's SVRL under the CRA. This Court should affirm the district court's ruling and join every other court to have considered this issue.

Respectfully submitted on August 17, 2026,

/s/ *Sejal Jhaveri*

Maura Eileen O'Connor
Brennan Center for Justice
at NYU School of Law
777 6th St., NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew B. Garber
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
Tel: (646) 292-8310
Fax: (212) 463-7308
garbera@brennan.law.nyu.edu

Brent Ferguson
Sejal Jhaveri
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
bferguson@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org

Allan K. Townsend
Johnson, Webbert & Beard, LLP
1 Bowdoin Mill Island, Suite 300
Topsham, ME 04086
Tel: (207) 623-5110
allan@work.law

*Counsel for Defendant-Appellee League of Women Voters of Maine*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that the foregoing Appellee Brief contains 9,528 words, consistent with the length limitation in Fed. R. App. P. 32(a)(7)(B). This response has been prepared using a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman, consistent with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type styles requirements of Fed. R. App. 32(a)(6).

Dated: August 17, 2026 Signature: */s/ Sejal Jhaveri*

## CERTIFICATE OF SERVICE

I, Sejal Jhaveri, do hereby certify that on this 28th day of August, 2026, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities.

Dated: August 28, 2026 Signature: /s/ *Sejal Jhaveri*