No. 26-1676

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

SHENNA BELLOWS, in the official capacity as Secretary of the State of Maine; STATE OF MAINE; JOHN SCHNECK; MARPHEEN CHANN; LEAGUE OF WOMEN VOTERS OF MAINE,

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

# REPLY BRIEF FOR THE UNITED STATES AS APPELLANT

HARMEET K. DHILLON
Assistant Attorney General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
AUDREY WEAVER
MEREDITH L. BAKER
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

## TABLE OF CONTENTS

**PAGE**


INTRODUCTION .......... 1

ARGUMENT .......... 1

I. The DOJ's demand for Maine's SVRL satisfied Title III's requirements .......... 1

A. The SVRL is a record that "comes into" the possession of Secretary Bellows .......... 1

B. Courts play a limited role in assessing the Attorney General's demand under Title III .......... 7

C. The United States adequately stated the basis and purpose of its demand for Maine's SVRL .......... 9

1. Defendants may not challenge the sufficiency of the purpose or basis for the United States' Title III demand .......... 10

2. The DOJ's statement of basis was sufficient .......... 13

3. The United States adequately stated the purpose of its demand for Maine's SVRL .......... 19

II. Neither federal nor state privacy laws give this Court any grounds to affirm the district court's judgment .......... 27

CONCLUSION .......... 33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES:** **PAGE**

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) .......... 29

*Berk v. Choy*,
607 U.S. 187 (2026) .......... 26

*Coleman v. Kennedy*,
313 F.2d 867 (5th Cir. 1963) (per curiam) .......... 24

*Custis v. United States*,
511 U.S. 485 (1994) .......... 24

*Endicott Johnson Corp. v. Perkins*,
317 U.S. 501 (1943) .......... 17

*Hamdan v. Rumsfeld*,
548 U.S. 557 (2006) .......... 24

*Heckler v. Chaney*,
470 U.S. 821 (1985) .......... 12

*In re Net-Velazquez*,
625 F.3d 34 (1st Cir. 2010) .......... 28

*Kendell Seafood Imps., Inc. v. Mark Foods, LLC*,
171 F.4th 122 (1st Cir. 2026) .......... 8

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) .......... 8, 10-11, 17, 29

*Lamie v. United States Tr.*,
540 U.S. 526 (2004) .......... 5

**CASES (continued):** **PAGE**

*Manning v. Boston Med. Ctr. Corp.*,
725 F.3d 34 (1st Cir. 2013) ........................................................26

*Medina v. Planned Parenthood S. Atl.*,
606 U.S. 357 (2025) ........................................................20

*National Ass'n of Home Builders v. Defenders of Wildlife*,
551 U.S. 644 (2007) ........................................................21-22

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021) ........................................................14

*Peaje Invs. LLC v. García–Padilla*,
845 F.3d 505 (1st Cir. 2017) ........................................................9

*Public Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) ........................................................18, 30

*Reisman v. Caplin*,
375 U.S. 440 (1964) ........................................................7

*Rivera v. Kress Stores of P.R., Inc.*,
30 F.4th 98 (1st Cir. 2022) ........................................................9

*Sparkle Hill, Inc. v. Interstate Mat Corp.*,
788 F.3d 25 (1st Cir. 2015) ........................................................28

*United States v. Benson*,
179 F.4th 470, *reh'g en banc denied*,
No. 26-1225, 2026 WL 2364306
(6th Cir. Aug. 14, 2026)........................................................*passim*

*United States v. Freedom Church*,
613 F.2d 316 (1st Cir. 1979)........................................................17

**CASES (continued):** **PAGE**

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950) .......... 11

*United States v. Powell*,
379 U.S. 48 (1964) .......... 7, 11

*United States Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) .......... 5-6

**CONSTITUTION:**

U.S. Const. Art. VI, Cl. 2 .......... 29

**STATUTES:**

Civil Rights Act of 1960 (CRA)
52 U.S.C. 20701 .......... 3, 19-20
52 U.S.C. 20703 .......... *passim*
52 U.S.C. 20704 .......... 29-30
52 U.S.C. 20705 .......... 7

E-Government Act of 2002
§ 208(b)(1)(A)(ii) .......... 32

Help America Vote Act of 2002 (HAVA)
Pub. L. No. 107-252, 116 Stat. 1666 (2002) .......... 24
52 U.S.C. 21083(a)(4)(A) .......... 18

National Voter Registration Act of 1993 (NVRA)
52 U.S.C. 20507(a)(4) .......... 18
52 U.S.C. 20501(a)(3) .......... 24

26 U.S.C. 7402(b) (1954 ed.) .......... 7

**LEGISLATIVE HISTORY:** **PAGE**

106 Cong. Rec. 6392 (Mar. 23, 1960) .................................................. 13

106 Cong. Rec. 7767 (Apr. 8, 1960) .................................................. 13

**REGULATIONS:**

68 Fed. Reg. 47,610 (Aug. 11, 2003) .................................................. 31-32

Exec. Order No. 14,399, 91 Fed. Reg. 17,125 (Mar. 31, 2026) ................ 27

**RULE:**

Fed. R. Civ. P. 12(d) .................................................. 26

**MISCELLANEOUS:**

*Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) ...................... 31

## INTRODUCTION

Accurate voter rolls are an essential precondition for a verifiable and trustworthy elections process. The Department of Justice (DOJ) seeks to obtain Maine's statewide voter registration list (SVRL) to ensure that Maine is conducting its federal elections in a manner that will assure the public of a trustworthy process. The DOJ is not doing anything particularly new. Its request for the State's SVRL is a lawful exercise of its authority under Title III of the Civil Rights Act of 1960 (CRA), and it is made for the lawful purpose of ensuring the State's compliance with the list-maintenance requirements of the National Voter Registration Act of 1993 (NVRA) and the Help America Vote Act of 2002 (HAVA). None of the arguments advanced by Maine and intervenors (collectively, "defendants") support the district court's contrary conclusion.

## ARGUMENT

### I. The DOJ's demand for Maine's SVRL satisfied Title III's requirements.

#### A. The SVRL is a record that "comes into" the possession of Secretary Bellows.

Defendants double down on the district court's erroneous conclusion that the SVRL "did not 'come into [the] possession' of state

election officials because they did not obtain it from a third party." LWV Br.30-31; *see also* Maine Br.44; Schneck Br.25.[1] In doing so, defendants rely heavily on the Sixth Circuit panel decision in *United States v. Benson*, 179 F.4th 470 (6th Cir. 2026) (*Benson II*). *See, e.g.*, Maine Br.44-45; Schneck Br.26-27; LWV Br.31. That reliance is now misplaced.

After the United States filed its Opening Brief, the Sixth Circuit denied rehearing en banc in *Benson II*, considering materially identical questions to the ones at issue here. *United States v. Benson*, No. 26-1225, 2026 WL 2364306 (6th Cir. Aug. 14, 2026) (*Benson III*). While denying rehearing en banc, a majority of the Sixth Circuit's judges agreed with the United States that an SVRL is a record that "come[s] into [the] possession" of a State's chief election official. *Id.* at *2 (Murphy, J., concurring in denial of reh'g en banc); *id.* at *9 (Griffin, J., dissenting); *id.* at *14 (Thapar, J., dissenting).

One prominent point of consensus was that Title III's "language imposes a specific duty on an individual (each officer of election), not a

---

[1] "Br.__" refers to each party's appellee brief or each amicus brief. "Add.__" refers to page numbers in the Addendum to the United States' Opening Brief. "App.__" refers to page numbers in the Appendix. "Doc.__" refers to documents filed in the district court. No. 1:25-cv-468 (D. Me.).

general duty on the entire State," and therefore "the Secretary of State 'came into possession' of the voter-registration list when she assumed office in 2019." *Benson III*, 2026 WL 2364306, at *2 (Murphy, J., concurring). In other words, "when the [SVRL] comes under [the Secretary's] official custody and control through the actions of those subordinates, it comes into her possession." *Id.* at *9 (Griffin, J., dissenting); *see also id.* at *14 (Thapar, J., dissenting) (similar). The officer-specific duty to preserve and produce certain voting-related records is also supported by the individual nature of the fines and penalties associated with violations. *See* 52 U.S.C. 20701. That alone is reason to reverse the district court.

Resisting this conclusion, Schneck and Chann rely on a metaphor from the Sixth Circuit panel majority in *Benson II*. The panel explained that a baker who bakes a cake (*i.e.*, the SVRL) "might have 'come into' possession of the purchased ingredients" (*i.e.*, underlying voter records) but did not "'come into' possession of a cake she baked with those ingredients." Schneck Br.26-27 (quoting *Benson II*, 179 F.4th at 479). But Secretary Bellows is not a baker in this hypothetical. Rather, she oversees other bakers. So "the rule becomes that a baker comes into

possession of a cake delivered from another bakery but not of a cake handed to her by another baker working in the same bakery." *Benson III*, 2026 WL 2364306, at *8 (Griffin, J., dissenting). Defendants, in other words, draw "an organizational boundary" requirement. *Ibid.* "Yet nothing in § 20701 draws that distinction." *Id.* at *9.

A majority of the Sixth Circuit's judges also left open the possibility that the phrase "come into . . . possession" has developed a meaning contrary to defendants' interpretation here. *Benson III*, 2026 WL 2364306, at *2 (Murphy, J., concurring); *see also id.* at *7 (Griffin, J., dissenting); *id.* at *13 (Thapar, J., dissenting and explicitly rejecting an external-source limitation). It "was a familiar legal expression" at the time Congress enacted Title III, "regularly used . . . to describe when a person lawfully assumed possession of property through an office, employment, or other legal authority." *Id.* at *7 (Griffin, J., dissenting). But that phrase "did not distinguish property according to its source," so "records that come into an official's possession could include self-created records." *Ibid.* In other words, "[t]he more natural inference is that . . . 'come into possession' [was] a familiar legal formulation identifying when

the statutory duty attached, not . . . creating a separate substantive limitation on the records covered." *Ibid.*

To counter this conclusion, intervenors offer modern parlance: what today would be "rather strange to say," "an odd selection of words," not the "most natural[]" way to convey meaning, or even what "makes far more sense." Schneck Br.26, 31, 32, 35 (citations omitted)*; see also* LWV Br.32 (invoking "normal English usage"). Present-day intuition sheds little light on the ordinary meaning of a phrase as it was understood 60 years ago. And even if Congress could have chosen clearer alternative phrasing, *see, e.g.*, Maine Br.47; Schneck Br.28-29; LWV Br.34, that would not necessarily render the meaning of the statute any less plain. *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004).

Defendants also characterize the United States' reliance on *United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989), as "misguided" because the Court "was not construing any statutory language analogous to Title III[]." Maine Br.47-48; *see also* LWV Br.33. But *Tax Analysts* is "instructive" in confirming the phrase "come into possession" "naturally describes the assumption of official custody regardless of whether the records were created within or received from

outside the agency." *Benson III*, 2026 WL 2364306, at *7 (Griffin, J., dissenting). *Tax Analysts* need not be perfectly on point to assist in understanding the phrase "come into possession."[2]

Defendants' final retort is that the United States' interpretation "would create an unavoidable clash with HAVA." Schneck Br.30. But a majority of the Sixth Circuit's judges found Title III of the CRA could be harmonized with the list maintenance requirements of the NVRA and HAVA to capture the SVRL in some form or another. *See Benson III*, 2026 WL 2364306, at *4-5 (Murphy, J., concurring); *id.* at *9-10 (Griffin, J., dissenting); *id.* at *14 n.7 (Thapar, J., dissenting).

In sum, defendants' attempt to exclude all internally generated documents adds an "extratextual limitation[]" that Congress did not write into the statute. *Benson III*, 2026 WL 2364306, at *16 (Thapar, J., dissenting).

---

[2] Schneck's conclusion that "agency records" was defined to cover records "made or received" quotes from the Records Disposal Act, not Section 552(a)(4)(B) of FOIA, the statute at issue in *Tax Analysts*. Schneck Br.31 (emphasis omitted); *see Tax Analysts*, 492 U.S. at 142. To the contrary, *Tax Analyst*'s interpretive exercise was necessary precisely because phrases like "agency records" were not defined in the statute. 492 U.S. at 142 (observing that the relevant terms including "agency records" "are defined neither in the Act nor in its legislative history").

### B. Courts play a limited role in assessing the Attorney General's demand under Title III.

Summary procedures apply to a demand under Title III. Defendants' and amici's arguments to the contrary are unpersuasive.

First, *United States v. Powell*, 379 U.S. 48 (1964), dealt with an entirely different statute that, unlike the CRA, imposed substantive limits on record demands. Defendants make much of the fact that both the CRA and the statute in *Powell* gave courts "jurisdiction by appropriate process to compel" the production of records. *Powell*, 379 U.S. at 52 n.10 (quoting 26 U.S.C. 7402(b) (1954 ed.)); 52 U.S.C. 20705; *see* Maine Br.24-25; LWV Br.8; Schneck Br.21; Local Election Officials Br.5. This statutory language grants jurisdiction; it does not specify procedures or impose substantive limits. Other language in the Internal Revenue Code *does* impose such substantive limits. *See Powell*, 379 U.S. at 52-53 & n.12. Unsurprisingly, then, the *Powell* Court did not rely on the jurisdictional grant in determining how to evaluate a records demand.[3]

---

[3] Amici former DOJ employees raise this same argument based on *Reisman v. Caplin*, 375 U.S. 440 (1964). Former Employees Br.4-5. But

By contrast, Section 303 provides no such substantive protections and no "judicially manageable standard" that would permit a similar level of review. *Benson III*, 2026 WL 2364306, at *15 (Thapar, J., dissenting). Whether, under *Powell*, the Federal Rules of Civil Procedure apply in whole, in part, or not at all, they cannot create substantive rights or manageable standards where none exist.

Second, the United States has invoked summary procedures. Maine faults the United States for filing "an ordinary civil complaint" (Maine Br.21-22) but does not explain what other pleading it would have preferred. Two days after filing the Complaint, the United States moved to show cause why the defendants had not produced the SVRL, explicitly invoking Title III's "special statutory proceeding." Doc.5-1, at 8 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)); *see* Doc.5. To require something more of the United States would be to "elevate[] form over substance," *Kendell Seafood Imps., Inc. v. Mark Foods, LLC*, 171 F.4th 122, 124 (1st Cir. 2026), an improper undertaking when defendants have long been aware of the United States' position and therefore have

---

*Reisman* dealt with the same statutes as *Powell* and is similarly unilluminating.

suffered no prejudice, *see Peaje Invs. LLC v. García–Padilla*, 845 F.3d 505, 515 (1st Cir. 2017).

Likewise, the DOJ did not "invoke[] Rule 12(b)(6)" by seeking de novo review, Schneck Br.21; *defendants* invoked that Rule (Doc.53, at 6; Doc.54, at 1; Doc.61, at 20), and the district court erroneously dismissed this case under that Rule (Add.6, 22). An erroneous 12(b)(6) dismissal is reviewed de novo under this Court's precedent. *Rivera v. Kress Stores of P.R., Inc.*, 30 F.4th 98, 102, 107 (1st Cir. 2022).

### C. The United States adequately stated the basis and purpose of its demand for Maine's SVRL.

The United States' Title III demand contained a written statement of the basis and purpose of its demand for Maine's SVRL. Defendants' arguments that this was insufficient fail. Here, *Benson III* is also instructive. A majority of Sixth Circuit judges agreed with the United States on this point: that DOJ satisfied the "basis" and "purpose" component of Title III in a written demand that "was based on 'Title III,'" described "factual concerns with [the State's] voter-registration list[]," and "identified its purpose to 'assess' the State's 'compliance' with the NVRA's and HAVA's list-maintenance requirements." *Benson III*, 2026 WL 2364306, at *3 (Murphy, J., concurring); *see also id.* at *10 (Griffin,

J., dissenting); *id.* at *14 (Thapar, J., dissenting). Because the demand here is substantively analogous to the one in *Benson III*, this Court should follow their lead.

**1. Defendants may not challenge the sufficiency of the purpose or basis for the United States' Title III demand.**

Defendants, like the district court, assume without much explanation that the court may "determine whether the Attorney General's purpose is sufficient," Add.15; *see also* Maine Br.32-33; Schneck Br.38; LWV Br.19, 27. This is a faulty premise, as it requires reading words of limitation into Title III that do not appear in the text. Section 303 merely requires "a statement of the basis and the purpose therefor," yet defendants can hardly make their argument without adding qualifiers like "valid," "legally valid," "legally sufficient," "patently improper," or "acceptable." LWV Br.12, 17, 20; Maine Br.40. Nevertheless, "[t]he plain text of Title III provides no limitation on the permissible purpose of the Attorney General's demand" and leaves "no place" for "ascertain[ing] the factual support for, or the sufficiency of, the Attorney General's 'statement.'" U.S. Br.14-15, 31 (quoting *Lynd*, 306

F.2d at 226). That is enough to reverse the district court and reject defendants' counterargument outright.

Defendants' arguments also fundamentally misunderstand that the purpose of the pre-enforcement Title III demand is to investigate, not prove, violations of federal election laws. *See* Schneck Br.41 (suggesting the DOJ should simply pursue "NVRA and HAVA enforcement actions—so long as it can plead a plausible violation of those laws"). The United States need not "establish" the "likelihood" of an NVRA violation. LWV Br.27. If the DOJ were required to possess evidence establishing the likelihood of a violation before sending an investigative demand, there would be little point in Title III—the DOJ could simply file suit and obtain records through discovery. Even in *Powell*, which concerned statutes giving individuals substantive protection from unnecessary investigations, the Supreme Court did not require any "showing of cause" to support a subpoena, but instead suggested that the Internal Revenue Service "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." 379 U.S. at 53, 57 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950)).

Against this backdrop, Congress's requirement that the Attorney General state a basis and purpose cannot be understood as a rejection of investigative authority in favor of requiring some standard of proof of a violation, particularly when Section 303 does not specify what that standard would be. *Cf. Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (explaining a regular feature of administrative law that judicial "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion").

To further the Attorney General's investigative authority, Title III provides that specified voting records "shall . . . be made available" to the Attorney General as long as he provides "a statement of the basis and the purpose therefor." 52 U.S.C. 20703. It is the prerogative of the United States to determine the probative value of records collected in an investigation—not that of defendants. Whether Maine or the district court agree with the concerns predicating the investigation, or that the SVRL will ultimately shed light on those concerns, does not control the Attorney General's Title III authority.

None of this "render[s] the purpose requirement essentially meaningless." Maine Br.32; *see also* LWV Br.15. Instead, the demand requirement serves the important role of providing notice. *See* U.S. Br.30-31. That purpose is confirmed by legislative history surrounding the CRA. Defendants obfuscate that Representative Cramer, the author of the amendment, "offered [the amendment] because [he] felt the registrar or custodian was entitled to be put on notice as to why such an inspection was being made and as to what law or what constitutional provision, right, or immunity might be involved," and even expressly rejected interpreting Title III as "limited to [enforcing] the 1957 act." 106 Cong. Rec. 6392 (Mar. 23, 1960) (statement of Mr. Cramer); Schneck Br.43. Another likewise confirmed his understanding that this requirement "means only that the Attorney General identify in a general way the reasons for his demand." 106 Cong. Rec. 7767 (Apr. 8, 1960) (statement of Mr. Keating).

**2. The DOJ's statement of basis was sufficient.**

Even assuming the sufficiency of the DOJ's basis is a permissible area of inquiry, defendants' arguments still fail.

First, there is no statutory requirement that every aspect of the DOJ's demand appear in one letter. Defendants argue otherwise, with Schneck and Chann in particular relying on *Niz-Chavez v. Garland*, 593 U.S. 155 (2021). *See* Maine Br.54; LWV Br.29-30; Schneck Br.47. But in *Niz-Chavez*, the Supreme Court construed an alien-removal statute referring to "a notice to appear" to mean providing the alien with one document containing all the statutorily required elements—hardly similar to requiring state officers to respond to a demand by producing certain state records they are statutorily obligated to preserve. 593 U.S. at 158-160, 172. Indeed, the notice in *Niz-Chavez* was a "case-initiating document" analogous to an indictment or a complaint, not simply correspondence demanding records. *Id.* at 163-164. And the Court's decision largely hinged on the word "a." *Id.* at 161. Here, Section 303 refers to "demand in writing," not "a" demand in writing, and its use of "a" is in the context of the "statement of the basis and the purpose" that forms *part* of this demand. 52 U.S.C. 20703. Nothing in the statute or in *Niz-Chavez* mandates that a complete written demand for an SVRL appear in one document. *Benson III*, 2026 WL 2364306, at *10 (Griffin, J., dissenting).

Intervenors similarly fault the DOJ for not invoking the CRA in the first letter. LWV Br.30; Schneck Br.47. But the DOJ was required to invoke the CRA only if Section 303's statement of basis refers to a "legal basis"—in which case the second letter was a sufficient demand standing on its own. If "basis" means, as defendants argue (Maine Br.52; LWV Br.26; Schneck Br.47), a factual basis, then there is no requirement that the demand ever invoke the CRA, and the first letter was a demand in itself, making clear both the factual support for the demand and that the purpose was NVRA enforcement (*see* App.32).

Second, even under a factual basis standard, the DOJ provided ample factual support for its demand. In its first letter, the DOJ detailed multiple areas of concern from Maine's responses to the Election Assistance Commission's Election Administration and Voting Survey (EAVS) from 2024, including that Maine had failed to answer questions about duplicate and merged registrations and that Maine had not sent out confirmation notices since 2022. App.33.

Oddly enough, the League of Women Voters simultaneously calls the DOJ's statement of basis "conclusory" but praises the statement of basis in *Lynd* (LWV Br.29), which was simply that "[t]his demand is

based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." 306 F.2d at 229 n.6; *see also* Maine Br.57-58. So presumably (leaving aside defendants' argument regarding purpose) the DOJ's statement would have been sufficient if it said simply that "[t]his demand is based upon information in the possession of the Attorney General tending to show that your list maintenance program does not comply with the NVRA"—a true statement, given the EAVS anomalies—but was insufficient because it actually spelled out the anomalies. This makes no sense.

For their part, amici Local Election Officials argue that the EAVS data's limitations make it unsuitable as support for the DOJ's demand. But amici fundamentally misunderstand the threshold required for an investigation. Amici's speculation about what "could account for variances in data," timelines that "may not align," and "possible explanations for high registration rates" (Local Election Officials Br.19-20, 22) do nothing to defeat the reality that the United States possessed

data "tending to show" a violation of the NVRA and HAVA, *Lynd*, 306 F.2d at 229 n.6.[4]

Finally, Title III does not require a showing of relevance, but even if it did, the SVRL is highly relevant to the DOJ's purpose of investigating NVRA and HAVA compliance. *See Benson III*, 2026 WL 2364306, at *15 (Thapar, J., dissenting). When relevance is judicially reviewable, the question is whether the record sought is "plainly incompetent or irrelevant to any lawful purpose," *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943), or whether it might "throw[] light" upon the issue, *United States v. Freedom Church*, 613 F.2d 316, 321 (1st Cir. 1979). The SVRL shows whether Maine is collecting the identifiers HAVA requires. And it is self-evident that the presence of significant, preventable, or numerous inaccuracies in the voter rolls may suggest that a State is not fulfilling its list-maintenance obligations. "[W]hether voter registration rolls are accurate and current cannot be determined without inspecting

[4] Maine argues that its high voter registration rate cannot support the DOJ's demand because "an above-average percentage of registrations cannot reflect poor list maintenance if those registrants are voting." Maine Br.56 n.6. This argument ignores the possibility that ineligible voters are illegally voting. But in any case, Maine's high registration rate was just one of several EAVS anomalies. *See* App.33.

the Voter File." *Public Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 49 (1st Cir. 2024); *see also Benson III*, 2026 WL 2364306, at *15-16 (Thapar, J., dissenting).

Schneck and Chann argue that the SVRL is merely "a snapshot of registered voters that becomes immediately outdated." Schneck Br.48; *see* Former Employees Br.13 (similar). But even a snapshot can reveal much about list maintenance. For example, if that snapshot contains noncitizens who never should have been on the list or individuals who have been deceased for months or years, that information is relevant to showing whether Maine's list maintenance is reasonable.

Amici Local Election Officials seem to suggest that the NVRA and HAVA require only a program of list maintenance that looks reasonable on its face. *See* Local Election Officials Br.15; *see also* Former Employees Br.12-13; Schneck Br.48; LWV Br.27 ("Those statutes impose only process obligations on states."). Not so. States must actually "make[] a reasonable effort" to remove ineligible voters. 52 U.S.C. 20507(a)(4); 52 U.S.C. 21083(a)(4)(A). No matter how adequate Maine's process appears on the surface, if it is not actually implemented, or does not actually result in a reasonably maintained SVRL, then it is not a reasonable

effort. Results may not be the end-all-be-all of NVRA and HAVA compliance, but they certainly matter. That makes the SVRL relevant. And it also means that, given the EAVS data anomalies, the DOJ was not required to simply accept Secretary Bellows's follow-up responses at face value.

#### 3. The United States adequately stated the purpose of its demand for Maine's SVRL.

Even if the court could conduct the searching inquiry sought by defendants, their argument that the United States failed to state "a legally sufficient purpose" for its Title III demand nonetheless fails. LWV Br.15; *see also* Maine Br.31; Schneck Br.38; LWV Br.12.

a. Defendants first argue that the "DOJ's stated purpose of ascertaining Maine's compliance with the NVRA and HAVA is not a valid purpose under Title III." Maine Br.31; *see also* Schneck Br.39; LWV Br.12. Defendants are incorrect.

The plain text of Title III forecloses this argument. Under that text, a preservation duty attaches to "all records and papers . . . relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. The Attorney General is expressly authorized to demand "[a]ny record or paper required by

section 20701 of this title to be retained and preserved." 52 U.S.C. 20703. Because the *text* defines the scope and purpose of Title III, the only relevant question is whether the SVRL falls within that statutory definition. If it does, the text of Section 303 is clear and unequivocal: the Attorney General can demand it.

Here, the district court, and to some degree defendants, all but concede that the SVRL "relat[es] to . . . act[s] requisite to voting," 52 U.S.C. 20701, as required by Section 301: "I have little trouble accepting that Maine's SVRL 'relat[es] to . . . act[s] requisite to voting.'" Add.12; *see also* Schneck Br.31 ("Whether the SVRL *relates* to voter registration is irrelevant."); Maine Br.46 (conceding that "'[r]elating to' therefore may broaden the scope of records covered" by Title III). That concession should end the inquiry into whether the request satisfied the requisite purpose. No amount of "contextualiz[ing]" or exploration into the perceived intent of Congress can override the plain text. Maine Br.34. "When it comes to interpreting the law, speculation about what Congress may have intended matters far less than what Congress actually enacted." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 381 (2025).

Defendants' contrary argument requires the Court to read the additional requirement that "[t]his demand shall contain a statement of the basis and the purpose therefor" as a limitation on the Attorney General's express authority to obtain "[a]ny record or paper" that falls within the scope of Section 301. That reading is irreconcilable. If Congress intended the demand's statement of purpose to limit the scope of records the Attorney General could obtain, it would have so said. *Cf.* Schneck Br.28; LWV Br.19.

The only other way around the clear language of Sections 301 and 303 is to find these sections are somehow incompatible with the post-enacted NVRA and HAVA. Defendants reframe the United States' position as an "enlarg[ing]" of the CRA or an "override[]" of the NVRA and HAVA. Schneck Br.41; LWV Br.16. Defendants' application of the specific-over-general canon therefore manufactures a tension or conflict that simply does not exist.[5]

---

[5] What defendants appear to be really after, however, is a repeal or limitation of Title III by implication. Of course, defendants do not name this argument because "repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007) (brackets, citation, and internal quotation

After all, nothing in the text of the NVRA and HAVA conflicts with Title III's demand authority. Here, defendants' arguments cut against them. In Maine's own words: "Congress's decision not to give the DOJ sweeping subpoena power over state election records is best understood as a *feature* of the NVRA's and HAVA's comprehensive scheme, rather than an indication that the scheme is not comprehensive." Maine Br.37; *see also id.* at 39 (describing that the NVRA and HAVA "conspicuously omit any provisions allowing the Attorney General to demand records"); Schneck Br.40 (suggesting Congress did not "intend[] DOJ's exclusive [NVRA and HAVA] powers to include an inspection tool on par with Title III"). In the absence of some similar "subpoena" or demand power in the NVRA and HAVA, no overlap and therefore no tension or conflict can exist. The silence of the NVRA and HAVA supports the United States, not defendants.

---

marks omitted). Repeal by implication will not lie "unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary . . . in order that the words of the later statute shall have any meaning at all." *Ibid.* (brackets, citation, and internal quotation marks omitted). None of those hallmarks can be found here.

b. Defendants next argue that a Title III demand must be limited to the underlying "purpose" of the CRA. But defendants cannot even agree on what this supposed purpose is. Maine argues that "demands under Title III must support investigations into racial discrimination in voting," Maine Br.57, while Schneck and Chann argue that Title III was "enacted to aid DOJ in the enforcement of civil rights laws (and specifically the Civil Rights Act of 1957)," Schneck Br.38, and the League of Women Voters argues that "[t]he statute's purpose is to protect individual voting rights," LWV Br.36. These incongruences illustrate the danger of elevating perceived "purpose" over the statutory text. A statute's purpose can always be framed at varying levels of generality, rendering the inquiry inherently susceptible to subjective manipulation. *See also* U.S. Br.32. Pitted against unambiguous statutory text, *see Benson III*, 2026 WL 2364306, at *4 (Murphy, J., concurring), defendants' belief that "Congress could not plausibly have intended to authorize through [Section] 20703 demands unrelated to combating racial discrimination in voting" or some other purpose is simply beside the point. Maine Br.42.

Additionally, because Congress knows how to limit permissible investigative purposes, *see* U.S. Br.31, the "omission of similar language" from Title III "indicates that [Congress] did not intend" to create a corresponding limitation on the Attorney General's demand power. *Custis v. United States*, 511 U.S. 485, 492 (1994). This Court should draw "a negative inference . . . from the exclusion of [race-based] language from" Title III, *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006), and conclude that "investigating possible violations of a Federal statute," *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963), constitutes a valid purpose.

Defendants hardly interact with the argument that, at a minimum, the United States plainly is entitled to records sought for the purpose of protecting individual voting rights that the NVRA and HAVA seek to secure. *See* U.S. Br.32 (citing 52 U.S.C. 20501(a)(3) and Pub. L. No. 107-252, 116 Stat. 1666 (2002) (preamble)). Maine simply declares dilution of voting power "is unrelated to Congress's goal" for Title III. Maine Br.43. LWV relegates its response to a footnote, summarily concluding the DOJ had not sufficiently *explained how* obtaining the SVRL would prevent the dilution of lawful votes cast. LWV Br.17 n.5. But the stated purpose of

the demand—investigating compliance with federal list maintenance requirements—unquestionably aims to protect individual voter rights and the exercise of the right of suffrage. *See* U.S. Br.33. Even defendants' own legislative history supports the United States. *See* Schneck Br.43 (quoting Representative Cramer as summarizing the CRA's purpose "to enforce constitutional rights").

c. The demand's stated purpose is not pretextual. Defendants' various theories as to why it is fall short.

First, defendants incorrectly claim that the SVRL would not help the DOJ determine whether Maine is complying with the NVRA and HAVA's list maintenance requirements. LWV Br.18 (citing U.S. Br.28); *see also* Schneck Br.48 ("obtaining Maine's unredacted SVRL would shed little light on in (sic) whether Maine complied with its list-maintenance obligations"). Not so. It is difficult to see how the very voter rolls the NVRA and HAVA require the States to accurately maintain could be irrelevant to an investigation into whether they are doing so. *See* part I.C.2, *supra*.

In making this argument, defendants also forget that this Court must accept all "factual allegations as true and decide if, drawing all

reasonable inferences in plaintiffs' favor, they are sufficient to show an entitlement to relief." *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013). Importantly, courts "may not disregard factual allegations 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Ibid.* Under these pleading standards, defendants cannot defeat the United States' claim by disputing the SVRL's probative value to the United States' investigation.

Second, defendants argue that "there is reason to doubt DOJ's stated purpose in seeking SVRLs." Schneck Br.53; *see also* LWV Br.20. Here too, the defendants seem to forget that at this stage of litigation, "the court cannot consider 'matters outside the pleadings.'" *Berk v. Choy*, 607 U.S. 187, 193 (2026) (quoting Fed. R. Civ. P. 12(d)). Thus, defendants cannot rely on external sources to defeat the factual allegations of the Complaint, which clearly establish that the purpose of the Title III demand is to assess Maine's compliance with federal law. *See, e.g.*, App.13-14, 21, 26, 28; *see also* U.S. Br.53.

Even were that not the case, defendants' extra-record "facts" do not come close to "firm evidence" of "bad faith." U.S. Br.53 (citation omitted). And any number of favorable inferences, inferences consistent with the

United States' stated purpose, can be drawn from defendants' sources. For example, the portion of Executive Order 14,399 directed at the Attorney General merely requires him to "prioritize the investigation and, as appropriate, the prosecution of" certain officials or entities engaged in activities that facilitate the distribution of ballots to ineligible voters. Exec. Order No. 14,399, 91 Fed. Reg. 17,125, 17,126 (Mar. 31, 2026). *But see* LWV Br.23. If anything, that direction *corroborates* the demand's stated purpose.

## II. Neither federal nor state privacy laws give this Court any grounds to affirm the district court's judgment.

At the outset, contrary to Maine's suggestion (Maine Br.58, 62), the United States has not waived *any* arguments as to federal or state privacy laws by declining to address them in its Opening Brief. The district court did not reach defendants' privacy law arguments. And the United States addressed those arguments only briefly in its Opening Brief in anticipation of defendants' responses, not as an "argument[] for

reversing a decision of a district court." *Sparkle Hill, Inc. v. Interstate Mat Corp.*, 788 F.3d 25, 29 (1st Cir. 2015).[6]

The United States was not required to plead or prove its compliance with the Privacy Act or the E-Government Act. Nothing in Title III suggests that it must, nor do those Acts place an affirmative burden on the United States to do so. Not only was this argument not required to be raised in the United States' Opening Brief, but it was also encapsulated in the United States' argument that privacy laws do not excuse Maine from complying with Title III. *See* U.S. Br.54.[7]

Regardless, all of defendants' privacy arguments fail.

---

[6] Furthermore, the United States does not concede that any argument was waived, here or below, but to the extent this Court were to determine otherwise, factors weigh in favor of reaching those arguments: no factual findings are needed to do so, there is no prejudice to defendants in *declining to affirm on alternative grounds* because of newly raised arguments, the United States did not seek or obtain any tactical advantage from failing to raise any arguments, and the issues are of great public importance. *See In re Net-Velazquez*, 625 F.3d 34, 41 (1st Cir. 2010) (listing factors).

[7] The United States' argument that privacy laws do not excuse Maine's noncompliance was not, as Maine argues (Maine Br.59 n.7), unpreserved; Maine responded to it in the district court (*see* Doc.83, at 6 ("To the extent DOJ is arguing that Maine must turn over voter PII even if DOJ's receipt of it would violate the Privacy Act . . . .")).

First, Title III preempts any contrary state laws. Schneck and Chann argue that Maine law bars unredacted disclosure of the SVRL. Schneck Br.49. To the extent that state law purports to prohibit Maine from complying with the United States' demands, state law must yield. *See* U.S. Const. Art. VI, Cl. 2; *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15 (2013) (citation omitted) ("States' role in regulating congressional elections—while weighty and worthy of respect—has always existed subject to the express qualification that it 'terminates according to federal law.'").

Title III of the CRA authorizes the Attorney General to compel production of federal election records upon written demand. *See* 52 U.S.C. 20703. That authority is not conditioned on compliance with state laws, nor is it limited to public records.[8]

---

[8] Schneck and Chann rely on *Lynd* in arguing that Title III "reach[es] only 'public records.'" Schneck Br.49 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962)). But the *Lynd* court was discussing why the district court's delay of inspection and copying was erroneous. 306 F.2d at 231. Because the demand was for "public records," the court of appeals could not see any reason for delay. *Ibid*. *Lynd* does not hold that Title III can only reach public records. Such a holding would make little sense in light of 52 U.S.C. 20704.

Analogizing the CRA to the NVRA, Schneck and Chann argue that nothing in the CRA prohibits Maine from redacting sensitive information in the SVRL prior to inspection. Schneck Br.49-50. But there is a glaring distinction between inspection under the NVRA and inspection under the CRA; the NVRA contains a *public* inspection provision. Courts have interpreted the NVRA to not require releasing voters' unredacted personal information to the public at large. *See Public Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases). But under the CRA, only the Attorney General and his representatives may inspect covered records—and subject to strict disclosure limits. *See* 52 U.S.C. 20703, 20704.

The purpose of the CRA—to allow the Attorney General access to the information necessary to determine whether there is a violation of federal law—would be entirely thwarted by allowing States to redact identifying information from voting records. *See generally United States v. Benson*, No. 26-1225, 2026 WL 2364306, at *14, *16 (6th Cir. Aug. 14, 2026) (*Benson III*) (Thapar, J., dissenting). To the extent state law would prohibit Maine from complying with the DOJ's demands, state law must yield.

Second, for the reasons discussed in the Opening Brief (U.S. Br.54-58), the DOJ is complying with the Privacy Act. Contrary to Maine's argument (Maine Br.61-63), the System of Records Notice (SORN)—including its listing of categories of records and categories of sources of information—is broad enough to cover Maine's SVRL. Schneck and Chann argue that the SORN "does not even *mention* the NVRA, HAVA, or the CRA." Schneck Br.51. But "[r]ecords" in the SORN can include "case files" and "matters . . . relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." 68 Fed. Reg. 47,610, 47,611 (Aug. 11, 2003). By denoting both "case files" and "matters," *ibid.*, the SORN covers both investigations that have proceeded to litigation and those that have not. *See Merriam-Webster's Collegiate Dictionary* 766 (11th ed. 2003) (defining "matter" as "a subject under consideration" or "a subject of disagreement or litigation"). All records obtained as part of the DOJ's investigation into Maine's list maintenance are part of a "matter[]" and relate to the Civil Rights Division's duties, and thus fit comfortably within the SORN. 68 Fed. Reg. at 47,611. And the SORN states that "[s]ources of information . . . may be an agency or person who has or offers information related to the law

enforcement responsibilities and/or other statutorily-mandated duties of [the Civil Rights Division].” 68 Fed. Reg. at 47,613. That condition is met here as well.

Finally, the United States is complying with the E-Government Act. There are several independent reasons why a privacy impact assessment was not required here: identical questions or reporting requirements have not been asked of or imposed on 10 or more persons; the Attorney General’s investigation is excepted from the definition of a “collection of information”; and there is no “initiat[ion of] a new collection of information.” U.S. Br.58-61; E-Government Act, § 208(b)(1)(A)(ii).

## CONCLUSION

This Court should reverse the district court's judgment.

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
AUDREY WEAVER
MEREDITH L. BAKER
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

Date: September 4, 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because the brief contains 6,362 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney

Date: September 4, 2026

## CERTIFICATE OF SERVICE

I certify that on September 4, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney